1

2

3

4

# UNITED STATES DISTRICT COURT

5

## SOUTHERN DISTRICT OF CALIFORNIA

6

7  SECURITIES AND EXCHANGE
   COMMISSION,

8
                                    Plaintiff,
9       vs.

10

11  LOUIS SCHOOLER and FIRST
    FINANCIAL PLANNING CORPORATION
    d/b/a WESTERN FINANCIAL
12  PLANNING CORPORATION,

13
                                    Defendants.

CASE NO. 12-CV-2164-LAB-JMA

**ORDER DENYING DEFENDANTS'
MOTION TO DISSOLVE
TEMPORARY RESTRAINING
ORDER**

14

15     The Court granted the SEC's *ex parte* motion for a temporary restraining order on

16  September 6, 2012.  According to the SEC, Defendants are violating the registration and

17  antifraud provisions of the federal securities laws by, among other things, selling partnership

18  interests in undeveloped land at a huge markup.

19     On September 11, Defendants filed an emergency motion to dissolve or modify the

20  TRO pursuant to Fed. R. Civ. P. 65(b)(4).  The motion makes, in essence, three arguments,

21  which the Court summarized as follows in an order setting a briefing schedule that it entered

22  the same day:

23          The first is that, by its own admission, the SEC didn't show that
            irreparable injury would result before Defendants could be
24          heard.  In fact, the SEC took the position, mistaken in
            Defendants' view, that "[u]nlike private litigants, if the
25          government can show a probability of success on the merits, the
            courts presume irreparable injury in Commission enforcement
26          actions where injunctive relief is sought." (Doc. No. 3-1 at 13.)

27          The Defendants' second argument cuts to the heart of the SEC's
            jurisdiction to bring claims against them: the general partnership
28          investments at issue simply are not securities.  Here, the
            Defendants take issue with the SEC's claim in its moving papers

- 1 -

1
2
3
that "[a]lthough some courts have found that investments in land solely for the purpose of obtaining profits from appreciation of property value on resale are not securities, and some general partnership interests are not investment contracts, the GP units at issue in this case are securities." (Doc. No. 3-1 at 14.)

4
5
6
7
8
9
10
And the Defendants' third argument is that the TRO threatens to do their business irreparable harm by its requirement that the appointed receiver notify each and every investor of the SEC's allegations and the TRO itself.  Related to this, the Defendants argue that the TRO places the receiver in the conflicted position of serving the General Partnerships alongside Western: "Wearing his hat as receiver to the General Partnerships, he is required to send out notices to all of Western's investors. Wearing his hat as receiver to Western, it would be gross negligence or worse to send out a mass mailing to every past customer spreading inaccurate statements and allegations and would irreparably harm Western."   (Doc. No. 14 at 3.)

11   (Doc. No. 17 at 1–2.)

12   The SEC has now responded to Defendants' arguments, and the Court will address

13   them in sequence.

14   **I.      Irreparable Harm**

15   A TRO is simply a preliminary injunction issued on short notice or no notice at all, and

16   with a quick expiration date.  The standards governing their issuance are "substantially

17   identical." *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir.

18   2001).  A plaintiff must show, among other things, that it "is likely to suffer irreparable harm

19   in the absence of preliminary relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7,

20   20 (2008).

21   The TRO sought by the SEC, however, was issued without written notice to

22   Defendants, and that requires a heightened showing of irreparable harm under Federal Rule

23   of Civil Procedure 65:

24
25
**(1)** *Issuing Without Notice.*  The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:

26
27
**(A)** specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

28

1          **(B)** the movant's attorney certifies in writing any efforts made to
            give notice and the reasons why it should not be required.

2

3   Fed. R. Civ. P. 65(b).  In other words, while a standard-issue preliminary injunction must find

4   a *likelihood* of irreparable harm, a secret-issue TRO must find a certainty of it.  This higher

5   hurdle "reflect[s] the fact that our entire jurisprudence runs counter to the notion of court

6   action taken before reasonable notice and an opportunity to be heard has been granted both

7   sides of a dispute."  *Granny Goose Foods, Inc. v. Bhd. of Teamsters*, 415 U.S. 423, 438

8   (1974).

