UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                            Plaintiff,<br>v.<br>LOUIS V. SCHOOLER and FIRST FINANCIAL PLANNING CORPORATION, dba Western Financial Planning Corporation,<br><br>                            Defendants. | Case No. 3:12-cv-2164-GPC-JMA<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS**<br><br>[Dkt No. 43] |

## INTRODUCTION

Before the Court is Defendants Louis V. Schooler and First Financial Planning Corporation d/b/a Western Financial Planning Corporation's (collectively "Defendants") Motion to Dismiss.[1] (Dkt No. 43.) Defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(6) on the basis that the Securities and Exchange Commission ("SEC") has failed to state a claim upon which relief can be granted because the interests offered and sold by Defendants in general partnerships are not securities. As such, Defendants contend the SEC does not have statutory authority to

---

[1] The parties' Joint Motion for Extension of Time to File a Responsive Pleading, (Dkt No. 41), is GRANTED.

bring its claims against Defendants. Having considered the parties' submissions and for the reasons set forth below, the Court hereby **DENIES** Defendants' Motion to Dismiss.

## BACKGROUND

On September 4, 2012, the SEC filed a complaint against Defendants, alleging Defendants have violated and continue to violate the anti-fraud and registration provisions of the federal securities laws. (Dkt No. 1, Compl. at 1, 16-19.) The same day, the SEC also filed an ex parte application for a temporary restraining order ("TRO") and, among other requests, orders freezing assets and appointing a temporary receiver. (Dkt No. 3.) Judge Burns granted all relief sought by the SEC. (Dkt No. 10.)

The SEC Complaint alleges, inter alia, that since 2007, Defendants defrauded thousands of investors by offering and selling approximately $50 million worth of general partnership units ("GP units")—i.e., interests in general partnerships organized by Defendants—without disclosing material facts regarding the true value of the underlying land, the mortgages encumbering the properties, and when ownership of the underlying land was transferred from Defendants to the general partnerships ("GPs"). (Compl. at 10.) Specifically, the SEC contends Defendants have violated and continue to violate Sections 5(a), 5(c), and 17(a) of the Securities Act, 15 U.S.C. §§ 77e(a), 77e(c), 77(q)(a); Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b); and Rule 10b-5, 17 C.F.R. § 240,10b-5. (*Id*. at 19.)

On September 11, 2012, Defendants filed a motion to dissolve or modify the TRO, which was denied on September 13, 2012. (Dkt Nos. 14, 18, 22.) Judge Burns held a hearing on September 17, 2012, on his order to show cause re converting the TRO into a preliminary injunction. (*See* Dkt No. 30.) Defendants' primary argument in opposing the preliminary injunction was that the interests in the GPs organized by Defendants are not securities, and therefore the SEC lacks enforcement authority to bring this action. (Dkt No. 21, Resp. to TRO Mot. at 9-22.) After briefing by the parties and oral argument, Judge Burns converted the TRO into a preliminary

injunction on October 5, 2012. (Dkt No. 44, "PI Order.") Based on his finding that the GP units sold by Defendants are securities, Judge Burns concluded the SEC had met its burden of establishing a prima facie case that Defendants have violated and continue to violate securities laws. (*Id*. at 21-22.)

Also on October 5, 2012, Defendants filed the instant Motion to Dismiss on the basis that the GP interests at issue in this case are not securities. (Dkt No. 43 at 1.) The SEC responded that, having satisfied the more stringent standard for issuance of a preliminary injunction, the SEC's allegations, taken as true, clearly withstand Defendants' Rule 12(b)(6) motion. (Dkt No. 55, Resp. to Mot. Dism. at 1.)

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is warranted under Rule12(b)(6) where the complaint lacks a cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984); *see Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."). Alternatively, a complaint may be dismissed where it presents a cognizable legal theory yet fails to plead essential facts under that theory. *Robertson*, 749 F.2d at 534. While a plaintiff need not give "detailed factual allegations," a plaintiff must plead sufficient facts that, if true, "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 547). A claim is facially plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In other words, "the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss*

1 *v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950.

In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party.  *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002); *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). Legal conclusions, however, need not be taken as true merely because they are cast in the form of factual allegations.  *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003); *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). When ruling on a motion to dismiss, a court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the court takes judicial notice.  *Lee v. Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001).

## DISCUSSION

Sections 2(a)(1) of the Securities Act and 3(a)(10) of the Exchange Act include investment contracts in their definitions of a "security."  15 U.S.C. §§ 77b(a)(1) & 78c(a)(10).  An investment contract is "a contract, transaction, or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party." *SEC v. W.J. Howey Co.*, 328 U.S. 293, 298-99 (1946). The requirement that profits be expected "solely" from the efforts of a promoter has been liberally construed; the Ninth Circuit has even done away with the term "solely" altogether for the purpose of determining whether an investment is a security contract.  *See Burnett v. Rowzee*, 2007 WL 2809769, at *4 (C.D. Cal. Sept. 26, 2007) (citing *Hocking v. Dubois*, 885 F.2d 1449, 1455 (9th Cir. 1989)). Rather, the question is "whether the efforts made by those other than the investor are the undeniably significant ones, those essential managerial efforts which effect the

failure or success of the enterprise." *SEC v. Glenn W. Turner Enters., Inc.* 474 F.2d 476, 484 (9th Cir. 1973).

