1
2
3
4
5
6
7

8              UNITED STATES DISTRICT COURT

9              SOUTHERN DISTRICT OF CALIFORNIA

10

11  SECURITIES AND EXCHANGE          )   Case No. 3:12-cv-2164-GPC-JMA
    COMMISSION,                      )
12                                   )   **ORDER DENYING MOTION FOR**
                    Plaintiff,       )   **PARTIAL RECONSIDERATION**
13                                   )
    v.                               )   **(ECF NO. 476)**
14                                   )
    LOUIS V. SCHOOLER and FIRST      )
15  FINANCIAL PLANNING               )
    CORPORATION, dba Western         )
16  Financial Planning Corporation,  )
                                     )
17                  Defendants.      )
                                     )
18  ─────────────────────────────   )

19          This is a civil enforcement action initiated by the Securities and Exchange

20  Commission ("SEC"), in which the SEC alleges defendants Louis V. Schooler

21  ("Schooler") and First Financial Planning Corporation d/b/a Western Financial

22  Planning Corporation ("Western") defrauded investors through the sale of unregistered

23  securities tied to interests in real property.

24          More specifically, the SEC alleges that, since 2007, Defendants have defrauded

25  thousands of investors by offering and selling approximately $50 million worth of

26  general partnership units ("GP units")—i.e., interests in general partnerships organized

27  by Defendants—without disclosing material facts regarding the true value of the

28  underlying land, the mortgages encumbering the properties, and when ownership of the

underlying land was actually transferred from Defendants to the general partnerships ("GPs").

The Court has entered a preliminary injunction and appointed Thomas C. Hebrank ("Receiver") as permanent receiver to operate and manage the affairs of Western, its subsidiaries, and the several GPs that Western formed in connection with the sale of the aforementioned interests in real property.

On August 16, 2013, the Court granted in part and denied in part Defendants' Motion to Modify Preliminary Injunction Order, in which Defendants requested that the Court remove the GPs from the receivership estate. (ECF No. 470.) In ordering that the GPs should be removed from the receivership estate, the Court imposed certain equitable conditions on their removal, including the following condition:

> [T]he Court first orders a pro rata reduction of Western's equity interests in the GPs according to the properties' current fair market value as set forth in the appraisals obtained by the Receiver. To the extent a GP account has a zero balance or insufficient funds to meet an obligation due within ninety days from the date of the reduction of Western's interests, such interests shall nonetheless be formally liquidated with no payment to Western. Before the GPs are released from the receivership, all of Western's equity interests in the GPs shall be liquidated to ensure that Western will have no future responsibility for any liability incurred by the GPs. Additionally, given the enormous disparity between the purchase prices of the GP properties and the funds Western raised from the GPs, the Court finds it equitable to preclude Western from receiving a share of any proceeds received from any future sale of the GP properties.

(ECF No. 470 at 25-26.)

Before the Court is Defendants' Motion for Partial Reconsideration of the Order Granting in Part and Denying in Part Defendants' Motion to Modify Preliminary Injunction Order ("Motion for Reconsideration"). (ECF No. 474.) The Court set an expedited briefing schedule and hearing on the Motion for Reconsideration. (ECF No. 483.) On September 9, 2013, both the SEC and the Receiver filed responses in opposition to the Motion for Reconsideration. (ECF Nos. 485, 486.) On September 16, 2013, Defendants filed a reply. (ECF No. 490.) Despite Defendants' request for oral argument, the Court deems the Motion for Reconsideration suitable for disposition without oral argument. See CivLR 7.1.d.1.

Defendants assert that Federal Rules of Civil Procedure 59(e) and 60 govern their motion for reconsideration.  Rules 59(e) and 60, however, apply only to motions attacking final, appealable orders.  United States v. Martin, 226 F.3d 1042, 1048 n.8 (9th Cir. 2000).   And Defendants have provided no authority to support their contention that the Court's condition—that certain assets held in the receivership estate be sold—constitutes a final, appealable order.

Thus, Defendants' Motion for Reconsideration is more appropriately considered under Rule 54(b), which provides in part that,

> any order other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Rule 54(b) reflects a district court's "inherent jurisdiction to modify, alter, or revoke" its own orders before they become final.  Martin, 226 F.3d at 1049.

A motion for reconsideration should be granted if: (1) the movant presents the court with newly discovered evidence; (2) the court committed clear error or the initial decision was manifestly unjust; or (3) there is an intervening change in controlling law. Sch. Dist. No. 1J, Multnomah County, Or. v. ACandS, Inc., 5 F.3d 1255, 1263 (9th Cir.1993); see also CivLR 7.1.i.1 (requiring motions for reconsideration to be filed "within twenty-eight (28) days after the entry of the ruling, order or judgment sought to be reconsidered").  Whether to grant or deny a motion for reconsideration is within the sound discretion of the district court.  Navajo Nation v. Norris, 331 F.3d 1041, 1046 (9th Cir.2003) (citing Kona Enter., Inc. v. Estate of Bishop, 229 F.3d 887, 883 (9th Cir.2000)).

Defendants base their Motion for Reconsideration on their contention that the Court's condition that Western's interests in the GPs be liquidated constitutes clear error and is manifestly unjust.  "[T]he clearly erroneous standard is significantly deferential, requiring a definite and firm conviction that a mistake has been committed." Concrete Pipe & Prods. v. Constr. Laborers Pension Trust, 508 U.S. 602,

623 (1993) (internal quotation marks omitted).

