1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10

11  SECURITIES AND EXCHANGE          )  Case No. 3:12-cv-2164-GPC-JMA
    COMMISSION,                      )
12                                   )  **ORDER GRANTING IN PART**
              Plaintiff,             )  **MOTION FOR STAY AND**
13                                   )  **DENYING REQUEST FOR ORAL**
    v.                               )  **ARGUMENT**
14                                   )
    LOUIS V. SCHOOLER and FIRST      )  **(ECF NOS. 495, 496)**
15  FINANCIAL PLANNING               )
    CORPORATION, dba Western         )
16  Financial Planning Corporation,  )
                                     )
17            Defendants.            )
                                     )
18  ─────────────────────────────   )

19       This is a civil enforcement action initiated by the Securities and Exchange

20  Commission ("Commission"), in which the Commission alleges defendants Louis V.

21  Schooler ("Schooler") and First Financial Planning Corporation d/b/a Western

22  Financial Planning Corporation ("Western") defrauded investors through the sale of

23  unregistered securities tied to interests in real property.

24       On August 16, 2013, the Court granted in part and denied in part Defendants'

25  Motion to Modify Preliminary Injunction Order, in which Defendants requested that

26  the Court remove the GPs from the receivership estate.  (ECF No. 470.)  In ordering

27  that the GPs should be removed from the receivership estate, the Court imposed certain

28  conditions on their removal, including the following condition:

[T]he Court first orders a pro rata reduction of Western's equity interests in the GPs according to the properties' current fair market value as set forth in the appraisals obtained by the Receiver.  To the extent a GP account has a zero balance or insufficient funds to meet an obligation due within ninety days from the date of the reduction of Western's interests, such interests shall nonetheless be formally liquidated with no payment to Western.  Before the GPs are released from the receivership, all of Western's equity interests in the GPs shall be liquidated to ensure that Western will have no future responsibility for any liability incurred by the GPs.  Additionally, given the enormous disparity between the purchase prices of the GP properties and the funds Western raised from the GPs, the Court finds it equitable to preclude Western from receiving a share of any proceeds received from any future sale of the GP properties.

("Liquidation Condition") (ECF No. 470 at 25-26.)

The Court thereafter denied Defendants' Motion for Partial Reconsideration of the Order Granting in Part and Denying in Part Defendants' Motion to Modify Preliminary Injunction Order.  (ECF Nos. 474, 494.)

Defendants then appealed the Liquidation Condition of the Court's August 16, 2013 Order.  (ECF No. 499.)

Before the Court is Defendants' Motion for Stay of Order Pending Appeal, (ECF No. 495), along with Defendants' Request for Oral Argument, (ECF No. 496). The Receiver and the Commission have each filed a response in opposition to the Motion for Stay.  (ECF Nos. 509, 510.)  The Court finds Defendants' Motion for Stay suitable for disposition without oral argument.  See CivLR 7.1.d.1.

The crux of Defendants' Motion for Stay is that, if the Receiver is allowed to proceed with the liquidating Western's interests in the GPs before the Ninth Circuit rules on Defendants' appeal, Western will irreparably harmed without due process. More specifically, Defendants assert Western will be "permanently stripped of at least $11 million of assets and likely millions of dollars of future investment returns before the underlying claims have been tried," and that "[l]iquidating the equity interests at this time will unalterably change the status quo before the case on the merits can be heard, to the benefit of none of the parties or the investors."

In response, the Receiver argues Defendants' Motion for Stay should be denied because "Western is not being deprived of property or ordered to disgorge assets," but

is instead being required to convert its equity interests into their fair market value in cash as determined by the best evidence available, to wit, the appraisals obtained by the Receiver.  The Receiver notes Defendants have offered no evidence supporting their assertion that Western's equity interests "are worth anything remotely close to $11 million."

The Receiver asserts that, just as this Court had the power to order the sale/liquidation of Western's vehicles, gold coins, office furniture and equipment, this Court had the power to order the conversion of Western's equity interests into cash.

The Receiver further contends that imposing a stay that would allow Western to retain its interests in the GPs while releasing the GPs from the receivership "would harm the receivership estate and those with claims to recover from it" because of the responsibility Western would share for liabilities incurred by the GPs.

