UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>LOUIS V. SCHOOLER and FIRST FINANCIAL PLANNING CORPORATION, dba Western Financial Planning Corporation,<br><br>Defendants. | Case No. 3:12-cv-2164-GPC-JMA<br><br>**NOTICE OF TENTATIVE RULING ON SUA SPONTE RECONSIDERATION OF AUGUST 16, 2013 ORDER TO RELEASE GENERAL PARTNERSHIPS FROM RECEIVERSHIP** |

On March 13, 2013, the Court issued its Preliminary Injunction Order and Order Appointing Thomas C. Hebrank Permanent Receiver ("Injunction Order"). (ECF No. 174.) The Injunction Order provides that Mr. Hebrank ("Receiver") be appointed over defendant Western and the several general partnerships ("GPs") that Defendants organized to hold interests in real property.

On August 16, 2013, the Court issued its Order Granting in Part and Denying in Part Defendants' Motion to Modify Preliminary Injunction Order ("Modification Order"). (ECF No. 470.) The Modification Order provides, among other things, that

1  the GPs should be released from the receivership upon satisfaction of certain
2  conditions.  (Id. at 25-27.)  Defendants and the SEC each appealed the Modification
3  Order.  (ECF Nos. 499, 514.)
4        On April 25, 2014, the Court issued its Order Denying Defendants' Motion for
5  Partial Summary Judgment and Granting in Part and Denying in Part Plaintiff's Motion
6  for Partial Summary Judgment ("Summary Judgment Order").  (ECF No. 583.)  In the
7  Summary Judgment Order, the Court concluded the interests in real property that
8  Defendants sold to investors are, as a matter of law, securities in the form of investment
9  contracts.  Per this conclusion, the Court found good cause to reconsider whether to
10 release the GPs from the receivership.
11       After the Court indicated it would reconsider the Modification Order, the SEC
12 moved for and was granted a stay of the parties' cross-appeals before the Ninth Circuit.
13 (ECF No. 604.)  The Ninth Circuit remanded the case to this Court for the express
14 purpose of reconsidering the Modification Order.
15       The Court specifically asked the parties to brief the following three issues: (1)
16 "how the parties' cross-appeals to the Ninth Circuit affect the Court's desire to
17 reconsider" the Modification Order; (2) "whether, given the Court's conclusion that the
18 GP units are securities, the Court should reconsider its order removing the GPs from
19 the receivership"; and (3) "the need to provide investors with an opportunity to file
20 briefs and appear at the July 18, 2014 hearing."  The parties have filed opening and
21 responsive briefs on these issues.  (ECF Nos. 586, 588, 589, 591.)  The Court has also
22 received and considered dozens of letters from investors who are primarily concerned
23 with being granted an opportunity to be heard and with their being included in the
24 receivership.  (See, e.g., ECF Nos. 611, 615.)
25       The Court now provides notice of its tentative rulings on these issues.
26 **1.  Effect of Parties' Cross-Appeals**
27       Because the Ninth Circuit has remanded the case "for the limited purpose of
28 permitting th[is] [C]ourt to reconsider the August 16, 2013 order," (ECF No. 604), the

Court will proceed with reconsidering the Modification Order.

**2.     Reconsideration of August 16, 2013 Modification Order**

The Court concludes the GPs should remain in the receivership for two main reasons.

First, because the Court has concluded the GP units are–as a matter of law–securities in the form of investment contracts, and because an investment contract is "a contract, transaction, or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party," SEC v. W.J. Howey Co., 328 U.S. 293, 298-99 (1946) (emphasis added), it follows that the GPs in this case have been found to depend on Defendants for a return on their investments.  See also Hocking v. Dubois, 885 F.2d 1449, 1455 (9th Cir. 1989) (explaining that the Ninth Circuit has "dropped the term 'solely' and instead require[s] that 'the efforts by those other than the investor are the undeniably significant ones, those essential managerial efforts which affect the failure or success of the enterprise'").

Second, because the GPs have always depended on Defendants to carry out the essential functions of this enterprise, it follows that a receiver stepping into Defendants' prior role during the pendency of this litigation is appropriate to ensure investors' interests are protected.  While the day-to-day operations of the GPs may be uncomplicated (as the Court has previously found), it has become clear that the essential functions of this enterprise require centralized management.  The essential functions of this enterprise include, among other activities: (1) finding raw land; (2) purchasing the raw land with cash and/or seller financing; (3) organizing GPs to hold the raw land; (4) selling or financing interests in the GPs to individual investors across the; (5) organizing the GPs into co-tenancies to hold undivided parcels of the raw land; (6) receiving and evaluating offers to buy the raw land; (7) communicating offers to investors with recommendations on whether to sell the raw land; and (8) coordinating decisions amongst co-tenants regarding disposition of the raw land.

     Most co-tenancies require a unanimous vote before any action may be taken with regard to an underlying property. Because each GP may consist of hundreds of investors from around the country, and because each co-tenancy may consist of several GPs, it is clear that hundreds, if not thousands of investors, would have to communicate and collaborate before a property may, for example, be sold. On one hand, it may be determined that this co-tenancy arrangement is feasible without the management and guidance that Defendants have historically provided. But because Defendants have always coordinated such communication and collaboration among investors, because the Court has found investors depend on Defendants to do so, and because the Receiver has merely stepped into the shoes of Defendants (or at least Western), the Court concludes it is appropriate to keep the GPs in the receivership.

**3.  Due Process**

     Because the Court now concludes the GPs should remain in the receivership, the Court finds it appropriate to give the GPs—all of which already have notice of this action—an opportunity to be heard. See In re San Vincente Med. Partners Ltd., 962 F.2d 1402, 1407 (9th Cir. 1992).

     The Court will set a hearing on **October 3, 2014, at 1:30 p.m.**, at which the GPs will be permitted to respond to the Court's decision to keep the GPs in the receivership. Each GP will be permitted to file a single brief, not to exceed fifteen (15) pages, in response to the Court's decision to keep the GPs in the receivership (briefs on behalf of individual investors will not be accepted). If a GP does not wish to file a brief, but does wish to appear at the October 3, 2014 hearing, the GP will be permitted to file a notice of intention to appear at the hearing. All briefs and notices of intention to appear must be filed with the Court and served on or before **September 5, 2014**. Any response to the GP briefs shall be filed and served on or before **September 19, 2014**. At the October 3, 2014 hearing, each GP will be given fifteen (15) minutes to address

/ / /

/ / /

the Court.

DATED: July 18, 2014

HON. GONZALO P. CURIEL
United States District Judge