UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>LOUIS V. SCHOOLER and FIRST FINANCIAL PLANNING CORPORATION, dba Western Financial Planning Corporation,<br><br>　　　　　　Defendants. | Case No. 3:12-cv-2164-GPC-JMA<br><br>**ORDER ON SUA SPONTE RECONSIDERATION OF AUGUST 16, 2013 ORDER TO RELEASE GENERAL PARTNERSHIPS FROM RECEIVERSHIP** |

　　　　On March 13, 2013, the Court issued its Preliminary Injunction Order and Order Appointing Thomas C. Hebrank Permanent Receiver ("Injunction Order"). (ECF No. 174.) The Injunction Order provides that Mr. Hebrank ("Receiver") be appointed over defendant Western, the entities it controls, and the several general partnerships ("GPs") that Defendants organized to hold interests in real property.

　　　　On August 16, 2013, the Court issued its Order Granting in Part and Denying in Part Defendants' Motion to Modify Preliminary Injunction Order ("Modification Order"). (ECF No. 470.) The Modification Order provided, among other things, that

the GPs should be released from the receivership upon satisfaction of certain conditions. (Id. at 25-27.) Defendants and the SEC each appealed the Modification Order. (ECF Nos. 499, 514.)

On April 25, 2014, the Court issued its Order Denying Defendants' Motion for Partial Summary Judgment and Granting in Part and Denying in Part Plaintiff's Motion for Partial Summary Judgment ("Summary Judgment Order"). (ECF No. 583.) In the Summary Judgment Order, the Court concluded the interests in real property that Defendants sold to investors are, as a matter of law, securities in the form of investment contracts. Per this conclusion, the Court found good cause to reconsider whether to release the GPs from the receivership.

After the Court indicated it would reconsider the Modification Order, the SEC moved for and was granted a stay of the parties' cross-appeals before the Ninth Circuit. (ECF No. 604.) The Ninth Circuit remanded the case for the express purpose of allowing this Court to reconsider the Modification Order.

This Court asked the parties to brief the following three issues: (1) "how the parties' cross-appeals to the Ninth Circuit affect the Court's desire to reconsider" the Modification Order; (2) "whether, given the Court's conclusion that the GP units are securities, the Court should reconsider its order removing the GPs from the receivership"; and (3) "the need to provide investors with an opportunity to file briefs and appear at the July 18, 2014 hearing." The parties filed opening and responsive briefs on these issues. (ECF Nos. 586, 588, 589, 591.) The Court also received dozens of letters from investors. (See, e.g., 611, 615, 622, 624, 628.) After considering the parties' and investors' positions, the Court held a hearing on July 18, 2014. (ECF No. 626.) The Court now addresses the three foregoing issues in turn.

**1.    Effect of Parties' Cross-Appeals**

Because the Ninth Circuit has remanded the case "for the limited purpose of permitting th[is] [C]ourt to reconsider the August 16, 2013 order," (ECF No. 604), this Court proceeds with reconsidering the Modification Order.

**2.      Reconsideration of August 16, 2013 Modification Order**

Generally, "any order . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b).

While the Federal Rules of Civil Procedure do not set forth a standard for reconsidering interlocutory rulings, the "law of the case" doctrine and public policy dictate that the efficient operation of the judicial system requires the avoidance of re-arguing questions that have already been decided. See Pyramid Lake Paiute Tribe of Indians v. Hodel, 882 F.2d 364, 369 n.5 (9th Cir. 1989). As such, most courts adhere to a fairly narrow standard by which to reconsider their interlocutory rulings. This standard requires: (1) an intervening change in the law; (2) additional evidence that was not previously available; or (3) that the prior decision was based on clear error or would work manifest injustice. Id.; Marlyn Natraceuticals, Inc. v. Mucos Pharma GmbH & Co., 571 F.3d 873, 880 (9th Cir.2009); Sch. Dist. No. 1J v. ACandS, Inc., 5 F.3d 1255, 1263 (9th Cir.1993).

Defendants argue the Court's conclusion that the GP units are, as a matter of law, securities in the form of investment contracts is irrelevant to whether the GPs should be released from the receivership. The Court finds Defendants' arguments are, however, asserted on behalf of the GPs, which the Court has previously found to be inappropriate, given the actual conflict of interest that exists between Defendants and the GPs. (See ECF No. 511 at 8.)

Investors are concerned with three main issues: (1) the GPs being included in the receivership when investors have themselves engaged in no apparent wrongdoing; (2) the GPs having not yet been provided a hearing on whether they should be included in the receivership; and (3) the costs of the receivership.

