UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>LOUIS V. SCHOOLER and FIRST FINANCIAL PLANNING CORPORATION, dba Western Financial Planning Corporation,<br><br>Defendants. | Case No. 3:12-cv-2164-GPC-JMA<br><br>**ORDER DENYING MOTION FOR PARTIAL RECONSIDERATION OF APRIL 25, 2014 SUMMARY JUDGMENT ORDER**<br><br>**(ECF NO. 592)** |

On April 25, 2014, the Court denied Defendants' Motion for Partial Summary Judgment and granted in part and denied in part the SEC's Motion for Partial Summary Judgment. (ECF No. 583, "Summary Judgment Order.")  In doing so, the Court found no dispute of material fact with regard to application of the first Williamson factor. See Williamson v. Tucker, 645 F.2d 404, 424 (5th Cir. 1981); Koch v. Hankins, 928 F.2d 1471, 1478 (9th Cir. 2011) (adopting Williamson analysis for use in the Ninth Circuit).[1]

---

[1] Under the first Williamson factor, courts read and interpret relevant agreements to determine whether the agreements, according to their express terms, leave so little power in the hands of an investor in a general partnership that the resulting distribution of power is more akin to a limited partnership. Williamson, 645 F.2d at 424. If just one of the three Williamson factors is met, then the third element of the Howey test will be satisfied. Williamson, 645 F.2d at 424. The Howey test is used for determining whether an investment in a general partnership, for example, is actually a security

In applying the first <u>Williamson</u> factor, the Court examined the "Partnership Agreement" and the "Co-Tenancy Agreement." The Partnership Agreement governs the relations among investors in the general partnerships ("GPs") that Defendants organized to hold undivided, fractional interests in raw land. Investors generally signed a Partnership Agreement upon purchasing their interests in the GPs—i.e., at the time they gave their money to Defendants. The "Co-Tenancy Agreement" governs the relationships between those GPs that own properties as co-tenants. The Court found that investors had no powers under these two agreements at the time of investment because, according to their express terms, these agreements did not become effective until months or years after investors gave their money to Defendants.

Based on that finding, the Court concluded the first <u>Williamson</u> factor was satisfied, meaning the Court found that investors were left with so little power at the time of investment that the resulting allocation of powers was more akin to a limited partnership. This meant that the third <u>Howey</u> element was satisfied. Thus, because the first two <u>Howey</u> elements were not in dispute, the Court found the GP interests that investors bought from Defendants to be securities in the form of investment contracts.

Presently before the Court is Defendants' request for reconsideration of the Summary Judgment Order. (ECF No. 592, "Motion for Reconsideration.") Specifically, Defendants ask the Court to reconsider its ruling on the first <u>Williamson</u> factor. The SEC opposes Defendants' Motion for Reconsideration, (ECF No. 605), and Defendants have filed a reply, (ECF No. 607). The Court finds Defendants' Motion for Reconsideration suitable for disposition without oral argument. <u>See</u> CivLR 7.1.d.1. Having considered the parties' submissions and the applicable law, and for the reasons that follow, the Court will **DENY** Defendants' Motion for Reconsideration.

District courts have the discretion to reconsider interlocutory rulings until a final judgment is entered. Fed. R. Civ. P. 54(b); <u>United States v. Martin</u>, 226 F.3d 1042,

---

in the form of an investment contract, and its elements include: (1) an investment of money, (2) a common enterprise, and (3) the expectation of profits derived solely from the efforts of others. <u>SEC v. W.J. Howey Co.</u>, 328 U.S. 293, 298-99 (1946); <u>Koch</u>, 928 F.2d at 1476.

1048-49 (9th Cir. 2000). While the Federal Rules of Civil Procedure do not set forth a standard for reconsidering interlocutory rulings, the "law of the case" doctrine and public policy dictate that the efficient operation of the judicial system requires the avoidance of re-arguing questions that have already been decided. See Pyramid Lake Paiute Tribe of Indians v. Hodel, 882 F.2d 364, 369 n.5 (9th Cir. 1989).

As such, most courts adhere to a fairly narrow standard by which to reconsider their interlocutory rulings. This standard requires: (1) an intervening change in the law; (2) additional evidence that was not previously available; or (3) that the prior decision was based on clear error or would work manifest injustice. Id.; Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co., 571 F.3d 873, 880 (9th Cir.2009); Sch. Dist. No. 1J v. ACandS, Inc., 5 F.3d 1255, 1263 (9th Cir.1993).

Reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." Kona Enters., Inc. v. Estate of Bishop, 229 F.3d 877, 890 (9th Cir. 2000). "'A motion for reconsideration is not an opportunity to renew arguments considered and rejected by the court, nor is it an opportunity for a party to re-argue a motion because it is dissatisfied with the original outcome.'" FTC v. Neovi, Inc., 2009 WL 56130, at *2 (S.D. Cal. Jan. 7, 2009) (quoting Devinsky v. Kingsford, 2008 WL 2704338, at *2 (S.D.N.Y. July 10, 2008)).

In addition to these substantive standards, Civil Local Rule 7.1.i.1 requires a party moving for reconsideration to submit an affidavit or certified statement of an attorney

> setting forth the material facts and circumstances surrounding each prior application, including inter alia: (1) when and to what judge the application was made, (2) what ruling or decision or order was made thereon, and (3) what new or different facts and circumstances are claimed to exist which did not exist, or were not shown, upon such prior application.

Rule 7.1.i.2 provides that "any motion or application for reconsideration must be filed within twenty-eight (28) days after the entry of the ruling, order or judgment sought to be reconsidered."

Defendants argue the Court clearly erred in applying the first Williamson factor because the Court applied this factor to a "formation, subscription phase of the GPs" "for the first time ever." (ECF No. 592-1 at 7.) Defendants argue that, "even if the subscription period were relevant to the Williamson analysis, the Court's Order does not correctly identify when the Partnership Agreement is in effect." Defendants assert, that contrary to the Court's conclusion, "[t]he Partnership Agreement is in effect during the subscription phase." Defendants argue the Court further erred because "this Court had previously ruled twice that the first Williamson factor had not been met." Finally, Defendants argue the Court erred by treating disputed facts as undisputed.

In opposition, the SEC argues Defendants' Motion for Reconsideration should be denied because Defendants' assertions of clear error are based on re-arguments of the same position Defendants took in opposition to the SEC's Motion for Partial Summary Judgment. The SEC also argues Defendants failed to comply with Civil Local Rule 7.1.i.1 because Defendants did not provide an affidavit setting forth the material facts and circumstances surrounding its prior request for relief. On the merits, the SEC argues the Court did not err in applying the first Williamson factor because the Partnership Agreement, as written, was not effective at the time of investment. The SEC argues the Court's prior rulings on the first Williamson factor have no impact on the Summary Judgment Order because those prior rulings were made at the pleading stage and because the Court had never before considered the effective dates of the Partnership Agreement. Finally, the SEC argues the facts Defendants claim the Court improperly treated as undisputed are irrelevant to application of the first Williamson factor.

As a preliminary matter, the Court rejects Defendants' arguments that the Court's prior rulings on the first Williamson factor during the pleading stage of this case preclude the Court's ruling on that factor at the summary judgment phase. The Court further finds the facts that Defendants' argue the Court improperly treated as undisputed are irrelevant to application of the first Williamson factor.

Before the Court addresses Defendants' remaining arguments for reconsideration, the Court addresses the requirements of Civil Local Rule 7.1.i.1, which provides:

> Whenever any motion . . . for any order or other relief has been made to any judge and has been refused in whole or in part, . . . and a subsequent motion . . . is made for the same relief in whole or in part upon the same or any alleged different state of facts, it will be the continuing duty of each party and attorney seeking such relief to present to the judge to whom any subsequent application is made an affidavit of a party or witness or certified statement of an attorney setting forth the material facts and circumstances surrounding each prior application, including inter alia: (1) when and to what judge the application was made, (2) what ruling or decision or order was made thereon, and (3) what new or different facts and circumstances are claimed to exist which did not exist, or were not shown, upon such prior application.

Defendants argue Rule 7.1.i.1 "addresses motions for reconsideration brought from a <u>denial</u> of a motion." Defendants thus argue that–because "Defendants do not seek reconsideration of the Order denying their motion for partial summary judgment on the first and second <u>Williamson</u> factors" (but instead seek "reconsideration of that part of the Order <u>granting partial summary judgment to the SEC</u>")–Defendants are not required to comply with Rule 7.1.i.1. Defendants' reasoning is unpersuasive.

