1
2
3
4
5
6
7

8              **UNITED STATES DISTRICT COURT**

9              **SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 10  SECURITIES AND EXCHANGE COMMISSION, | CASE NO. 3:12-cv-2164-GPC-JMA |
| 11 | **NOTICE OF TENTATIVE RULING** |
| 12                              Plaintiff, | **ON RECEIVER'S REPORT AND RECOMMENDATION** |
| 13      v. | **REGARDING GENERAL PARTNERSHIPS** |
| 14 | |
| 15  LOUIS V. SCHOOLER and FIRST FINANCIAL PLANNING | |
| 16  CORPORATION, dba Western Financial Planning Corporation, | |
| 17                              Defendants. | |

18

19      Before the Court is the issue of whether all, some, or none of the approximately

20  86 general partnerships ("GPs") currently under receivership should be released from

21  the receivership and under what conditions, if any. The Receiver has filed his Report

22  and Recommendation on this issue. (ECF No. 852.) The parties, (ECF Nos. 874, 880),

23  and the investors, (*see, e.g.*, ECF No. 869), have responded to the Receiver's Report

24  and Recommendation, and included both critiques and counterproposals.

25      On July 22, 2014, the Court issued its Order on Sua Sponte Reconsideration of

26  August 16, 2013 Order to Release General Partnerships from Receivership (the

27  "Reconsideration Order"). (ECF No. 629.) The Reconsideration Order concluded that

28  the GPs should remain in the receivership and, pursuant to that conclusion, the GPs'

due process rights were implicated and thus a hearing should be held. (*Id.* at 7–8.) On October 10 and 15, 2014, a due process hearing was held (the "Investor Hearing"). (ECF Nos. 790, 794.) On October 17, 2014, the Court issued its Order Regarding Investor Hearing (the "Investor Hearing Order"). (ECF No. 808.) The Investor Hearing Order reiterated the Court's concerns regarding whether it was appropriate to treat all GPs the same in light of their varying financial conditions and thus ordered the Receiver to file a report and recommendation addressing the Court's concerns. (*Id.* at 3–6)

Upon review of the Receiver's Report and Recommendation and the responses thereto, the Court provides notice of its tentative ruling on this issue. While the Reconsideration Order was concerned with the ability of the investors to manage themselves going forward, (ECF No. 629, at 3–7), and the Investor Hearing Order was concerned with the differing financial health of the GPs, (ECF No. 808, at 3), the Court now concludes that a just and fair endgame is the main focus. As such, the appropriate considerations are those of investor restitution and the commingling of Western's assets with investor assets.

Generally, during the pendency of an SEC enforcement action, property related to the allegedly fraudulent investment scheme is held in receivership. *See Sec. and Exch. Comm'n v. Small Bus. Capital Corp.*, No. 5:12-cv-3237-EJD, 2013 WL 6701928, at *4 (N.D. Cal. Dec. 19, 2013); *see also In re San Vicente Med. Partners Ltd.*, 962 F.2d 1402, 1404–05 (9th Cir. 1992). While Defendants and some investors argue that the general rule should be departed from in this case, the Court disagrees and finds that the receivership should be maintained over all the GPs.

In SEC enforcement actions, defendants may be ordered to disgorge their ill-gotten gains. *Sec. and Exch. Comm'n v. First Jersey Sec.*, 101 F.3d 1450, 1474 (2d Cir. 1996). These funds can then be then be *pro rata* distributed back to investors, which the SEC has indicated it intends to seek. (*See* ECF No. 880.) In this case, the SEC has moved for disgorgement, (ECF No. 685), but the hearing on the SEC's motion will not

be held for several months. (ECF No. 849.) Moreover, outside of moving to establish that the GPs are securities, the SEC has not yet moved on its fraud causes of action. (*See* ECF No. 1.) Whether disgorgement is granted and whether investors were defrauded bear significantly on whether distribution to investors is appropriate. *See Sec. and Exch. Comm'n v. Fischbach Corp.*, 133 F.3d 170, 175 (2d Cir. 1997) (noting that disgorged funds "may often go to compensate securities fraud victims for their losses"). An order on either disgorgement or fraud will take months if decided on summary judgment, and potentially upwards of a year if decided at trial. (*See* ECF No. 850.)

Western's assets include an interest in every GP property except one—Washoe I— and notes from nearly two-thirds of GPs, including two of the GPs who own Washoe I. (*See* ECF No. 852-1, Ex. A.) If Western is ordered to disgorge its ill-gotten gains, this disgorgement may include its share of each GP property and the GP notes. Though the investors, through their GPs, own the vast majority of the GPs and thus the GP properties, Western has essentially commingled its assets with those of investors by taking an interest in interest in almost every GP and holding notes from nearly two-thirds of GPs. If restitution to investors of Western's disgorged funds is appropriate, every Western investor would arguably have an interest in every GP property. Were the Court to release the GPs, a GP property would be subject to the control of its several hundred general partner investors who would have no obligation to consider the interests of the thousands of investors who may be able to lay claim to Western's interest through investor restitution. Continuation of the receivership ensures that the Receiver and the Court maintains oversight of these properties and that any action taken in relation to the GPs or GP properties is the most equitable overall. *See Sec. and Exch. Comm'n v. Credit Bancorp, Ltd.*, No. 99-cv-11395-RWS, 2000 WL 1752979, at *13, 43 (S.D.N.Y. Nov. 29, 2000).

Though the Court could order Western to divest its interest and the GPs to pay the notes, and thus release the GPs without the aforementioned issue, this too is

problematic. Western may not be liable for disgorgement or fraud and altering the structure of the GPs at this stage may be prejudging Western's liability. As the appropriate course of action is significantly influenced by Western's liability, the Court finds it appropriate to wait until these issues are resolved before removing the GPs from the receivership or altering their structure.

While the Court believes that continuation of the receivership over all the GPs is appropriate, the Court does have some concerns regarding their current financial status as well as the information available to their investors. As the Receiver has indicated, some investors are not paying their share of costs and these costs are shifted onto other investors who are paying more than their share of costs. (*See* ECF No. 852-1, Ex. C.) Due to comments at the investor hearing, it appears that the operational bills sent to investors lack detail. Thus the Court finds it appropriate to order that additional information be provided to investors so that they can make a choice as to whether to pay the higher operational bill or not. The Receiver shall prepare an information packet for each investor similar to what he prepared when the Court initially ordered that the GPs be released. This packet will include an updated appraisal of their GP's property, the financial health of their GP and their cotenant GPs, details regarding what percentage of investors are paying their operational bills, and facts regarding this case. Additionally, operational bills sent to investors in the future will detail exactly what each investor is being billed for and what may occur if some investors fail to pay their operational bills.

At this juncture, it is unclear whether liquidation of some GP properties is appropriate. However, the Receiver's Report and Recommendation appears to indicate that liquidation of GPs that will be unable to pay their bills may be warranted. It may also be the case that billing investors to maintain GP properties is not the wisest course of action based on the valuation of their GP and its property. Thus the Court orders the Receiver to provide a report and recommendation regarding whether the financial health of certain GPs warrants liquidation of certain GP properties. Finally, based on

issues with the partnership administrators as well as the savings that could be provided by a professional management company, the Court grants the Receiver's request to transition administration of the GPs to the Lincoln Property Company.

DATED:  January 22, 2015

HON. GONZALO P. CURIEL
United States District Judge