UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                    Plaintiff,<br><br>    v.<br><br>LOUIS V. SCHOOLER and FIRST FINANCIAL PLANNING CORPORATION, dba Western Financial Planning Corporation,<br><br>                    Defendants. | CASE NO. 3:12-cv-2164-GPC-JMA<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR MODIFICATION OF PRELIMINARY INJUNCTION ORDER TO REMOVE THOMAS C. HEBRANK AS COURT-APPOINTED RECEIVER**<br><br>**[ECF No. 860]** |

## I. INTRODUCTION

Before the Court is Defendants Louis V. Schooler ("Schooler") and First Financial Planning Corporation d/b/a Western Financial Planning Corporation's ("Western") (collectively, "Defendants") Motion for Modification of Preliminary Injunction Order to Remove Thomas C. Hebrank as Court-Appointed Receiver. (ECF No. 860.) Plaintiff Securities and Exchange Commission (the "SEC") and Receiver Thomas C. Hebrank ("Mr. Hebrank" or the "Receiver") oppose. (ECF Nos. 946, 948.)

The parties have fully briefed the motions. (ECF Nos. 860, 946, 948, 967, 976, 977, 978.) A hearing was held on February 13, 2015. (ECF No. 982.) Upon review of

the moving papers, admissible evidence, oral argument, and applicable law, the Court DENIES Defendants' Motion for Modification of Preliminary Injunction Order.

## II. BACKGROUND

This is an enforcement action brought by the SEC. (*See* ECF No. 1.) The SEC alleges that Defendants defrauded investors in the sale of general partnership units which were, as a matter of law, unregistered securities. (*Id.*) Because the SEC had demonstrated a probability of success on the merits of this case and the possibility that Defendants would dissipate assets, the Court ordered that Western and its affiliates, including the general partnerships, be placed under a temporary receivership and appointed Mr. Hebrank as the temporary receiver (the "Temporary Restraining Order"). (ECF No. 10, at 1.) After further briefing by the parties, the Court concluded that the SEC had made out a prima facie case that the general partnerships were securities and ordered that the receivership be permanent with Mr. Hebrank as the permanent receiver (the "Preliminary Injunction Order"). (ECF No. 44, at 21–22.)

Throughout this case, Defendants have consistently opposed Mr. Hebrank's motions, (*see, e.g.*, ECF Nos. 51, 74, 167, 183, 463, 505, 537, 609, 633), and filed a significant amount of motions to modify or remove the receivership, (*see, e.g.*, ECF Nos. 195, 474, 495, 560, 581, 661). At the same time, Mr. Hebrank and his counsel have consistently communicated with the SEC regarding filings in this case and sought SEC input on his briefs and motions. (*See, e.g.*, ECF No. 976-1, at 31, 33, 39, 43, 45, 49, 93.) Defendants contend that the Mr. Hebrank and his counsel have shown bias towards the SEC and thus must be removed. (ECF No. 860.)

## III. DISCUSSION

**A. Legal Standard**

Generally, a federal equity receiver is an "officer of the court." *In re San Vicente Med. Partners Ltd.*, 962 F.2d 1402, 1409 (9th Cir. 1992). District courts, therefore, have extremely broad authority to supervise and determine the appropriate action to be taken in a federal equity receivership. *Sec. and Exch. Comm'n v. Capital Consultants,*

*LLC*, 397 F.3d 733, 738 (9th Cir. 2005). Though the "primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the district court for the benefit of creditors," *Sec. and Exch. Comm'n v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986), federal equity receivers have multiple duties, including: (1) preserving receivership assets, (2) administering receivership property suitably, and (3) assisting in any equitable distribution of those assets if appropriate. *See Liberte Capital Grp., LLC v. Capwill*, 462 F.3d 543, 551 (6th Cir. 2006) (citation omitted). A district court may therefore institute "reasonable procedures" to effect these purposes. *Hardy*, 803 F.2d at 1038.

The SEC has cited one case involving somewhat similar facts to this case. (*See* ECF No. 946, at 11.) In *Sec. and Exch. Comm'n v. Private Equity Mgmt. Group, Inc.*, a district court rejected a defendant's argument that a federal equity receiver should be removed for bias. No. 09-cv-2901-PSG, 2009 WL 2019747 (C.D. Cal. July 2, 2009). The defendant argued that the receiver was biased for four reasons: (1) timing the filing of a status report to allegedly assist the SEC, (2) the greater amount of correspondence between the receiver and the SEC than between the receiver and the defendant, (3) alleged recommendations by the receiver to the SEC regarding litigation strategy, and (4) alleged retaliation by the receiver against defendant's employees. *Id.* at *4. The court found that, though the receiver may have taken some improper actions, the receiver had "largely acted appropriately." *Id.* at *6. After balancing the equities and noting that removal of the receiver could cause the irreparable harm to the receivership estate, the court concluded that removal was not warranted. *Id.* However, the court did not cite or provide specific ethical standards that receivers should follow.

