1
2
3
4
5
6
7
8

## UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 10  SECURITIES AND EXCHANGE COMMISSION, | CASE NO. 3:12-cv-2164-GPC-JMA |
| 11 | **ORDER** |
| 12                        Plaintiff, | **GRANTING IN PART AND DENYING IN PART INVESTORS' MOTIONS TO INTERVENE** |
| 13 | |
| 14  v. | [ECF Nos. 1227, 1229] |
| 15 | **GRANTING IN PART AND DENYING IN PART DILLON INVESTORS' MOTION TO UNSEAL DOCUMENTS** |
| 16 | |
| 17 | [ECF No. 1228] |
| 18  LOUIS V. SCHOOLER and FIRST FINANCIAL PLANNING | **GRANTING VARIOUS EX PARTE MOTIONS** |
| 19  CORPORATION, dba Western Financial Planning Corporation, | |
| 20 | [ECF Nos. 1265, 1273, 1275, 1277 1293] |
| 21                        Defendants. | |

22

23        Before the Court are two motions to intervene filed by two groups of investors[1]

24  who have invested in various general partnerships that are subject to the receivership:

25  (1) Dillon Investors' motion to intervene ("Dillon Mot."), ECF No. 1227; and (2)

26  Aguirre Investors' motion to intervene ("Aguirre Mot."), ECF No. 1229. These motions

27  ────────────────

28        [1] The "Dillon Investors" and "Aguirre Investors" (collectively "Investors") each represent over one  hundred investors. *See* Dillon Mot., Ex. A, at 1 n.1; Aguirre Mot., Ex. A, at 2–3.

have been fully briefed. *See* Receiver Dillon Resp., ECF No. 1259; Receiver Aguirre Resp., ECF No. 1260; SEC Resp., ECF No. 1266; Dillon Reply, ECF No. 1271; Aguirre Reply, ECF No. 1274.

Also before the Court is Dillon Investors' motion to unseal documents ("Unseal Mot."), ECF No. 1228. This motion has been fully briefed. *See* Receiver Unseal Resp., ECF No. 1261; SEC Resp., ECF No. 1266; Unseal Reply, ECF No. 1270.

Finally, before the Court are various *ex parte* motions, including (a) Aguirre Investors' *ex parte* motion to withdraw misstatement of fact, ECF No. 1265; (b) Aguirre Investors' *ex parte* motion for leave to file excess pages, ECF No. 1273; (c) Receiver's *ex parte* motion for leave to file supplement to court-ordered proposal regarding GPs, ECF No. 1275; (d) Aguirre Investors' *ex parte* motion for leave to file opposition to SEC late joinder, ECF No. 1277; and (e) Aguirre Investors' *ex parte* motion for leave to file opposition to Receiver's court-ordered proposal regarding GPs, ECF No. 1293.

Having considered the parties' submissions  and the applicable law, and for the reasons that follow, the Court **GRANTS IN PART** and **DENIES IN PART** Investors' motions to intervene; **GRANTS IN PART** and **DENIES IN PART** Dillon Investors' motion to unseal; and **GRANTS** *ex parte* motions ECF Nos. 1265, 1273, 1275, 1277, and 1293.

## BACKGROUND

The facts of the case having been recited in the Court's previous orders, the Court will not reiterate them here. *See, e.g.*, ECF No. 583. In short, this is an action by Plaintiff SEC against Defendants Schooler and Western Financial Planning Corporation ("Western") for violations of federal securities laws in connection with Defendants' defrauding of investors in the sale of general partnership ("GP") units which were, as a matter of law, unregistered securities. *See* ECF No. 1081.

On May 19, 2015, the Court granted in part and denied in part the SEC's motion for summary judgment on its fourth claim for relief, finding that Defendant had

engaged in the sale of unregistered securities and that the appropriate amount of disgorgement was $136,654,250, plus prejudgment interest calculated to May 19, 2015. ECF No. 1074 at 25. On June 3, 2015, the Court granted in part and denied in part the SEC's motion for summary judgments on its first and second claims for relief, granting both causes of action as to all elements with regards to the fair market value representation of the Stead property in Western's sales brochure. ECF No. 1081 at 20.

On January 21, 2016, the Court granted the SEC's motion for final judgment against Defendant Schooler, directing (1) a permanent injunction restraining the Defendant from violating federal securities laws; (2) disgorgement of $136,654,250 with prejudgment interest of $10,956,030 (for a total of $147,610,280); and (3) imposition of a civil penalty of $1,050,000. ECF No. 1170 at 8–13.