9          Defendants accuse the SEC of "giv[ing] itself a pass on the irreparable injury

10  requirement," and indeed it does.  But it does so on good authority—and, critically, only with

11  respect to the basic standard for issuance of a preliminary injunction or temporary restraining

12  order, not with respect to the notice requirement.  (*See* Doc. No. 3-1 at 12–13.)  The SEC

13  may obtain a preliminary injunction simply by establishing "(1) a prima facie case of previous

14  violations of federal securities laws, and (2) a reasonable likelihood that the wrong will be

15  repeated."  *SEC v. Unique Fin. Concepts, Inc.*, 196 F.3d 1195, 1199 n.2 (11th Cir. 1999).

16  The irreparable harm requirement is waived, as it were, because "[i]n statutory enforcement

17  cases where the government has met the 'probability of success' prong of the preliminary

18  injunction test . . . the passage of the statute is itself an implied finding by Congress that

19  violations will harm the public," *United States v. Nutri-Cology, Inc.*, 982 F.2d 394, 398 (9th

20  Cir. 1992).  *See also SEC v. Mgmt. Dynamics, Inc.*, 515 F.2d 801, 808 (2d Cir. 1975) ("But

21  the statutory imprimatur given SEC enforcement proceedings is sufficient to obviate the need

22  for a finding of irreparable injury at least where the statutory prerequisite  the likelihood of

23  future violation of the securities laws has been clearly demonstrated.")

24         Contrary to the Defendants' argument, the SEC doesn't ignore Rule 65 or read into

25  it the legal standard for issuance of a preliminary injunction discussed in *Unique Fin.*

26  *Concepts*, *Nutri-Cology*, and *Mgmt. Dynamics.*  The notice page of its TRO application

27  explicitly "seeks waiver of the notice requirements of Rule 65(b)" on the ground that "it is

28  clear from specific facts set forth in the evidence that the Commission has submitted with

1   the Application that immediate and irreparable injury, loss or damage will result if the

2   defendants are notified of the Commission's Application before it is heard." (Doc. No. 3 at

3   1.) The Court, considering the supporting memo and evidentiary record, was satisfied with

4   this argument, and that is why it agreed to accept the SEC's TRO application on an *ex parte*

5   basis, depriving Defendants of the opportunity to be heard up front. The Defendants' first

6   objection to the TRO is therefore **OVERRULED**.

7   **II.      Likelihood of Success on the Merits**

8          Defendants' second argument is that the SEC failed to show a likelihood of success

9   on the merits by failing to show that the general partnership interests at issue in this case are

10  in fact securities.

11         The securities laws regulate securities, which are defined to include "investment

12  contracts." 15 U.S.C. § 78c(a)(10). The Supreme Court, in *SEC v. W.J. Howey Co.*, defined

13  an investment contract as "a contract, transaction or scheme whereby a person (1) invests

14  his money in (2) a common enterprise and is led to (3) expect profits solely from the efforts

15  of the promoter or a third party." 328 U.S. 293, 298–99 (1946). The Ninth Circuit has held,

16  moreover, that "solely" in the third prong isn't to be read literally. Rather, the question is

17  whether "the efforts made by those other than the investor are the undeniably significant

18  ones, those essential managerial efforts which affect the failure or success of the

19  enterprise." *SEC v. Glenn W. Turner Enters., Inc.*, 474 F.2d 476, 482 (9th Cir. 1973).

20         In this case, as in most, the determinative prong is the third: Do the investors who

21  purchase the general partnership interests expect profits solely from Defendants' efforts?