The Supreme Court has emphasized that "economic reality is to govern over form and that the definitions of the various types of securities should not hinge on exact and literal tests." *Williamson v. Tucker*, 645 F.2d 404, 418 (5th Cir. 1981) (citing *Int'l Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America v. Daniel*, 439 U.S. 551, 558 (1979); *United Housing Foundation, Inc. v. Forman*, 421 U.S. 837, 848 (1975); *Tcherepnin v. Knight*, 389 U.S. 332, 336 (1967)). While there is a general presumption that GPs are not securities, "the mere fact that an investment takes the form of a general partnership or joint venture does not inevitably insulate it from the reach of the federal securities laws." *Williamson*, 645 F.2d at 422.

A GP is an investment contract—and thus a security—if one of the following factors is present: (1) the general partnership agreement leaves so little in the hands of the partners that the arrangement in fact distributes power as would a limited partnership; (2) the partners are so inexperienced and unknowledgeable in the general partnership business affairs that they are incapable of intelligently exercising their partnership powers; or (3) the partners are so dependent on some unique entrepreneurial or managerial ability of the promoter or manager that they cannot replace the manager of the enterprise or otherwise exercise meaningful partnership or venture powers. *Id*. at 422-24; *see also Koch*, 928 F.2d at 1477-78 (expressly adopting the *Williamson* test for investment contracts); *Hocking*, 885 F.2d at 1460. To determine whether investors expected profits solely from efforts of a promoter or third party and whether investments in GPs are investment contracts, courts can look to promotional materials, oral representations by promoters at the time of investment, and the practical possibility of investors exercising powers pursuant to partnership agreements. *Koch v. Hankins*, 928 F.2d 1471, 1476 (9th Cir. 1991)

The Court finds the SEC has met its burden of pleading sufficient factual matter, accepted as true and in light most favorable to the nonmoving party, to "state a claim

that is plausible on its face." *Iqbal*, 129 S. Ct. at 1949. Furthermore, having already obtained a preliminary injunction, the SEC has presumptively met its burden under Rule 12(b)(6). *See*, *e.g.*, *Motorola, Inc. v. Pick*, 2004 WL 5472092, at *3 (C.D. Cal. June 22, 2004) (denying motion to dismiss following a grant of preliminary injunction on the basis that plaintiff "easily met the less stringent burden of Rule 12(b)(6) having met its burden on a motion for preliminary injunction"). Although the presence of any one factor under *Williamson* renders a GP interest an investment contract, the Court concludes the SEC has pled sufficient facts to establish the second and third factors.

## I. Allocation of Power

The Court concludes the SEC's claims do not meet the first *Williamson* factor because the SEC does not sufficiently allege the GP agreements "leave so little power in the hands of the partners" as to render the GPs limited partnerships. *Williamson*, 645 F.2d at 422-24. The first factor addresses "the legal powers afforded the investor by the formal documents without regard to the practical impossibility of the investors invoking them." *Koch*, 928 F.2d at 1478.

Here, although partners may, in reality, lack any real power over the partnerships due to the size and structure of the GPs, the partnership agreements clearly afford the partners significant legal power. The SEC acknowledges the GP agreements purport to give general partners control over the partnerships by, for example, disallowing Defendants from voting and assigning Signatory Partners to sign documents or to take necessary actions on behalf of the partnership. (Compl. ¶¶ 24-25.) Therefore, the Court finds the GP agreements provide investors with sufficient legal authority to exercise power over the partnerships and "access to important information and protection against dependence on others." *Koch*, 928 F.2d at 1479. As such, the SEC's allegations are insufficient to satisfy the first *Williamson* factor.

## II. Experience and Knowledge of Partners

The Court finds the SEC has pled sufficient facts to satisfy the second *Williamson* factor. The relevant inquiry under the second factor is "whether the

partners are inexperienced or unknowledgeable 'in business affairs' generally, not whether they are experienced and sophisticated in the particular industry or area in which the partnership engages." *Holden*, 978 F.2d at 1121; *Koch*, 928 F.2d at 1479. Whether investors lack business expertise and what effect any lack of expertise has on investors' ability to exercise their partnership powers intelligently are questions of fact to be resolved by the fact finder. *Koch*, 928 F.2d at 1479.

The SEC alleges GP investors were often unsophisticated in business affairs. (Compl. ¶ 26.) Investors included a water filter salesman, a retired school teacher, and a pharmacist. (*Id*.) The SEC further alleges that even signatory partners—who legally assumed significant responsibilities on behalf of the GPs—were often unsophisticated in business affairs and unaware they had signed material documents on behalf of the GPs, such as GP formation paperwork, bank signature cards, and purchase agreements between Western and their respective GPs. (*Id*.) Although Defendants may prove to the contrary at a later stage in these proceedings, the Court finds the SEC has alleged sufficient facts to satisfy the second *Williamson* factor.