Defendants argue the Court's condition deprives Western of $11 million worth of assets without due process because Western has not yet been found liable on any of the SEC's underlying claims.  In addition to their due process argument, Defendants attack the Court's bases for imposing these conditions.

As to the Court's intention to protect Western from any future liability incurred by the GPs, Defendants argue that "the operative documents governing the GPs already define the respective relationships and burdens of all relevant parties," and that the Court's concern "can be adequately addressed through clear notice to the investors of the fact that . . . [while, Western owns interests in the GPs purportedly worth $11 million,] Western is not responsible for any liability incurred by the GPs."

Regarding the Court's intention to preclude Western from taking even more money from investors in the event the GPs decide to sell their properties, Defendants argue they are entitled to a trial to determine whether investors paid a fair price for their property interests.

Defendants then argue on behalf of the GPs–without any indication that counsel for Defendants also represents the GPs–that the Court's condition alters the structure of the GP entities in a way that increases "the ongoing pro rata burden each investor will have going forward."

"The Power of a district court to impose a receivership or grant other forms of ancillary relief . . . derives from the inherent power of a court of equity to fashion effective relief."  SEC v. Wencke, 622 F.2d 1363, 1369 (9th Cir. 1980).  The "primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the district court for the benefit of creditors."  SEC v. Hardy, 803. F.2d 1034, 1038 (9th Cir. 1986).  The court may therefore employ "reasonable procedures" to serve this purpose.  Id.

"Congress has authorized federal receivers to exercise broad powers in administering, retrieving, and disposing of assets belonging to the receivership."  SEC

v. Ross, 504 F.3d 1130, 1145 (9th Cir. 2007) (emphasis added).  Indeed, "the power of sale is within the scope of a receiver's 'complete control' over receivership assets." SEC v. Am. Capital Invs., Inc., 98 F.3d 1133, 1144 (9th Cir. 1996), abrogated on other grounds by Steel Co. v. Citizens for a Better Env't, 523 U.S. 83 (1998).

"A district court's power to supervise an equity receivership and to determine the appropriate action to be taken in the administration of the receivership is extremely broad."  SEC v. Capital Consultants, LLC, 397 F.3d 733, 738 (9th Cir. 2005).  A district court's supervisory decisions are reviewed for an abuse of discretion.  Id.

Defendants have fervently argued that the GPs are completely independent from Western and thus should never have been included in the receivership estate.  Now Defendants argue that Western should remain tied to the GPs because Western maintains interests in the GPs purportedly worth $11 million.  In the first place, Defendants provide no support for their contention that their interests in the GPs amount to $11 million.  In the second place, Defendants apparently forget that they themselves structured the GPs in a way that requires a liquidation of Western's interests in the GPs to fully separate Western from the GPs.  Recognizing this, the Court sought the most equitable way to remove the GPs from the receivership estate in a way that would, on one hand, ensure the GPs' actual independence from Western and, on the other hand, protect the remaining receivership estate (i.e., Western) from any future risk of liability incurred by the GPs.  In short, Defendants cannot have it both ways.

The Court is not convinced by Defendants' conclusory assertion that Western would bear no responsibility for any liabilities incurred by the GPs.  First, Defendants provide no documentation to support their position.  And second, Defendants' assertion runs counter to the general rule that each interest holder in a general partnership is jointly and severally liable for the debts and liabilities of the general partnership.  See, e.g., Rappaport v. Gelfand, 197 Cal. App. 4th 1213, 1231 n.14 (2011) ("Under the rules applicable to general partnerships, 'all partners are liable jointly and severally for all

obligations of the partnership.'").

Neither is the Court convinced that the fact that Defendants have not yet been found liable mandates reconsideration of the Court's concern that the GPs may be required to pay even more money to Western.  Once removed from the receivership estate, some GPs may decide to sell their properties, and if Western maintains an interest in the GPs, it is undisputed that investors would be required to share their recovery with Western despite the undisputed fact that they have already paid Western approximately 500% of what Western initially paid for the properties.

This is not the first time the Court has considered Defendants' arguments against liquidation of Western's interests in the GPs, as the Court also considered Defendants' arguments in opposition to the Receiver's Valuation Report and Recommendation, which recommended that Western's interests be liquidated in any GP that voted to leave the receivership estate.

Moreover, it is not as if the Court is ordering that Western merely give away its interests.  Rather, to protect investors and the receivership estate, the Court has ordered that Western's interests be sold back to the GPs according to the current fair market value of Western's interests as provided by the most reliable information currently before the Court—the appraisals obtained by the Receiver, an officer of the Court.  See In re San Vincente Med. Partners Ltd., 962 F.2d 1402, 1409 (9th Cir. 1992).

Based on the foregoing, the Court is not left with "a definite and firm conviction that a mistake has been committed."  See Concrete Pipe & Prods., 508 U.S. at 623.  Nor is the Court convinced that its decision was manifestly unjust.  Accordingly, Defendants' Motion for Reconsideration is **DENIED**.  The hearing on the Motion for Reconsideration, currently set for September 27, 2013, is **VACATED**.

**IT IS SO ORDERED.**

DATED:  September 19, 2013

HON. GONZALO P. CURIEL
United States District Judge

6