The Receiver argues "[t]he most important public interest at issue here is preserving and protecting Western's assets for the benefit of those with claims to recover from the estate," which interest will be put at risk "simply to preserve Defendants' fantasy that [Western's equity interests] are worth anything remotely close to $11 million."

The Receiver finally asserts "[t]he real reason Defendants sought partial reconsideration, filed the appeal, and brought this motion for stay is not to save hopelessly underwater investments."  The Receiver contends that, "[s]ince the Court rejected his attempt to have Western removed from the receivership last November, Mr. Schooler (with his team of lawyers and substantial personal resources) has systematically done everything in his power to ensure, regardless of the Court's orders on fee applications, there are no funds available to pay the Receiver and his counsel."  The Receiver argues "[t]he Court should see this for what it is – a tactic to impede the receivership – and reject this further attempt to circumvent the Court's orders and prevent the Court from being able to compensate the Receiver for his work."

The Commission asserts in response that it "does not oppose a stay in principle,

but strongly opposes one that it limited in the way defendants propose." The Commission argues that, if the Court imposes a stay, it should apply to both the Liquidation Condition and the GPs' release from the receivership. The Commission then argues a stay is not required in the first place because Defendants have not satisfied the requirements under Federal Rule of Civil Procedure 62(c) for obtaining a stay.

In reply, Defendants argue they are likely to prevail on their appeal because the Court ordered the Liquidation Condition based on case law involving post-judgment disgorgement and because no judgment has been rendered in this case. Defendants argue Western is likely to be irreparably harmed because it will receive no proceeds from GPs that do not currently have enough money to pay their upcoming bills and because the Court's order comes at a time "when property values have bottomed out," meaning Western will be deprived of its "investment-backed expectations."

Defendants further argue that a stay of the Liquidation Condition would not harm investors because "the GPs will still be responsible for all the same ongoing obligations they have under the partnership agreements." Defendants assert that, "if Western retains an ownership interest, it will remain financially responsible for making payments and contributions to the GPs as needed." (ECF No. 512 at 10 (emphasis added).) Defendants argue that any risk to Western of joint and several liability for the GPs' debts and liabilities has always existed and that "Western's ownership interest carries the obligation under the Partnership Agreement to make contributions as needed."

Courts consider four factors in determining whether to issue a stay pending appeal under Rule 62(c):

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

Hilton v. Braunskill, 481 U.S. 770, 776 (1987); Golden Gate Rest. Ass'n v. City &

Cnty. San Francisco, 512 F.3d 1112, 1115 (9th Cir. 2008).  The second and third factors require, in essence, a balancing of hardships.  See SEC v. Goldfarb, 2013 WL 4865144, at *2-3 (N.D. Cal. Sept. 12, 2013).

## 1.    Likelihood of Success on the Merits

"The Power of a district court to impose a receivership or grant other forms of ancillary relief . . . derives from the inherent power of a court of equity to fashion effective relief." SEC v. Wencke, 622 F.2d 1363, 1369 (9th Cir. 1980).  The "primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the district court for the benefit of creditors." SEC v. Hardy, 803. F.2d 1034, 1038 (9th Cir. 1986).

"Congress has authorized federal receivers to exercise broad powers in administering, retrieving, and disposing of assets belonging to the receivership." SEC v. Ross, 504 F.3d 1130, 1145 (9th Cir. 2007) (emphasis added).  Indeed, "the power of sale is within the scope of a receiver's 'complete control' over receivership assets." SEC v. Am. Capital Invs., Inc., 98 F.3d 1133, 1144 (9th Cir. 1996), abrogated on other grounds by Steel Co. v. Citizens for a Better Env't, 523 U.S. 83 (1998).  When a sale of receivership assets is ordered by the court, the assets should be sold at the "best price under the circumstances." Goldfarb, 2013 4865144, at *2 (quoting Tanzer v. Huffines, 412 F.2d 221, 222 (3d Cir. 1969)).

"A district court's power to supervise an equity receivership and to determine the appropriate action to be taken in the administration of the receivership is extremely broad." SEC v. Capital Consultants, LLC, 397 F.3d 733, 738 (9th Cir. 2005).  A district court's supervisory decisions are reviewed for an abuse of discretion. Id.  And the Ninth Circuit has observed that it "should not place itself in the position of second guessing a district court judge . . . particularly when there appears to be no clear abuse of discretion." Hardy, 803. F.2d at 1037-38.