The SEC asserts the Court's conclusion that the GP units are securities in the form of investment contracts is not only relevant to whether the GPs should remain in

the receivership, but indeed requires that the GPs remain in the receivership. The SEC asserts that "investment contracts," by definition, involve promoters who "manage, control, and operate the enterprise," and that, "[b]ecause of this dependence, the [R]eceiver, who has merely stepped into Western's shoes, is necessary to ensure the continued management, control, and operation of the enterprise."

At the July 18, 2014 hearing, counsel for the Receiver asserted that management of the GPs is more complicated than previously thought by the Court. Counsel for the Receiver argued the following facts, as supported by the record in this matter, illustrate the GPs' historic reliance on the efforts of others to manage their investments: (1) when the receivership was implemented, property taxes on certain GP properties were past due; (2) Western has bought out the interests of investors in certain GPs who were dissatisfied with their investments and replaced those investors with new investors in the same GPs; (3) Western has loaned certain GPs over $500,000 to cover funding shortfalls; (4) at least one GP property was subject to condemnation proceedings in Nevada; (5) certain GP properties have water rights requiring active management; (6) at least one GP property had or has tenants living rent-free on it; and (7) county officials have approached the owners of one GP property for permission to construct an easement across the property.

Here, as a preliminary matter, the Court concludes it is appropriate to reconsider the August 16, 2013 Modification Order because, when the Court issued the Modification Order, it was unknown whether the GP units were securities and because the Court, in issuing the Modification Order, erroneously focused on only some of the GPs' day-to-day operations.

"The power of a district court to impose a receivership . . . . derives from the inherent power of a court of equity to fashion effective relief." SEC v. Wencke, 622 F.2d 1363, 1369 (9th Cir. 1980). The "primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the district court for the benefit of creditors." SEC v. Hardy, 803 F.2d 1034, 1038 (9th Cir. 1986). A district

court may therefore institute "reasonable procedures" to effect this purpose. Id.

Having considered the parties' submissions, the record in this matter, the many letters from individual investors, and the applicable law, the Court concludes the GPs should remain in the receivership.

First, the Court has concluded that the GP units are–as a matter of law–securities in the form of investment contracts. Because an investment contract is "a contract, transaction, or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party," SEC v. W.J. Howey Co., 328 U.S. 293, 298-99 (1946), it follows that the GPs in this case have been found to depend on Defendants for a return on their investments. See also Hocking v. Dubois, 885 F.2d 1449, 1455 (9th Cir. 1989) (explaining that the Ninth Circuit has "dropped the term 'solely' and instead require[s] that 'the efforts by those other than the investor are the undeniably significant ones, those essential managerial efforts which affect the failure or success of the enterprise'").

The conclusion that the GPs have been found to depend on Defendants is supported by the analysis set forth in the Court's Summary Judgment Order. There, the Court concluded that–at the time they invested–investors had no formal power to control their investments because the agreements they signed were not, by their own terms, legally effective until months or years after investors turned their money over to Defendants. The Court further concluded that disputes of material fact exist with regard to investors' actual knowledge of general business matters and the precise degree of dependance that investors had on Defendants' unique entrepreneurial and/or managerial abilities. Therefore, additional bases for concluding the GP units are securities may still be established.

Second, because the GPs have been found to depend on Defendants' efforts for a return on their investment, it follows that a receiver undertaking the same efforts that Defendants historically undertook is appropriate. The primary efforts that investors (once organized into GPs and co-tenancies by Defendants) have historically relied on

Defendants to undertake, include: (1) receiving and evaluating offers to buy GP properties, (2) communicating offers to investors with recommendations, and (3) coordinating decisions amongst GPs/co-tenants. Defendants' efforts, however, went further than this.

While most of the GPs' day-to-day operations are uncomplicated, as the Court explained in the Modification Order, the Court finds the GPs' day-to-day operations are not as simple as the Court previously thought them to be. As the Receiver's counsel pointed out, the GPs' everyday responsibilities go beyond, for example, paying property taxes. The GPs—under Defendants' or the Receiver's management—have handled condemnation proceedings, water rights, and residential tenants living rent-free on a GP property. Defendants have, in the past, bought out the interests of dissatisfied investors and loaned money to certain GPs so those GPs could stay afloat. The Receiver has ensured that investors in certain GPs were permitted to vote on whether to extend their GP terms, as their GP terms had expired or were set to expire in the near future. These are significant efforts to manage GP interests.