In moving for partial summary judgment on the first <u>Williamson</u> factor, Defendants essentially requested a ruling that the first <u>Williamson</u> factor is unsatisfied as a matter of law. The Court denied Defendants' request and instead granted the SEC's opposing request for summary judgment in its favor on the first <u>Williamson</u> factor. Defendants now ask for the same relief they asked for in moving for partial summary judgment—i.e., that the Court find, as a matter of law, that the first <u>Williamson</u> factor is unmet. Because Defendants are requesting the same relief they sought in moving for partial summary judgment, and because Defendants did not submit the affidavit or certified attorney statement required by Rule 7.1.i.1, the Court concludes Defendants have failed to comply with Rule 7.1.i.1. This is a sufficient basis on which to deny Defendants' Motion for Reconsideration. See <u>FTC v. Neovi, Inc.</u>, 2009 WL 56130, at *2 (S.D. Cal. Jan. 7, 2009). This, however, is not the only basis for

denial.

The Court agrees with the SEC that Defendants have merely reargued the points they unsuccessfully advanced in opposing the SEC's Motion for Partial Summary Judgment. Defendants previously argued, for example, that: "No legal entity has authority prior to its existence – every entity must go through a period of formation when it is an idea that exists, but the final formation documents have not yet been finalized." (ECF No. 556 at 15.) Defendants argued: "Analyzing the lack of power prior to formation is nowhere contemplated as a basis for applying the first Williamson factor." (Id. at 16.) Defendants argued:

> Although the SEC argues that "these agreements could not have been in effect, and the GPs could not have exited [sic], during the entire offering period," because "the investors did not have control over their funds or the underlying real estate during the all-important offering period," that argument is directly contradicted by the clear language of the partnership agreement.

(Id. at 14.) The Court considered and rejected the foregoing arguments in applying the first Williamson factor. Because Defendants make the same arguments in support of their Motion for Reconsideration, Defendants' Motion should be denied.

Turning briefly to the merits of Defendants' Motion for Reconsideration, however, the Court first notes that Defendants have completely ignored the Ninth Circuit's explanation that "[t]he focus under Williamson is on the investor's expectations at the time of the original investment, and 'is not directed at what actually transpires after the investment was made[.]'" Holden v. Hagopian, 978 F.2d 1115, 1119 n.6 (9th Cir. 1992).

The Court further notes that Defendants provide no support for their theory that the Williamson factors cannot apply to activities occurring during the "subscription period" of a general partnership's formation. Indeed, Defendants do not provide any authority defining or explaining what they mean by "subscription period" in the context of general partnerships. Defendants do not, for example, provide authority explaining that a "subscription period" may include a period of time when individuals have turned

1  their money over to a company for an interest in a general partnership that will
2  eventually hold an interest in real property, without the individuals having entered into
3  an effective agreement that provides them with some authority to control their money
4  or at least the interest in real property they bought with their money.

5  The Court has found little authority on the issue of "subscription periods" in the
6  context of general partnerships.  One case that does address the issue, however, is of
7  no help to Defendants because it involved a subscription agreement that governed
8  separately from any partnership agreement.  See Roberts v. Peat, Marwick, Mitchell &
9  Co., 857 F.2d 646, 651-52 (9th Cir. 1988) (separately analyzing subscription
10 agreement, promissory note, and partnership agreements).  Had investors here signed
11 a subscription agreement or a partnership agreement that provided for a subscription
12 period (and not just an acquisition period), the analysis under the first Williamson
13 factor might be different.  The mere fact that a subscription period might take place,
14 however, does not make the Partnership Agreement anymore effective than the Court
15 has already found it to be.  Moreover, Defendants' assertion that pre-investment
16 activities cannot be analyzed under Williamson is contrary to the Eleventh Circuit case
17 Defendants rely on for this position, which states that: "Indeed, investment schemes
18 may often involve a combination of both pre- and post-purchase managerial activities,
19 both of which should be taken into consideration in determining whether Howey's test
20 is satisfied."  SEC v. Mutual Benefits Corp., 408 F.3d 737, 743-44 (11th Cir. 2005).

21 Defendants assert that, in applying the first Williamson factor, courts have never
22 examined when a formal agreement became effective.  While most courts applying the
23 first Williamson factor have focused on the specific powers provided under a given
24 agreement, such a focus is irrelevant if, as is the case here, the agreement is not, by its
25 own terms, effective at the time an investor gives his or her money to a promoter.