The parties' briefs on this matter contain only sparse case citations; the cases that are cited mostly stand for general propositions and do not articulate a clear standard to which federal equity receivers should be held. Though it is undisputed that a receiver is an "officer of the court" and thus must be "neutral," no court has stated what such neutrality entails. *Sterling v. Stewart*, 158 F.3d 1199, 1201 n.3 (11th Cir. 1998) (citing

12 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2981, at 5 (1973)). While judicial ethical canons provide a good starting point, they cannot be imported wholesale as certain rules are incompatible with the job of a receiver. *See, e.g.*, CODE OF CONDUCT FOR UNITED STATES JUDGES (2014); MODEL CODE OF JUDICIAL CONDUCT (2010). For example, some courts have extended the general prohibition on ex parte communication to include receivers. *See, e.g.*, *Cobell v. Norton*, 237 F. Supp. 2d 71, 74 n.2 (D.D.C. 2003) ("For the purposes of this Opinion, 'ex parte communications' will refer to communications related to matters in dispute between a judge or a judicial agent (magistrate, special master, *receiver*, expert) and other persons—parties, non-parties, witnesses, etc.—without counsel for the parties present.") (emphasis added); *cf.* CODE OF CONDUCT FOR UNITED STATES JUDGES Canon 3(A)(4) (2014); MODEL CODE OF JUDICIAL CONDUCT R. 2.9 (2010). In SEC enforcement actions, however, such an extension would be unworkable. Receivers in such cases are instituted to oversee the property of the individual or entity that has allegedly violated the securities laws. (*See, e.g.*, ECF No. 10.) Because the defendant's documents may be discoverable and are now under the receiver's control, ex parte communications between the receiver and the parties are often necessary to effectuate discovery requests. Moreover, as judges themselves generally do not communicate ex parte with receivers, any concern about the influence of these ex parte communications on the court is unfounded. This stands in contrast to other court officers, such as law clerks, whom judges do communicate with ex parte and for whom the ex parte communication prohibition should be extended. *See* FEDERAL JUDICIAL CENTER, LAW CLERK HANDBOOK § 5.2E (2d ed. 2007).

That said, many judicial ethical canons are applicable to receivers. Though the SEC requests a receiver's appointment and often initiates the engagement, the receiver is still an "officer of the court" and not an arm of the SEC. *In re San Vicente Med. Partners*, 962 F.2d at 1409. As such, a receiver should be impartial between the parties

and avoid the appearance of impropriety. *See* CODE OF CONDUCT FOR UNITED STATES JUDGES Canons 2, 3(A)(1) (2014); MODEL CODE OF JUDICIAL CONDUCT R. 1.2, 2.2 (2010). However, such impartiality does not extend to his relationship with the receivership estate. The receiver owes a "fiduciary duty to the owners of the property under his care" and thus must "protect and preserve" the receivership estate's assets "for the benefit of the persons ultimately entitled to it." *Sovereign Bank v. Schwab*, 414 F.3d 450, 454 (3d Cir. 2005) (citation omitted); *Cty. of Oakland by Kuhn v. City of Detroit*, 784 F. Supp. 1275, 1286 (E.D. Mich. 1992) ("A receiver appointed by the court becomes a fiduciary of the court and any person interested in the estate of which he has been made a receiver."). In an SEC enforcement action, "the persons ultimately entitled" to the receivership estate's assets are either one of two distinct groups: (1) if the SEC does not prove its case, the defendants may retake their property, or (2) if the SEC does prove its case and investor restitution is deemed appropriate, the investors in the investment scheme may lay claim to the assets. *Sovereign Bank*, 414 F.3d at 454. As the receiver owes a fiduciary duty, the receiver cannot be impartial towards the receivership estate and is obligated to advocate to the court what he or she believes to be the best course of action to protect, preserve, administer, and distribute the receivership estate's assets. *See Liberte Capital Grp.*, 462 F.3d at 551.