On February 4, 2016, Receiver Thomas C. Hebrank ("Receiver") filed a motion for an order (a) authorizing the Receiver to conduct an orderly sale of general partnership properties; (b) approving the plan of distributing receivership assets; and (c) approving procedures for the administration of investor claims ("Orderly Sale Mot."), ECF No. 1181. These motions followed.

# DISCUSSION

## I.   Motions to Intervene

Dillon Investors and Aguirre Investors move to intervene in a number of different ways, including in order to (a) file complaints-in-intervention; (b) contest the Receiver's previous sale recommendations with regards to a number of properties; (c) vacate previous Court orders approving Receiver sale recommendations; (d) "oversee and evaluate" the receivership; (e) move for an accounting or audit of the receivership; (f) obtain full access to the Receiver's filings and recommendations submitted to the Court; (g) obtain all books and records related to the Receiver's management of the GPs and the GPs' assets; (h) release the GPs from the receivership; and (i) oppose the Receiver's orderly sale plan. *See* Dillon Mot., Ex. A, at 14–15; Aguirre Mot., Ex. A, at 15–16.

For the following reasons, the Investors' motions to intervene, ECF Nos. 1227, 1229, are **GRANTED** for the limited purposes of opposing the Receiver's orderly sale motion, ECF No. 1181, and **DENIED** in all other respects.

### a.    Intervention as of Right

In relevant part, Federal Rule of Civil Procedure 24(a) provides:

> On timely motion, the court must permit anyone to intervene who. . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Thus, there are four requirements for intervention as of right: (1) timeliness, (2) an interest relating to property or transaction that is the subject of the action, (3) disposition of the action may impair or impede the movant's ability to protect the interest, and (4) the movant's interest is not adequately represented by existing parties. *Northwest Forest Res. Council v. Glickman,* 82 F.3d 825, 836 (9th Cir. 1996). Failure to satisfy even one of these elements prevents the applicant from intervening as of right. *League of United Latin Am. Citizens v. Wilson,* 131 F.3d 1297, 1302 (9th Cir. 1997).

Here, the second and third elements are plausibly met as to the Receiver's orderly sale motion. As investors in Defendants' scheme, the Investors have an interest relating to the transaction that is the subject of the action. The disposition of the GPs, because it involves the winding up of the receivership and the sale of the GP properties, may, as a practical matter, impair the Investors' ability to protect their interests in the GP properties.

However, to the extent that the Investors seek to intervene in order to (a) file complaints-in-intervention; (b) contest the Receiver's previous sale recommendations with regards to a number of properties; (c) vacate previous Court orders approving Receiver sale recommendations; (d) "oversee and evaluate" the receivership; (e) move for an accounting or audit of the receivership; (f) obtain full access to the Receiver's filings and recommendations submitted to the Court; (g)

obtain all books and records related to the Receiver's management of the GPs and the GPs' assets; and (h) release the GPs from the receivership, Investors' motions are untimely.

First, to the extent that Investors are seeking to audit the receivership, examine receivership records, question the Receiver's fiscal propiety, or release the GPs from the receivership, the Court has already carefully considered these issues during the course of litigation. The Court first ordered the GPs to be released from the receivership upon satisfaction of certain conditions on August 16, 2013. ECF No. 470. Following the Court's first summary judgment order, the Court *sua sponte* reconsidered the August 16, 2013 Order and directed additional briefing as to whether the GPs should be kept in the receivership on July 22, 2014. On October 10 and October 15, 2014, an investor hearing was held and the GPs were afforded the opportunity to speak. Finally, on March 4, 2015, the Court issued an Order Keeping GPs Under Receivership, ECF No. 1003. In that Order, the Court took into account the views of investors expressed at the hearing, as well as the numerous other communications from investors received by the Court. *See id.* at 1, 4.

Moreover, during the course of those proceedings the Court examined numerous allegations from Defendants and individual investors that the Receiver was behaving unethically or irresponsibly, and found no merit in those allegations. *See, e.g.*, *id.* at 7–8. In addition, the Court has reviewed and approved the reports the Receiver has provided as to expenses associated with administering the receivership. *See* ECF Nos. 169, 190, 511, 637, 640, 922, 1006, 1134, 1168. Thus, the Court finds Investors' efforts to re-litigate issues concerning the Receiver's fiscal propriety untimely.