22  The leading case on this issue, followed by the Ninth Circuit, is *Williamson v. Tucker. See*

23  //

24  //

25  //

26  //

27  //

28  //

1  *Koch v. Hawkins*, 928 F.2d 1471, 1476–78 (9th Cir. 1991).  In *Williamson*, the Fifth Circuit

2  held that a general partnership interest can be designated a security

> if the investor can establish, for example, that (1) an agreement among the parties leaves so little power in the hands of the partner or venturer that the arrangement in fact distributes power as would a limited partnership; or (2) the partner or venturer is so inexperienced and unknowledgeable in business affairs that he is incapable of intelligently exercising his partnership or venture powers; or (3) the partner or venturer is so dependent on some unique entrepreneurial or managerial ability of the promoter or manager that he cannot replace the manager of the enterprise or otherwise exercise meaningful partnership or venture powers.

9  645 F.2d at 424.

10  The SEC addressed the Williamson factors at length in its TRO memo, with

11  substantial reference to a thick evidentiary record.  (Doc. No. 3-1 at 14–17.)  The Court

12  found it likely that the SEC could show the general partnership interests at issue in this case

13  are securities, and therefore subject to the SEC's regulatory and enforcement powers.  The

14  Court isn't moved from that finding after having read and considered Defendants' motion to

15  dissolve the TRO.  For example, Defendants' first substantive move is to reference the

16  General Partnership Agreement to claim that, in fact, "[t]here are no limited partners" and

17  "[a]ll partners are general partners."  Doc. No. 14 at 9.  But that technical point misses the

18  first principle that the term "investment contract," as defined by the Supreme Court in *W.J.*

19  *Howey Co.*, "embodies a flexible rather than a static principle, one that is capable of

20  adaptation to meet the countless and variable schemes devised by those who seek the use

21  of the money of others on the promise of profits."  328 U.S. at 299.  Thus, the formal

22  structure or label of the general partnerships doesn't determine whether they're securities;

23  the Court has to consider "the economic realities of the transactions."  Considering that,

24  Defendants' second objection to the TRO is **OVERRULED**.

25  **III.    Irreparable Harm to Defendants**

26  Defendants take the position that alerting all of their investors of the SEC's allegations

27  and the TRO would likely end their business.  (Doc. No. 14 at 16–17.)  They don't explain

28  exactly how this would happen, however, which the SEC is eager to point out.  (Doc. No. 18

at 6.)  Indeed, as the SEC is also eager to point out, Defendants avoid in their motion to dissolve the TRO the SEC's core charge, namely that the price the general partnerships pay for the undeveloped land far exceeds its fair market value.  As far as the Court can tell, the Defendants sole come-back to this is that Western did in fact provide detailed disclosures to all investors:  "Western provides extremely detailed Partner Representations (attached as Exhibit 3) that fully describe the full extent of the nature and character of the investment, its speculative nature, the unknown time horizon and risks inherent in the investment." (Doc. No. 14 at 15.)  One of these representations, on the Court's reading of the document, is that Defendants "will be making a very substantial profit in the sale of the real property to the Partnership.  Therefore, as between [Defendants] and [the investor] there exists a conflict of interest and *no* fiduciary relationship."  (Doc. No. 14-3 ¶ 74.)

This objection is **OVERRULED**, although, out of an abundance of caution for Defendants' interests, the Court will not lift the stay on the receiver's notification obligation until it hears from the parties at the September 17 hearing.  The Court remains, it should say, extremely skeptical of Defendants' position—basically, that their investors should not be notified of a public proceeding and public documents that are a part of that proceeding.  On the other hand, the SEC's suggestion notwithstanding, the Court doubts that between the time this Order is issued and the time of the September 17 hearing the investors could even be properly notified and make plans to appear in court.  This issue, apparently the highest of Defendants' concerns, can wait until Monday.

**IV.    Conclusion**

Defendants' motion to dissolve the TRO is **DENIED**.  This denial is **WITHOUT PREJUDICE**, of course, to their ability to argue on September 17 that the temporary restraining order should expire without the issuance of a preliminary injunction.  The Court

//

//

//

//

1  has received Defendants' opposition brief and will give the issues full and fresh

2  consideration.

3       **IT IS SO ORDERED**.

4  DATED:  September 12, 2012

5

6       **HONORABLE LARRY ALAN BURNS**
        United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28