### III.  Dependence on Managerial Ability

The SEC's allegations also sufficiently establish the third *Williamson* factor. A GP interest is an investment contract if the partners are so dependent on some unique entrepreneurial or managerial ability of the promoter or manager that they cannot replace the manager of the enterprise or otherwise exercise meaningful partnership or venture powers. *Williamson*, 645 F.2d at 423-24. A dependency relationship may exist where investors rely "on the managing partner's unusual experience and ability in running [a] particular business." *Id*. at 423. It is insufficient that "partners in fact rely on others for the management of their investment; a partnership can be an investment contract only when the partners are so dependent on a particular manager that they cannot replace him or otherwise exercise ultimate control." *Id*. at 424. However, "[e]ven the most knowledgeable partner may be left with no meaningful option when there is no reasonable replacement for the investment's manager." *Id*.

Defendants contend that partners were not so dependent on Defendants' managerial and entrepreneurial skills such that partners could not replace Defendants or otherwise exercise any meaningful partnership powers because Defendants merely performed administrative duties and because returns on the GPs' investments were solely a function of market appreciation. (Dkt No. 43-1 at 10.) Defendants argue that the SEC has failed to plead facts supporting a finding that there is no reasonable replacement for Defendants. (*Id*. at 11.) The Court concludes, however, that the SEC has alleged sufficient facts suggesting that investors are so dependent on Defendants such that investors did not, and do not, have any meaningful alternatives other than to rely on Defendants.

### A. Fractional Ownership of Land

The SEC alleges that, because Schooler divided the properties he selected and purchased among several GPs, individual investors could only exercise control over their fractional portion of the parcel, forcing them to depend upon Defendants. *See Koch*, 928 F.2d at 1480 (holding that because each individual partnership had only a fractional interest in a jojoba plantation, "it would be difficult if not impossible for an investor to affect the management of the plantation as a whole"). The SEC pleads sufficient facts supporting a finding that a similar situation exists in this case. The SEC alleges Defendants formed more than 100 GPs and that each land deal involved multiple GP offerings. (Compl. ¶¶ 18, 23.) For example, the Complaint alleges that four separate GPs hold the Borda property, two GPS hold the Pyramid Highway property, and four GPs will hold the Stead property once all of the offerings close. (Dkt No. 1, ¶¶ 45, 53, 61.) This suggests that, as a practical matter, investors were, and are, dependent on Defendants because each partner may only "exercise general partner control and decisionmaking *within* each partnership" but not over the entire property belonging to several GPs. *See Koch*, 928 F.2d at 1480. As such, the pleaded facts, taken as true, sufficiently establish that investors were ultimately dependent on Western to sell their respective properties because the consent of all partnerships

invested in those respective properties was required.

### B. Defendants' Unique Expertise

In determining whether investors depend on the unique expertise of the promoter, courts may consider "the representations and promises made by promoters or others to induce reliance upon their entrepreneurial abilities." *Gordon v. Terry*, 684 F.2d 736, 742 (11th Cir. 1982) (finding that the third *Williamson* factor was met where promoter of land syndications represented to investors that, because of his expertise and experience with the central Florida real estate market, he could realize a substantial profit for investors by buying and reselling undeveloped land); *see also SEC v. Merchant Capital, LLC*, 483 F.3d 747, 756 (11th Cir. 1982) (reviewing representations made by the promoter and not just the legal agreements underling the sale of interests in determining investors' expectations of control); *Koch*, 928 F.2d at 1478 (considering representations made to investors in determining whether a transaction is a security); *Hocking v. Dubois*, 885 F.2d 1449, 1457 (9th Cir. 1989) (noting that in attempting to determine whether a scheme involves a security, inquiry is not limited to contracts but should include a thorough examination of Defendants' representations to induce investment).

The SEC pleads sufficient facts in support of its allegation that investors were induced to purchase GP units based on representations regarding Defendants' unique expertise. The SEC alleges, inter alia, that Western represented to investors that the firm had decades of experience putting together real estate syndications involving undeveloped land in California, Nevada, and Arizona and that Western had an impressive track record. (Compl. ¶ 30.) The SEC further alleges that Western's sales managers told a Western salesman during training that Schooler used his extensive experience in the industry to buy land at a very steep discount, and that Western was able to pass this discount on to investors. (*Id*. at 16, ¶ 65.) These allegations are sufficient to demonstrate that Defendants' representations regarding their expertise with the types of real estate transactions involved here induced investors' reliance on

Defendants' unique entrepreneurial abilities, and investors thereafter relied on and were dependent on Defendants' unique entrepreneurial abilities.

In sum, the Court concludes the SEC has sufficiently pled violations of Sections 5(a), 5(c), and 17(a) of the Securities Act, 15 U.S.C. §§ 77e(a), 77e(c), 77(q)(a); Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b); and Rule 10b-5, 17 C.F.R. § 240,10b-5.

## **CONCLUSION**

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss is **DENIED**.

DATED: July 1, 2013

HON. GONZALO P. CURIEL
United States District Judge