Here, despite Defendants apparent acquiescence to the Court's prior orders authorizing the Receiver to sell Western's vehicles, gold coins, and office

furniture/equipment, the Court finds Defendants argument that the Liquidation Condition will infringe Western's due process rights to be reasonable. Still, Defendants provide no support for their assertion that Western will be deprived of assets worth $11 million. To the contrary, the best evidence of the current fair market value of Western's interests in the GPs is found in the appraisals obtained by the Receiver. Thus, it is unclear whether the Liquidation Condition deprives Western of any significant property interest.

Furthermore, Defendants actually confirm that Western is legally tied to the GPs in a way that means Western "will remain financially responsible for making payments and contributions to the GPs as needed." Thus, Defendants do little to assuage the Court's primary concern for imposing the Liquidation Condition, i.e., to protect the receivership estate from any future liability incurred by the GPs. In short, the Court finds this factor weighs slightly in favor of a stay.

**2.      Balance of Hardships**

On one hand, Western may not be able to share in the proceeds, if any, from the future sale of any GP property, and a stay may, depending on the Ninth Circuit's ruling, preserve Western's right to share in any such proceeds. On the other hand, it is uncertain whether the GPs will be able to and/or want to maintain their mostly underwater interests in the GP properties without losing them to foreclosure or deciding to dispose of their properties in short sales. Also uncertain is whether the GPs will ever net anything from a sale of their property interests in the first place. Thus, whether Western would ever benefit from its equity interests in an amount greater than the current value of those interests is unknown.

More certain is that, as set forth in this Court's prior orders, Western would likely be jointly and severally liable for any liability incurred by the GPs so long as Western maintains an interest in the GPs. And, as Defendants provide, Western apparently has a continuing obligation to fund the GPs under the partnership agreements.

1    Once the GPs are released from the receivership, the litigation stay protecting

2    the GPs will be lifted, and neither the Court nor the Receiver will have the authority

3    to protect Western from liability incurred by the GPs.  This risk runs counter to the

4    Court's duty to oversee the protection of Western and its assets.

5    Still, the likelihood of the GPs incurring liability for which Western may be

6    responsible is unknown.  Further, it is unlikely that the Commission or its case against

7    Defendants would be harmed by a stay.  The Court thus finds the uncertainty attached

8    to the litigants' potential hardships tips in favor of a stay.

9    **3.    Public Interest**

10    Generally, there is a strong public interest in honoring the due process rights of

11    litigants.  Here, however, there is also a strong public interest in ensuring the GPs are

12    fully separated from Western in order to protect the receivership estate for the benefit

13    of Western's creditors, which may include investors depending on the outcome of this

14    case.  Because the GPs currently remain in the receivership, they are protected from

15    litigation by third parties.  If the GPs were released from the receivership before being

16    fully separated from Western, Western would face liability for any obligations incurred

17    by the GPs.  The Court thus finds the public interest weighs against a stay of only the

18    Liquidation Condition.

19    Having considered the foregoing factors, the Court finds a stay of the

20    Liquidation Condition is appropriate.  But because it is a condition to the GPs' release

21    from the receivership, the Court must stay the entire August 16, 2013 Order with regard

22    to releasing the GPs from the receivership.   The Court will thus grant in part

23    Defendants' Motion for Stay.

24    Once Defendants' appeal of the Liquidation Condition is resolved, the Court will

25    direct the Receiver to take the steps outlined in the Court's August 16, 2013

26    Order—with or without the Liquidation Condition depending on the Ninth Circuit's

27    ruling—for the release of the GPs from the receivership.

28    Having considered the parties' submissions, the record in this matter, and the

7

applicable law, **IT IS HEREBY ORDERED** that:

1.      Defendants' Motion to Stay, (ECF No. 495), is **GRANTED IN PART**;

2.      The Court's August 16, 2013 Order is **STAYED** with regard to the release of the GPs from the receivership pending the outcome of Defendants' appeal;

3.      Defendants' Request for Oral Argument, (ECF No. 496), is **DENIED**; and

4.      The hearing on Defendants' Motion for Stay, currently set for November 15, 2013, is **VACATED**.

DATED:  November 14, 2013

HON. GONZALO P. CURIEL
United States District Judge