Perhaps the strongest indication that the GPs should remain in the receivership is that the GPs are organized into co-tenancies, whereby each co-tenant (i.e., each GP) generally owns only an undivided fraction of a given property. Most of these co-tenancies require a unanimous vote before any action may be taken with regard to the underlying property. Because each GP may consist of hundreds of investors from around the country, and because each co-tenancy may consist of several GPs, it is clear that hundreds, if not thousands of investors, would have to communicate and collaborate before a property may, for example, be sold. Defendants have always coordinated such communication and collaboration among investors.

One investor, Ms. Nancy Kemper ("Kemper") has, in the past couple of months, attempted to coordinate the sale of a property owned by two GPs: Rainbow Partners and Horizon Partners. (See ECF No. 624-3 at 16 through ECF No. 624-7 at 31.) As noted by the Receiver's counsel at the July 18, 2014 hearing, however, the listing price

1  Kemper acquired for the sale of this property is based on the erroneous assumption that
2  the property is zoned for commercial, as opposed to residential, use. The listing price
3  is therefore severely overinflated. The Receiver's counsel moreover noted that the
4  voting requirements set forth in the applicable GP and co-tenancy agreements were not
5  followed. In response to Kemper's efforts, the Receiver spoke with a listing agent who
6  knew nothing of Kemper's listing price or the appraisal previously obtained by the
7  Receiver. This third agent came up with a listing price that is based on the correct
8  assumption that this property is zoned for residential use and that closely approximates
9  the appraisal obtained by the Receiver.

10  Based on the foregoing, the Court finds that keeping the GPs in the receivership,
11  under the same type of management that Defendants have historically provided, will
12  promote the orderly and efficient administration of the GP properties for the benefit of
13  investors during the pendency of this litigation. See Hardy, 803 F.2d at 1038.

14  **3.    Due Process**

15  In its Modification Order, the Court concluded that, because the GPs had not
16  been deprived of a material property interest (i.e., ownership of the underlying
17  properties), the GPs' due-process rights had not yet been infringed. Then, because the
18  Court ruled that the GPs should be released from the receivership upon satisfaction of
19  certain conditions, it became unnecessary to provide the GPs with an opportunity to be
20  heard.

21  Because the Court now concludes that the GPs should remain in the receivership,
22  the Court finds it appropriate to give the GPs—all of which already have notice of this
23  action—an opportunity to be heard. See In re San Vincente Med. Partners Ltd., 962
24  F.2d 1402, 1407 (9th Cir. 1992).

25  **CONCLUSION & ORDER**

26  Based on the foregoing, **IT IS HEREBY ORDERED** that:
27  1.    Before the Court vacates the portion of its August 16, 2013 Modification
28       Order releasing the GPs from the receivership, the GPs shall have an

opportunity to be heard.

2. The Court sets a hearing on **October 10, 2014, at 1:30 p.m.**, at which time the GPs will be permitted to respond to the Court's decision to keep the GPs in the receivership.

3. While the Receiver maintains control over the GPs, the GPs will be permitted to provide a response to the Court's decision without the response being reviewed or approved by the Receiver. The GPs may, however, consult with the Receiver on formulating a response.

4. Each GP may file a single brief, not to exceed fifteen (15) pages, in response to the Court's decision to keep the GPs in the receivership. Briefs should state whether the GP wants to be heard in open court at the October 10, 2014 hearing.

5. If a GP does not wish to file a brief, but does wish to be heard in open court at the October 10, 2014 hearing, the GP shall file a notice of intention to appear at the hearing.

6. If an individual investor within a particular GP disagrees with his or her GP's official response to the Court's decision, the individual's points of disagreement shall be included in a separate section of his or her GP's official response. In this situation, a GP's brief may not exceed twenty (20) pages.

7. All official responses must include an attachment that lists the names of the individual investors that have signed on to the official response.

8. All official responses must be filed with the Court on or before **September 12, 2014**.

9. Any response by the parties or the Receiver to the GP briefs shall be filed on or before **September 26, 2014**. The parties and the Receiver are directed to consolidate any response into one responsive brief per party. No replies will be permitted.

10. At the October 10, 2014 hearing, each GP that has stated an intention to be heard in open court will be given up to fifteen (15) minutes to address the Court, subject to extension for good cause shown.

11. The Receiver is directed to disseminate this Order by: (1) posting it on the website designated for this litigation, (2) emailing it to individual investors, and (3) mailing it to the address of record for each GP.

DATED: July 22, 2014

HON. GONZALO P. CURIEL
United States District Judge