26 Defendants also assert that the first Williamson factor requires an examination
27 of the plain language of the Partnership Agreement.  In this regard, Defendants assert
28 the Court misread the Partnership Agreement with regard to its effectiveness and that,

in fact, "[t]he Partnership Agreement is in effect during the subscription phase." Defendants base this argument on the theory that, "for purposes of partnership law a general partnership has been established since there is now 'an association of two or more persons to carry on as coowners a business for profit.'" [ECF No. 592-1 at 22 (citing Cal. Corp. Code §§ 16101(9) & 16202(a).] This, however, has nothing to do with whether the Partnership Agreement was, according to its terms, effective at the time of investment.

While two or more persons might associate to carry on as co-owners of a business for profit, it does not follow that a written agreement that purports to govern the partnership (which is, by its own terms, ineffective at the time of investment) suddenly becomes effective. Indeed, without a written agreement, such a partnership would be governed by the default rules of California's Corporations Code. See Cal. Corp. Code § 16103(a) ("To the extent the partnership agreement does not otherwise provide, this chapter governs relations among the partners and between the partners and the partnership.") All of this, however, is irrelevant under the first Williamson factor, which focuses only on formal, written agreements.

Defendants also point to language in the Partnership Agreement, which states: "The Partnership shall commence upon the execution of this Agreement and shall continue until terminated as hereinafter provided." (See ECF No. 14-1 at 4, § 1.4.) Based on this language, Defendants assert "[t]he Partnership Agreement, by its own words, state [sic] that it shall commence upon its execution." The Court disagrees. The cited language states only that the partnership itself shall commence (which–as Defendants point out–is true regardless of whether a formal agreement is effective because of the rule that a general partnership is formed upon the association of two or more people for business purposes). Moreover, the cited language neither contradicts, nor requires an alternate reading of, the language stating the Partnership Agreement—i.e., the formal document itself—is not effective until a date certain.

Apart from the Partnership Agreement's language, Defendants also address the

1 first Howey element (i.e., an investment of money). Defendants assert that an
2 "investment of money" is synonymous with an "investment contract" and that, without
3 an "investment contract," there can be no "investment of money." This circular
4 argument, however, is nonsensical because a determination of whether a particular
5 transaction, scheme, or enterprise is an investment contract requires a determination
6 of whether there has been an investment of money. Howey, 328 U.S. at 298-99; see
7 also SEC v. Alliance Leasing Corp., 2000 WL 35612001, at *4 (S.D. Cal. Mar. 20,
8 2000) [finding first Howey element (i.e., an "investment of money") satisfied where
9 investors merely contributed money to the venture]. Defendants' citation to
10 Cocklereece v. Moran, 532 F. Supp. 519, 527 (D. Ga. 1982), does not persuade the
11 Court otherwise. There, an escrow deposit was deemed not to be an "investment of
12 money," whereas, here, investors did not deposit their money into escrow. Rather,
13 investors deposited their money into bank accounts set up by Western employees
14 (purportedly on behalf of the GPs), after which most of the money investors deposited
15 was transferred to Western.

16 Defendants also take issue with the Court's consideration of the Co-Tenancy
17 Agreement. Defendants imply the Court should not have considered the Co-Tenancy
18 Agreement because it does not alter investors' power to control their respective GPs,
19 but instead alters the GPs' power to control a particular property. (ECF No. 592-1 at
20 25.) While this may be true in theory, the Co-Tenancy Agreement is nonetheless a
21 formal document that affects investors' ability to control their investments—i.e., their
22 undivided, fractional interests in real property—because the Co-Tenancy Agreement
23 purports to dictate how the GPs that co-own a particular property may dispose of the
24 property as a whole. It was therefore appropriate for the Court to consider the Co-
25 Tenancy Agreement. See Holden, 978
26 / / /
27 / / /
28 / / /

F.2d at 1120 n.7. Because the Co-Tenancy Agreement was not, according to its terms effective at the time of investment, it suffers the same fate as the Partnership Agreement.

For all the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion for Reconsideration, (ECF No. 592), is **DENIED**; and

2. The hearing on Defendants' Motion, currently set for August 1, 2014, is **VACATED**.

DATED: July 30, 2014

HON. GONZALO P. CURIEL
United States District Judge