Upon review of the caselaw surrounding receivers, the duties of receivers, judicial ethical canons, and the interaction between receivers and the court, the Court concludes that, in this case, Mr. Hebrank should abide by the following ethical standards:

1. The receiver owes a fiduciary duty to the court and to the eventual owners of the receivership estate's assets, *see Sovereign Bank*, 414 F.3d at 454;
2. The receiver thus has a duty to protect, preserve, administer, and distribute appropriately the receivership estate's assets and must advocate, to the court, courses of action that are consistent with these duties, *see Liberte Capital Grp.*, 462 F.3d at 551;

3. The receiver may engage in appropriate ex parte communication with the parties where necessary to either carry out the receiver's duties or effectuate discovery, *contra Cobell*, 237 F. Supp. 2d at 74 n.2;

4. The receiver, however, is obligated to remain unbiased between the parties in the litigation and must not take positions or advocate for actions primarily for the benefit of one party unless such positions or actions are consistent with the receiver's fiduciary duties, *see* CODE OF CONDUCT FOR UNITED STATES JUDGES Canon 3(A)(4) (2014); MODEL CODE OF JUDICIAL CONDUCT R. 2.9 (2010); and

5. The receiver must also avoid the appearance of impropriety so as to maintain confidence in the impartiality of the judiciary, *see* CODE OF CONDUCT FOR UNITED STATES JUDGES Canon 2(A) (2014); MODEL CODE OF JUDICIAL CONDUCT R. 1.2 (2010).

Though Court does not contend this list to be exhaustive, it does articulate a standard by which Mr. Hebrank should act and provides a reference point for discussing the allegations of bias in this case. Finally, in reviewing a receiver's conduct, courts must always balance the equities involved to determine the appropriate action, if any, to be taken. *Private Equity Mgmt. Group*, 2009 WL 2019747, at *6.

**B. Bias**

This is not the first time that Defendants have alleged that Mr. Hebrank is biased. (*See, e.g.*, ECF No. 51, at 2, 6.) Defendants now argue that the Mr. Hebrank and his counsel have breached their duties in seven specific ways:

1. Collaboration with the SEC in drafting motions;

2. Identifying arguments favorable to the GPs and then withholding those arguments from the Court;

3. Providing documents, analysis, and data to the SEC outside of discovery;

4. Sharing investor communications with the SEC but not Defendants;

5. Providing detailed reports to the SEC but not Defendants;

   6. Plotting case strategy with the SEC; and

   7. Spoliation of evidence.

(ECF No. 860-1, at 1–2.)

  As discussed above, an extension of the general prohibition on ex parte communication to receivers is unwarranted. The Court, in this case, only directs the Receiver through Court orders and has not entertained ex parte communication from the Receiver. Thus, though Mr. Hebrank is an officer of the court, the concerns underlying the general prohibition on ex parte communication do not apply to him in this case. With that in mind, the Court must now determine whether Mr. Hebrank and his counsel's actions and the level and content of their communication with the SEC were improper, and, if so, what the appropriate solution is.

  As an initial matter, the Court finds that several of the actions cited by Defendants are not improper. First, Defendants attack the Mr. Hebrank's recordkeeping practices, arguing that it may constitute spoliation of evidence. (ECF No. 860-1, at 19–20.) The Court disagrees as there is nothing improper about the Receiver not recording every phone call and not retaining certain emails. A defendant engages in spoliation of evidence if he or she has notice that documents are potentially relevant to litigation prior to their destruction. *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002). However, there has been no litigation against the Mr. Hebrank himself and Defendants do not argue that he should be on notice of any potential litigation or that the documents he destroyed would be relevant to that potential litigation. Thus Mr. Hebrank's recordkeeping practices do not show any bias nor do they constitute spoliation of evidence.

  Second, Defendants attack Mr. Hebrank's counsel noting a countervailing point to one of his arguments in an email to the SEC. (ECF No. 860-1, at 12–13.) The Court does not make the same negative inferences that Defendants do. All that Mr. Hebrank's counsel appears to have done is noted one countervailing argument, but his counsel further notes that there are additional reasons supporting the Receiver's position that

should be included within the Receiver's brief. (*See* ECF No. 860-2, Ex. 8, at 33.) Mr. Hebrank does not appear to have changed his position in this instance based on his interactions with the SEC nor does the Court find this point to "largely negate[]" support for including the general partnerships within the receivership as Defendants contend it does. (*See* ECF No. 860-1, at 12.) Moreover, referring to this counterargument as "favorable" to the general partnerships is disingenuous at best as going through bankruptcy merely to prevent foreclosure is unlikely to be a scenario that the general partnerships would desire to go through if it could be avoided. (*Id.*) Thus Mr. Hebrank's counsel pointing out a potential counterargument to the SEC does not evidence bias.