Second, to the extent that Investors seek to vacate the Court's previous orders approving Receiver sale recommendations and contest the Receiver's sale recommendations, the Court also finds these efforts to be untimely. Pursuant to the Court's March 4, 2015 Order Keeping GPs Under Receivership, the Receiver

submitted a report-and-recommendation dividing the GPs into categories based on their fiscal health. ECF No. 1023. After reviewing the Receiver's report-and-recommendation, the Court issued an Order on May 12, 2015 adopting the Receiver's recommendations in part, and directing the Receiver to take certain measures to attempt to raise capital for the underwater properties and, barring success, to initiate an orderly sale process for those properties. *See* ECF No. 1069. The orders and motions Investors now seek to contest flow from that May 12, 2015 Order. *See, e.g.*, Dillon Mot., Ex. A, at 14; ECF Nos. 1085, 1168, 1191.

Investors provide no good reason why they did not move to intervene at the time the Court approved the orderly sale process, rather than over a year later. And again, the Court carefully considered the views of parties and investors as to maintaining the underwater GPs when considering whether to keep the GPs under receivership, and directed the Receiver to provide an opportunity for investors to prevent the sale of underwater GPs by raising capital in order to enable those GPs to pay their expenses. *See* ECF No. 1003 at 21; ECF No. 1069 at 3.[2]

---

[2] Investors also argue that the Court's Orders and the Receiver's motions should be vacated for violation of 28 U.S.C. § 2001(b). Dillon Mot. 13. § 2001 provides in relevant part,

> (a) Any realty or interest therein sold under any order or decree of any court of the United States shall be sold as a whole or in separate parcels at public sale at the courthouse of the county, parish, or city in which the greater part of the property is located, or upon the premises or some parcel thereof located therein, as the court directs. Such sale shall be upon such terms and conditions as the court directs. Property in the possession of a receiver or receivers appointed by one or more district courts shall be sold at public sale in the district wherein any such receiver was first appointed, at the courthouse of the county, parish, or city situated therein in which the greater part of the property in such district is located, or on the premises or some parcel thereof located in such county, parish, or city, as such court directs, unless the court orders the sale of the property or one or more parcels thereof in one or more ancillary districts.

> (b) After a hearing, of which notice to all interested parties shall be given by publication or otherwise as the court directs, the court may order the sale of such realty or interest or any part thereof at private sale for cash or other consideration and upon such terms and conditions as the court approves, if it finds that the best interests of the estate will be conserved thereby. Before confirmation of any private sale, the court shall appoint

- 6 -

1    Third, to the extent that Investors are seeking a general "right to intervene,"

2   *see, e.g.*, Dillon Mot., Ex. A, at 15 (seeking "[a]n order declaring that the

3   Intervening Group has standing to oppose further recommendations and motions

4   made by Hebrank with regard to the management and/or disposition of the GPs'

5   assets; . . . to make motions in relation to the Hebrank's management and/or

6   disposition of the GPs' assets; . . . [and] to make recommendations regarding the

7   continuing management and/or sale of the GPs and the GPs' assets"), the Court

8   finds such a request to be both untimely and overbroad.

9    However, to the extent that Investors seek to oppose the Receiver's orderly

10  sale motion regarding its proposal for the disposition of receivership assets, the

11  Court finds such an intervention timely. The Receiver did not move for

12  authorization to conduct an orderly sale of the GP properties until February 4, 2016,

13  and Aguirre and Dillon Investors promptly sought to oppose on February 18, 2016,

14  ECF No. 1194, and March 22, 2016, ECF No. 1211, respectively, even though they

15  initially failed to comply with Fed. R. Civ. P. Rule 24 in filing their oppositions. *See*

16  ECF No. 1224.

17  

18      three disinterested persons to appraise such property or different groups
        of three appraisers each to appraise properties of different classes or
19      situated in different localities. No private sale shall be confirmed at a
        price less than two-thirds of the appraised value. Before confirmation of
20      any private sale, the terms thereof shall be published in such newspaper
        or newspapers of general circulation as the court directs at least ten days
21      before confirmation. The private sale shall not be confirmed if a bona fide
        offer is made, under conditions prescribed by the court, which guarantees
22      at least a 10 per centum increase over the price offered in the private sale.