Third, Defendants attack Mr. Hebrank's sharing of information and investor communications with the SEC but not with the Court or Defendants. (ECF No. 860-1, at 13–19.) Defendants specifically point to communications between Mr. Hebrank and the SEC on September 6, 7, and 26, 2012, (*see* ECF No. 860-3, Exs. 2, 4, 5), and argue that these were not in compliance with the Preliminary Injunction Order. (ECF No. 860-1, at 13–16.) But the Preliminary Injunction Order was entered on March 13, 2013, approximately six months after the referenced communications. (*See* ECF No. 174.) At the time of the communications, the operative order was the Temporary Restraining Order which, contrary to Defendants' argument, permitted the challenged communications and sharing of information. (*See* ECF No. 10, at 17 ("IT IS FURTHER ORDERED that representatives of the Commission and any other government agency are authorized to have continuing access to inspect or copy any or all of the corporate books and records and other documents of Western and the other entities in receivership, and continuing access to inspect their funds, property, assets and collateral, wherever located."); *see also* ECF Nos. 28, 42.) While the Preliminary Injunction Order stated that the SEC would have access, pursuant to the Federal Rules of Civil Procedure, to "documents of Western and . . . other entities in receivership," it was not in effect at the time of the September 2012 communications. (ECF No. 174,

at 9, n.7.) Accordingly, the Court finds that the SEC and Mr. Hebrank's September 2012 communications complied fully with the Temporary Restraining Order.

Defendants further reference information regarding the GP properties prepared by Mr. Hebrank's firm and investor communications sent to Mr. Hebrank that Mr. Hebrank, of his own volition, shared with the SEC. (*See* ECF No. 860-3, Exs. 11, 12, 15, 19; ECF No. 860-4, Ex. 21.) However, none of the information appears to relate to the underlying litigation, rather it relates to the receivership estate which the Court has noted that a receiver is not expected to remain neutral towards. Moreover, the documents shared by Mr. Hebrank are not the documents of Western, they are Mr. Hebrank's documents sent to his work email and prepared by his firm and thus do not come within the ambit of the Preliminary Injunction Order. (*See* ECF No. 174, at 9 (referring to the "documents of *Western and/or other entities in receivership*") (emphasis added).) Defendants seem primarily aggrieved by the fact that Mr. Hebrank did not share these documents with them. But Defendants make no indication that they ever requested such documents or were rebuffed if they did request such documents. Accordingly, Mr. Hebrank sharing information and investor communication with the SEC does not show significant bias.

However, the Court is somewhat troubled by the remaining instances raised by Defendants. Specifically Defendants reference two issues: (1) Mr. Hebrank altering a legal conclusion in one of his briefs at the SEC's request so the conclusion would not directly contradict an argument the SEC might wish to make later on in the case, and (2) Mr. Hebrank and his counsel consistently seeking input from the SEC on Mr. Hebrank's filings. (ECF No. 860-1, at 7–12, 19.) The Court notes that it does appear that Mr. Hebrank and his counsel routinely sought input from the SEC regarding his court filings, though in nearly all instances the Receiver's legal conclusions remained the same. (*See, e.g.*, ECF No. 976-1, at 33, 31, 39, 43, 45, 49, 93.) However, in the particularly troubling instance referenced above, the Receiver's initial draft of a brief argued that Schooler would not have a continuing obligation to fund Western; upon

reviewing the brief, the SEC asked the Receiver to take a more equivocal stance, in case the SEC sought to argue later on that Schooler would have such an obligation. (ECF No. 860-2, Ex. 6, at 28.) The Receiver's final brief took the more equivocal stance requested by the SEC. (*See* ECF No. 49, at 5.)

The SEC and Mr. Hebrank argue that his and his counsel's actions were not improper. The SEC argues that the emails between it and the Receiver are the result of the fact that the two share similar goals, i.e., the Receiver has a duty towards the investors in this case and the SEC's mission is to protect investors. (ECF No. 946, at 1.) However, the SEC's general mission and purpose are not as relevant as its position as a litigant in this case. The SEC is tasked with protecting investors through several methods, including adopting regulations, investigating alleged malfeasance, and instituting civil actions. *See, e.g.*, 15 U.S.C. §§ 77s, 77t. Merely because the SEC generally protects investors does not mean that it is appropriate for it to review every filing of a federal equity receiver who owes a duty to allegedly defrauded investors in an SEC enforcement action.