23  However, a plain reading of the statute demonstrates that no violation of § 2001(b)
    occurs unless a sale has been made, and no sale has yet occurred in this case. The
24  Receiver has indicated that he intends to comply with the requirements of § 2001,
    potentially by proceeding with a public sale under the provisions of § 2001(a). ECF
25  No. 1225 at 11;ECF No. 1290 at 2. Thus, the Court finds that there has not yet been a
    private sale of property such that § 2001 was violated. (The Receiver also argues that
26  the parties waived § 2001 because it was not mentioned in the Court's May 12, 2015
    Order. *See* ECF No. 1225 at 8–11; ECF No. 1290 at 1–2. However, the parties did not
27  make an explicit waiver of § 2001 in this case. *See Huntington Nat'l Bank v. Najero,
    Inc.*, 2014 U.S. Dist. LEXIS 152474 ( E.D. Mich. Oct. 27, 2014) (observing that
28  parties, but not the court itself, can waive the requirements of § 2001)).

The final element is whether the movant's interest is adequately represented by the existing parties. In making this determination, the Court must consider: (1) whether the Receiver's interests are such that he will "undoubtedly" make all the movant's arguments; (2) whether the Receiver is capable of and willing to make such arguments; and (3) whether the movant "would offer any necessary elements to the proceedings that" the Receiver would otherwise "neglect." *Northwest Forest Res. Council,* 82 F.3d at 838. The SEC and the Receiver argue that Investors are adequately represented by the Receiver. Receiver Dillon Resp. 8; Receiver Aguirre Resp. 8; SEC Resp. 12. The Investors disagree, arguing that the Receiver has not demonstrated a willingness to make all of their arguments, and that they offer a "necessary element[] to the proceedings" that the Receiver would otherwise "neglect." Dillon Reply 7; Aguirre Reply 10.

The Court finds that the Investors' interest is not adequately represented by the existing parties. The SEC and the Receiver characterize the differences of opinion between the Receiver and Investors as strategic, arguing that the Receiver and Investors share the same goal of maximizing the value of the GP properties to allow the largest return possible to the Investors, and merely differ regarding the best approach to do so. *See* SEC Resp. 12–13 (citing *S.E.C. v. TLC Investments & Trade Co.*, 147 F. Supp. 2d 1031, 1042 (C.D. Cal. 2001) (finding investors adequately represented where they shared same "ultimate goal" of maximizing estate value as Receiver, but disagreed as to "strategy" of how to do so)). However, other courts have found that investors were not adequately represented where the existing parties have "made it clear [they] will not make all of the arguments that the proposed intervenor would make." *S.E.C. v. Navin*, 166 F.R.D. 435, 441 (N.D. Cal. 1995).

Here, Investors propose plans for the continued management of the receivership considerably at odds with the Receiver's plans. *Compare generally*

Orderly Sale Mot., *with* Dillon Sale Resp., ECF No. 1234, *and* Aguirre Sale Resp., ECF No. 1235. Given that the burden of making the show of inadequate representation is "minimal," *United States v. Stringfellow*, 783 F.2d 821, 827 (9th Cir. 1986), *vacated on other grounds sub nom.*, *Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370 (1987) (citations omitted), the Court finds that Investors' interests may not adequately be represented by the Receiver.[3][4]

Accordingly, the Investors' motions to intervene, ECF Nos. 1227, 1229, are **GRANTED** for the limited purposes of opposing the Receiver's orderly sale motion, ECF No. 1181, and **DENIED** in all other respects. The Court will consider Investors' various responses to the Receiver's orderly sale motion, *see* ECF Nos. 1234, 1235, 1277, 1293, in deciding the Receiver's orderly sale motion.

### b.   Permissive Intervention

In relevant part, Federal Rule of Civil Procedure 24(b) provides:

> On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact. . . . In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

In addition, the movant must show an independent basis for federal jurisdiction. *Northwest Forest Res. Council,* 82 F.3d at 839. Here, movants have asserted federal securities claims so the Court has an independent basis for jurisdiction over their proposed claims. In addition, undeniably their claims have questions of fact and law in common with the main action.

---

[3] Nor are the Investors' interests adequately represented by the SEC. *See TLC Investments & Trade Co.*, 147 F. Supp. 2d at 1041 (observing that "the SEC's interests in such an action include protection of the public at large and stopping and deterring future violations of the law, which differ slightly from the investors' desire to maximize their own recovery") (citation omitted).

[4] The SEC also argues that Section 21(g) of the Securities Exchange Act of 1934, 15 U.S.C. § 78(u)(g), bars intervention without the SEC's consent. SEC Resp. 19. However, the Ninth Circuit has never directly addressed this issue, *see generally SEC v. ABS Fund, LLC*, 2013 WL 3752119 (S.D. Cal. 2013), and the SEC does not oppose the Investors being heard on the disposition of receivership assets. SEC Resp. 20.