Mr. Hebrank argues that, under normal circumstances, he would have sought comments and concerns from all parties in the case so as to make the best recommendation pursuant to his duties toward the receivership estate. (ECF No. 978, at 2.) However, he asserts that he has chosen to have limited communication with Defendants in this case because of the adversarial position taken by Defendants against the receivership. (ECF No. 948, at 1.) Essentially Mr. Hebrank contends that seeking input from all parties is not improper and the Receiver is only seeking input from the SEC because his communications with Defendants have been fruitless. (ECF No. 978, at 3–4.) Finally, Mr. Hebrank notes that he has taken positions that are opposed by the SEC, specifically pointing to the SEC's disapproval of parts of his report and recommendation regarding treatment of the general partnerships based on their financial health. (*Id.* at 5.)

The Court finds that Mr. Hebrank has largely discharged his duties in an

unbiased way. Though Mr. Hebrank and his counsel consistently sought input from the SEC, it does not appear that his legal conclusions and recommendations were altered in significant ways. Though an equivocation was added to the Receiver's Second Report and Proposal Regarding the Assets of Western and Louis Schooler, (*see* ECF No. 49, at 5), this was not a significant change and appears to be the only instance that Defendants cite out of hundreds of pages of briefing that Mr. Hebrank has filed with this Court.

That is not to say that the Court finds such communication to be proper. Even though Defendants have chosen to take an adversarial position towards Mr. Hebrank, that does not mean that Mr. Hebrank can decide to only seek input from the SEC. The Receiver is an officer of the court and thus must not only act impartially, but appear impartial as well. *See In re San Vicente*, 962 F.2d at 1409; *see also* CODE OF CONDUCT FOR UNITED STATES JUDGES Canons 2(A), 3(A)(4) (2014); MODEL CODE OF JUDICIAL CONDUCT R. 1.2, 2.9 (2010). Failure to do so undermines the faith placed by the public in the fairness of the judicial system.

In reviewing the Receiver's actions, the Court must always consider the equities of this case and balance them accordingly. *See Private Equity Mgmt. Group*, 2009 WL 2019747, at *6. This case is well over two years old and is proceeding towards trial sometime this year. (*See* ECF No. 1.) In that time, Mr. Hebrank and his counsel have thoroughly reviewed the receivership estate and gained significant knowledge regarding its administration and relation to this case. (*See, e.g.*, ECF Nos. 27, 49, 80, 182, 184, 203, 481, 504, 517, 547, 596, 759, 855, 875.) Moreover, Mr. Hebrank has faithfully executed every single order that this Court has given him and there are no indications that he would not be capable of faithfully executing future Court orders. To replace the Receiver at this stage would present a significant cost to the receivership estate. *See Private Equity Mgmt. Group*, 2009 WL 2019747, at *6. A new receiver would have to spend time and resources gaining the institutional knowledge that Mr. Hebrank already has. Such expense would come at the cost of the receivership estate's

already limited resources. Furthermore, investor restitution from the receivership estate may be warranted if the SEC's allegations are proven and thus the cost of replacing the Receiver could be borne by innocent investors. Such a result would be inequitable. *See id.*

Though the Court may, in certain instances, be required to remove a receiver, this is not one of those instances. Mr. Hebrank can be rehabilitated through court orders preventing future improper actions. Based on his conduct in this case, the Court does not doubt that Mr. Hebrank will follow future orders issued by this Court. Accordingly, the Court DENIES Defendants' motion to remove Mr. Hebrank as receiver. However, the Court does find it appropriate to require Mr. Hebrank to avoid actions which create the appearance of impropriety or violate the ethical standards outlined above.

## IV. CONCLUSION AND ORDER

For the reasons stated above, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion for Modification of Preliminary Injunction Order, (ECF No. 860), is **DENIED**;
2. The Receiver is ordered to refrain from seeking input on his briefs from a single party. If he wishes to seek input on his briefs, he must seek input from both the SEC and Defendants. The Receiver is of course still free to not seek input from any party if he believes that to be the appropriate course of action; and
3. The Receiver is ordered to refrain from altering the legal conclusions in his briefs to fit the case strategy of either the SEC or Defendants. All legal conclusions must be his own.

DATED: March 4, 2015

HON. GONZALO P. CURIEL
United States District Judge