1   However, for the reasons discussed *supra* in Part I.a, allowing broader

2   intervention than limited oppositions to the Receiver's orderly sale motion would

3   unduly delay this action. Thus, the Court **DENIES** Investors' motions for

4   permissive intervention.

5   **II.    Motion to Unseal**

6        The Dillon Investors move to unseal a number of documents containing

7   offers of purchase and letters of intent to purchase filed by the Receiver pursuant to

8   the May 12, 2015 order authorizing an orderly sale process of underwater GP

9   properties. *See* Unseal Mot. 2–4 (moving to unseal ECF Nos. 826/835, 876/925,

10  988/991, 1028/1040, 1062/1089, 1072/1090, 1020/1088, 1108/1122/1120,

11  1113/1124, 1132/1136, 1159).

12       Dillon Investors argue that the sealing of the documents is in contravention to

13  28 U.S.C. §2001 and that the Investors have a compelling interest in viewing the

14  sealed documents. However, as discussed *supra* in Part I.a n.2, there has yet been no

15  violation of 28 U.S.C. §2001. The sealing of documents related to offers of

16  purchase and letters of intent does not preclude the later publication of any public or

17  private sale or independent appraisal of the GP property; instead, as the Court stated

18  in its orders approving the Receiver's motions to seal those documents, it prevents

19  the publication of information that could harm the GPs' ability to sell their

20  properties if publicly disclosed, or lower the eventual selling price of the property.

21  *See, e.g.*, ECF Nos. 835 (observing that "[w]here a court filing contains 'business

22  information that might harm a litigant's competitive standing' the court may

23  properly deny public access" (quoting *Nixon v. Warner Commc'ns*, 435 U.S. 589,

24  598 (1978))), 924, 990, 1039, 1086, 1087.

25       Thus, the unsealing of the documents for public review could have a negative

26  impact on the GPs' ability to maximize the value of the properties under

27  receivership. That said, the Receiver and Dillon Investors dispute whether or not the

28

3:12-cv-2164-GPC-JMA

sealed documents have been provided to the Investors. *Compare* Receiver Unseal Resp. 3 (stating that "the sealed documents have all been provided to Mr. Dillon and Mr. Aguirre") and Unseal Reply 1 (stating that "Timothy P. Dillon ("Dillon") has not been provided the sealed documents despite his repeated requests"). Neither the SEC nor the Receiver has identified a reason why investors, as opposed to the public, should not be privy to these documents. Thus, the Court **ORDERS** the Receiver to provide the Investors with access to the full versions of the sealed and redacted documents identified in Dillon Investors' motion to unseal.

## CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that:

1.   The Investors' motions to intervene, ECF Nos. 1227, 1229, are **GRANTED IN PART** and **DENIED IN PART**. The Court will permit the Investors to intervene for the limited purposes of opposing the Receiver's orderly sale motion, ECF No. 1181. However, investors' motions to intervene are **DENIED** in all other respects.

2.   Dillon Investors' motion to unseal, ECF No. 1228, is **GRANTED IN PART** and **DENIED IN PART**. The Court **ORDERS** the Receiver to provide the Investors with access to the full versions of the sealed and redacted documents identified in Dillon Investors' motion to unseal. However, the disputed documents will remain sealed to the public.

3.   Aguirre Investors' *ex parte* motion to withdraw misstatement of fact, ECF No. 1265; Aguirre Investors' *ex parte* motion for leave to file excess pages, ECF No. 1273; Receiver's *ex parte* motion for leave to file supplement to court-ordered proposal regarding GPs, ECF No. 1275; Aguirre Investors' *ex parte* motion for leave to file opposition to SEC late joinder, ECF No. 1277; and Aguirre Investors' *ex parte* motion for leave to file opposition to

1  Receiver's court-ordered proposal regarding GPs, ECF No. 1293, are

2  **GRANTED**.

3  4.   The hearing set for Investors' motions, ECF Nos. 1227, 1228, 1229, 1293, on

4  May 20, 2016, is **VACATED**. All other motions set for May 20, 2016 having

5  been decided, the Court will solely consider the Receiver's orderly sale

6  motion, ECF No. 1181, at the May 20, 2016 hearing. The Dillon and Aguirre

7  Investors, as well as other individual investors, will have an opportunity to be

8  heard at the hearing.

9  **IT IS SO ORDERED.**

10

11  DATED:  May 18, 2016

12

13  HON. GONZALO P. CURIEL
   United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28