UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>LOUIS V. SCHOOLER and FIRST FINANCIAL PLANNING CORPORATION, dba Western Financial Planning Corporation,<br><br>Defendants. | **Case No.: 3:12-cv-2164-GPC-JMA**<br><br>**(1) GRANTING RECEIVER'S FOURTEENTH INTERIM FEE APPLICATION;**<br><br>**[ECF No. 1327]**<br><br>**(2) GRANTING ALLEN MATKINS' FOURTEENTH INTERIM FEE APPLICATION;**<br><br>**[ECF No. 1328]**<br><br>**(3) GRANTING RECEIVER'S FIFTEENTH INTERIM FEE APPLICATION;**<br><br>**[ECF No. 1329]**<br><br>**(4) GRANTING ALLEN MATKINS' FIFTEENTH INTERIM FEE APPLICATION;**<br><br>**[ECF No. 1330]**<br><br>**(5) GRANTING DUFFY, KRUSPODIN & COMPANY'S SIXTH INTERIM FEE APPLICATION;** |

|  |  |
|---|---|
| | **[ECF No. 1331]** |
| | **(6) APPROVING RECEIVER'S REVISED FOURTEENTH INTERIM REPORT IN PART;** |
| | **[ECF No. 1315]** |
| | **(7) APPROVING RECEIVER'S FIFTEENTH AND SIXTEENTH INTERIM REPORTS IN PART;** |
| | **[ECF No. 1319, 1353]** |
| | **(8) VACATING HEARING DATES** |

Before the Court are five fee applications by the court-appointed receiver Thomas C. Hebrank (the "Receiver"); counsel to receiver Allen Matkins Leck Gamble Mallory & Natsis LLP ("Allen Matkins"); and tax accountants for receiver Duffy, Kruspodin & Company, LLP ("Duffy Kruspodin"):

1. Fourteenth Interim Application for Approval and Payment of Fees and Costs to Thomas C. Hebrank, as Receiver ("Receiver's Fourteenth Interim Fee Application"), ECF No. 1327;

2. Fourteenth Interim Fee Application of Allen Matkins Leck Gamble Mallory & Natsis LLP, Counsel to Receiver ("Allen Matkins's Fourteenth Interim Fee Application"), ECF No. 1328.

3. Fifteenth Interim Application for Approval and Payment of Fees and Costs to Thomas C. Hebrank, as Receiver ("Receiver's Fifteenth Interim Fee Application"), ECF No. 1329

4. Fifteenth Interim Fee Application of Allen Matkins Leck Gamble Mallory & Natsis LLP, Counsel to Receiver, ("Allen Matkins's Fifteenth Interim Fee Application"), ECF No. 1330.

5. Sixth Interim Fee Application for Approval and Payment of Fees and Costs to Duffy, Kruspodin & Company, LLP, as Tax Accountants ("Duffy Kruspodin's Sixth Interim Fee Application"), ECF No. 1331.

Receiver also submitted to the Court a Revised Fourteenth Interim Report (ECF No. 1315)[1] on June 17, 2016, as required by the Court's May 25, 2016 Order (ECF No. 1304), the Fifteenth Interim Report (ECF No. 1319) on June 23, 2016, and the Sixteenth Interim Report (ECF No. 1353) on August 16, 2016.

Neither the Plaintiff Securities and Exchange Commission (the "SEC") nor Defendants have filed any response to the fee applications or the status reports with the Court. The sole opposition to these fee applications have come from investors. On September 2, 2016, Investors Joseph M. Ardizzone, David R. Schwarz, Lois Schwarz, Dennis Frisman, Eric Gilbert, and Rick Moore (the "Ardizzone Investors") filed a response opposing fee applications (1) through (4). ECF No. 1364. On September 7, 2016, Investor Susan Graham joined in the Ardizzone Investors' response in opposition to fee applications (1) through (4). ECF No. 1365. Graham has also objected to the Receiver's Thirteenth and Fourteenth Interim Reports. ECF No. 1317 & 1320.[2] The Court finds these motions suitable for disposition without oral argument pursuant to Civil Local Rule 7.1 (d)(1).

# BACKGROUND

**A. Receiver**

---

[1] Page numbers for CM/ECF documents follow the pagination generated by CM/ECF.

[2] The investors' objections are not properly before the Court. In its May 18 Order (ECF No. 1296), the Court granted a group of investors the right to intervene for the limited purpose of opposing the Receiver's orderly sale motion. ECF No. 1181. That motion is no longer before the Court. *See* ECF No. 1304. The Court denied the Aguirre Investors' motions to intervene (ECF Nos. 1230 & 1258) on May 25, 2016 (ECF No. 1303) to which Susan Graham was a named investor. The Court also denied investors Joseph M. Ardizzone, David R. Schwarz, and Lois Schwarz's motion to intervene (ECF No. 1348) on August 30, 2016. ECF No. 1359. Absent an order granting intervention the investor responses are improperly filed and the Court will not address the investors' objections in this order.

In the Fourteenth Interim Fee Application, Thomas C. Hebrank, the Receiver, asserts that he incurred $76,124.25 in fees and $655.49 in costs for the application period covering October 1, 2015 through December 31, 2015 ("Fourteenth Application Period"). ECF No. 1327 at 2. The breakdown of the fees amassed is as follows:

| Category | Total |
| --- | --- |
| General Receivership | $6,583.50 |
| Asset Investigation & Recovery | $0.00 |
| Reporting | $7,836.75 |
| Operations & Asset Sales | $59,278.50 |
| Claims & Distributions | $2,326.50 |
| Legal Matters & Pending Litigation | $99.00 |
| **Total** | $76,124.25 |

*Id.* at 3–5. Receiver now seeks payment of 80% of fees incurred, amounting to $60,899.40, and 100% of the costs, which account for postage, website maintenance, and copies. *Id.* at 2 & Exhibit C.

In the Fifteenth Interim Fee Application, the Receiver asserts that he incurred $153,785.25[3] in fees and $2,048.90 in costs for the application period covering January 1, 2016 through March 31, 2016 ("Fifteenth Application Period"). ECF No. 1329 at 2. The breakdown of the fees amassed is as follows:

| Category | Total |
| --- | --- |

---

[3] In the Fifteenth Interim Fee Application, Receiver states that he incurred $153,893.25 in fees. (ECF No. 1329 at 2). This number is slightly inconsistent with the itemized list of fees provided by Receiver and as indicated in the corresponding table reproduced here. *Id.* at 3–6. Accordingly, the Court will adopt the sum total of the itemized fees as the true representation of the costs incurred by Receiver over the applicable period.

| General Receivership | $10,485.00 |
| --- | --- |
| Asset Investigation & Recovery | None |
| Reporting | $805.50 |
| Operations & Asset Sales | $101,367.00 |
| Claims & Distributions | $19,041.75 |
| Legal Matters & Pending Litigation | $22,086.00 |
| **Total** | $153,785.25 |

*Id.* at 3–6. Receiver now seeks payment of 80% of fees incurred, amounting to $123,114.60, and 100% of the costs, which account for travel, postage, website maintenance, and copies. *Id.* at 2 & Exhibit C.

### B. Allen Matkins

In the Fourteenth Interim Fee Application, Allen Matkins, counsel for receiver, asserts that it incurred $19,852.20 in fees and $379.33 in costs for the application period covering October 1, 2015[4] through December 31, 2015, same as the Fourteenth Application Period identified previously. ECF No. 1328 at 2. The breakdown of the fees amassed is as follows:

| **Category** | **Total** |
| --- | --- |
| Reporting | $3,159.00 |

---

[4] In the Fourteenth Interim Fee Application Allen Matkins indicates that the applicable fee period runs from September 1, 2016 to December 31, 2016. (ECF No. 1328 at 2). However, as evident from Allen Matkins' Thirteenth Interim Fee Application (ECF No. 1154 at 2) and this Court's order granting that application (ECF No. 1167 at 2) any fees incurred from September 1, 2015 through September 30, 2015 were already accounted for by the Thirteenth Interim Fee Application. Because none of the time entries provided by Allen Matkins in its Fourteenth Interim Fee Application fall within the September 1, 2015 to September 31,2015 period, the Court is assured that there has been no double counting of fees in this application period. Accordingly, the Court has corrected this error and will process this application for the appropriate period of October 1, 2015 through December 31, 2015.

| | |
|---|---|
| Operations & Asset Sales | $13,024.80 |
| Claims & Distributions | $1,944.00 |
| Third Party Recoveries | $1,432.80 |
| Employment/Fees | $291.60 |
| **Total** | $19,852.20 |

*Id.* Allen Matkins now seeks payment of 80% of the fees incurred, amounting to $15,881.76, and 100% of the costs, accounting for document searches, filing fees, and service of process. *Id.* at 2 & Exhibit A.

In the Fifteenth Interim Fee Application, Allen Matkins, counsel for receiver, asserts that it incurred $100,615.05 in fees and $63.40 in costs for the application period covering January 1, 2016 through March 31, 2016, same as the Fifteenth Application Period identified previously. ECF No. 1330 at 2. The breakdown of the fees amassed is as follows:

| **Category** | **Total** |
|---|---|
| General Receivership | $936.90 |
| Reporting | $2,089.80 |
| Operations & Asset Sales | $31,084.65 |
| Claims & Distributions | $65,726.10 |
| Third Party Recoveries | $583.20 |
| Employment/Fees | $194.40 |
| **Total** | $100,615.05 |

*Id.* Allen Matkins now seeks payment of 80% of the fees incurred, amounting to $80,492.04, and 100% of the costs, accounting for document searches and service of process. *Id.* at 2 & Exhibit A.

### C. Duffy Kruspodin

In the Sixth Interim Fee Application, Duffy Kruspodin, tax accountants for Receiver, asserts that it incurred $135,207.00 in fees and $15,108.77 in costs for work in preparing the 2015 federal and state tax returns for the General Partnerships ("GPs") and the 2014 federal and state tax returns for Western and its subsidiaries, including Real Asset Locators, Inc. ECF No. 1331 at 2. The breakdown of the fees amassed is as follows:

| Category | Total |
| --- | --- |
| General Engagement Services | $15,216.75 |
| IT Consulting | $4,376.25 |
| Preparation of 2015 Income Tax Returns for GPs | $102,610.35 |
| Preparation of 2014 Income Tax Returns for First Financial, Real Asset Locators, and related entities | $13,003.65 |
| **Total** | **$135,207.00** |

*Id.* at 3–6. Duffy Kruspodin now seeks payment for all fees and costs incurred in carrying out these tasks. *Id.* at 2. The costs are itemized in Exhibit D of the application and account for tax software, electronic filing, envelopes, and postage. *Id.* at 2 & Exhibit D.

## LEGAL STANDARD

"[I]f a receiver reasonably and diligently discharges his duties, he is entitled to fair compensation for his efforts." *Sec. & Exch. Comm'n v. Elliott*, 953 F.2d 1560, 1577 (11th Cir. 1992). "The court appointing [a] receiver has full power to fix the

compensation of such receiver and the compensation of the receiver's attorney or attorneys." *Drilling & Exploration Corp. v. Webster*, 69 F.2d 416, 418 (9th Cir. 1934). A receiver's fees must be reasonable. *See In re San Vicente Med. Partners Ltd.*, 962 F.2d 1402, 1409 (9th Cir. 1992).

As set forth in the Court's prior fee orders, *see, e.g.*, ECF No. 1167, the Court will assess the reasonableness of the requested fees using the factors enumerated in *Sec. & Exch. Comm'n v. Fifth Avenue Coach Lines*, 364 F. Supp. 1220, 1222 (S.D.N.Y. 1973) and *In re Alpha Telcom, Inc.*, 2006 WL 3085616, at *2–3 (D. Or. Oct. 27, 2006). Those factors include: (1) the complexity of the receiver's tasks; (2) the fair value of the receiver's time, labor, and skill measured by conservative business standards; (3) the quality of the work performed, including the results obtained and the benefit to the receivership estate; (4) the burden the receivership estate may safely be able to bear; and (5) the Commission's opposition or acquiescence. *See* 364 F. Supp. at 1222; 2006 WL 3085616, at *2–3.

## DISCUSSION

### Interim Fee Applications

**A. Complexity of Tasks**

    **1. Receiver**

The Court finds that the tasks performed by the Receiver during the Fourteenth and Fifteenth Application Periods were moderately complex. The Receiver undertook the following tasks during both periods:

- participating in meetings and conferences with the SEC's legal counsel;
- handling general administrative issues, including reviewing mail, email, and other correspondence directed at the Receivership Entities;
- administering the bank accounts of the Receivership Entities;
- reviewing and approving expenditures;

- maintaining and updating the Receiver's website with case information and documents;
- responding to investor inquiries and misinformation put out by certain investors;
- preparing Receiver's fee interim reports;
- managing and overseeing the GPs' operations and real property;
- managing and overseeing Western's operations;
- performing accounting functions of the Receivership Entities, including paying expenses, clearing checks, and ACH entries;
- managing and overseeing tax reporting for Receivership Entities;
- managing and overseeing GP operational bills, loan payments, and cash management;
- analysis relating to purchase offers received;
- closing property sales.

The Receiver completed the following additional tasks during the Fourteenth Application Period:

- preparing the Court Ordered Information Packets for the GPs per the Court's May 12, 2015 Order;
- obtaining listing agreements and marketing of properties for sale with brokers;
- issuing and tracking capital calls for GPs without sufficient cash;
- responding to and noticing investors on multiple purchase offers and letters of intent;
- conducting investor votes, negotiations, and acceptance of purchase offers;
- participating in meetings and communications relating to the settlement of the LinMar IV judgment.

Finally, the Receiver completed the following additional tasks during the Fifteenth Application Period:

- preparing *Ex Parte* Application for Order Confirming Sale of Jamul Valley Property;
- preparing Recommendation re: Engagement of Real Estate Brokers;
- soliciting, reviewing, and negotiating listing agreements with brokers;
- consulting with brokers regarding marketing properties for sale;
- negotiations and documentation of purchase and sale agreements;
- steps associated with the sale of Jamul Valley, Reno Vista/Reno View, and Silver Springs So.;
- filing Receiver's Motion for (a) Authority to Conduct Orderly Sale of GP Properties; (b) Approval Plan of Distributing Receivership Assets; (c) Approval of Procedures for the Administration of Investor Claims;
- responding to informal requests for documents and information from investors' attorneys.

ECF No. 1327 at 3–5; ECF No. 1329 at 3–6.

**2. Allen Matkins**

The Court finds that the tasks performed by Allen Matkins, counsel for Receiver, during the Fourteenth Application Period were somewhat complex. Counsel undertook the following tasks during this period:

- assisting Receiver with ongoing operations of Western and the GPs; addressing letters of intent received for GP properties; preparation of the information packets for GPs pursuant to the Court's May 12, 2015 order; response to investor's letter concerning termination of a property tax consultant; follow-up regarding the capital calls sent to tenants; recommendation to engage brokers;
- managing sale of the Jamul Valley property;
- assisting Receiver in preparing Thirteenth Interim Report;

- advising Receiver regarding correspondence with investors, creditors, and their counsel; issues raised by certain investors with regards to transferring their GP units;
- conducting analysis of issues with respect to the proposed distribution plan and methodology of funds;
- assisting Receiver with the collection and satisfaction of the LinMar IV judgment pursuant to the Court-approved settlement.

ECF No. 1328 at 3–6.

The Court finds that the tasks performed by Allen Matkins during the Fifteenth Application Period were moderately complex. Allen Matkins undertook the following tasks during this period:

- assisting Receiver with legal issues relating to the ongoing operations of Western and the GPs, including addressing water rights issues to the Minden property; with the closing of the Jamul Valley property; and seeking authority to engage real estate brokers for certain GP properties;
- addressing letters of intent received for GP properties;
- responding to requests for information by the SEC and the IRS relating to Defendants; informal requests for documents and information from investors;
- assisting Receiver in preparing the Fourteenth Interim Report;
- seeking confirmation of the sale of the Jamul Valley Property;
- analyzing issues and formulating a plan for the distribution of receivership assets;
- assisting Receiver in preparing motions regarding the Orderly Sale of GP Properties; Plan for Distributing Receivership Assets; Procedures for the Administration of Investor Claims;
- reviewing and responding to communications from investors, creditors, and their counsel with respect to the receivership;

11

3:12-cv-2164-GPC-JMA

- assisting Receiver with the collection and satisfaction of the LinMar IV judgment pursuant to the Court-approved settlement.

ECF No. 1330 at 3–7.

### 3. Duffy Kruspodin

The Court finds that the tasks performed by Duffy Kruspodin, tax accountants for Receiver, during the Sixth Application Period were moderately complex.  Tax Accountants to Receiver undertook the following tasks during this period:

- engaging in communication and meetings with the Receiver with respect to the receivership;
- updating the accounting documents necessary to prepare the tax returns;
- providing services related to information technology to assist with the tax preparation process;
- preparing the 2015 income tax returns for GPs and 2014 income tax returns for Western and its subsidiaries, including Real Asset Locators.

ECF No. 1331 at 3–7.

### B. Fair Value of Time, Labor, and Skill

The Receiver billed his time at $247.50 per hour and the time of those working for him at $180.00 per hour during both application periods.  ECF No. 1327 at 3; ECF No. 1329 at 2–3.  Allen Matkins billed its time at $306.00 – $670.50 per hour, with the overwhelming majority of work being billed at $486.00 per hour.  ECF No. 1330, Exhibit A at 26; ECF No. 1328, Exhibit A at 12–26.  Duffy Kruspodin billed its time from $65 – $375 per hour, with a blended billing rate of $159.10.  ECF No. 1331 at 9.  These rates reflect a ten percent discount from the Receiver's, Allen Matkins', and Duffy Kruspodin's ordinary rates.  ECF No. 1327 at 2; ECF No. 1329 at 2; ECF No. 1328 at 2; ECF No. 1330 at 2; ECF No. 1331 at 2.

The Court continues to find, as it has in previous fee orders, that the rates charged by the Receiver, Allen Matkins, and Duffy Kruspodin are comparable to rates charged in

this geographic area and therefore represent a fair value of the time, labor, and skill provided.

### C. Quality of Work Performed

The Court finds that the quality of work performed by the Receiver, Allen Matkins, and Duffy Kruspodin to be above average. As the Court mentioned in its January 14, 2016 order granting the Thirteenth Interim Fee Application (ECF No. 1167), the Receiver and his counsel have kept the Receivership Entities afloat despite the fact that Western's main source of income — that is, selling GP interests — had ceased prior to this litigation. The Receiver has, and continues to, competently operate the Receivership as evidenced by Receiver's Fourteenth, Fifteenth, and Sixteenth Status Reports (ECF No. 1315, 1319, 1353), while at the same time marshalling assets — through capital calls, post-judgment collection, and sale of GPs — to support its continued financial integrity. These actions benefit all investors. The Receiver and his counsel have, moreover, complied with the Court's orders and have made every effort to protect investors' interests in the GP properties during the pendency of this litigation. The Court likewise finds the quality of Duffy Kruspodin's work to be satisfactory. Duffy Kruspodin prepared all 98 of the GP tax returns for 2015 and 2014 in a timely manner, fulfilling the Receivership's responsibility to the federal and state governments and to investors. ECF No. 1331 at 10–11.

### D. Receivership Estate's Ability to Bear Burden of Fees

Since Receiver last filed an interim fee application, the Court has approved Receiver's Modified Orderly Sale Process (ECF No. 1359) and the use of the One Pot approach to distribute receivership assets (ECF No. 1304 at 31). These actions were taken for the dual purpose of increasing the value of the receivership estate by selling GP properties and lowering administrative costs. ECF No. 1304 at 30. On August 30, 2016 the Court approved the sale of the Jamul Valley Property (ECF No. 1361 at 2), the Reno Vista and Reno View Properties (ECF No. 1360 at 2), and the property known as Silver

Springs So. (ECF No. 1362 at 2).  Further, pursuant to the One Pot approach, Receiver has since pooled the assets of the Receivership Entities thereby "creating a common pool of receivership estate cash from which mortgages, property taxes, and other operating expenses have been and will continue to be paid."  ECF No. 1327 at 7.  Given the increase in the Receivership's cash balance as evidenced by the sale of the above-mentioned properties and the decrease in administrative costs as evidenced by the implementation of a common pool of receivership estate cash, the Court finds that the receivership estate has sufficient ability to bear the instant fee requests.

### E. Commission's Opposition or Acquiescence

Receiver indicates that the SEC does not oppose any of the proposed fees or costs submitted by Receiver, Allen Matkins, or Duffy Kruspodin.  ECF No. 1327 at 7; ECF No. 1328 at 9; ECF No. 1329 at 8; ECF No. 1330 at 10; ECF No. 1331 at 10.

## Interim Reports

### A. Compliance with Standardized Fund Accounting Requirements (SFAR)

In its May 25 Order (ECF No. 1304), the Court directed the Receiver to submit all future interim reports in compliance with the SFAR.  (ECF No. 1304).  In both of the fee applications Receiver submitted (ECF Nos. 1327 & 1329), as well as the fee reports (ECF No. 1304, 1319, 1353), Receiver included an Exhibit titled "Standardized Fund Accounting Report."  The SFAR submitted with the Receiver's Fourteenth Interim Report and Fourteenth Interim Fee Application covers the period from 9/6/2012 to 12/31/15 (i.e., from the beginning of the Receivership to the end), rather than the Fourteenth Application Period.  To the extent that the SFAR does not coincide with the Fourteenth Application Period, the Court DIRECTS Receiver to withdraw and resubmit the SFAR report to reflect the accounting for the correct reporting period.

The Court is further dissatisfied by the fact that Receiver has failed to describe the source of income listed in Line 8 "Miscellaneous – Other*" of the SFAR reports submitted with the Fourteenth, Fifteenth, and Sixteenth Interim Reports.  The billing

instructions for the SFAR indicate that Line 8 includes "Amounts received from, an identified payor." Billing Instructions for Receivers in Civil Actions Commended by the U.S. Securities and Exchanges Commission ("SEC Billing Instructions"), https://www.sec.gov/oiea/Article/billinginstructions.pdf.  Moving forward, the Court DIRECTS the Receiver to make clear, by reference to other exhibits or otherwise, the source of income in that category.

## CONCLUSION

Considering the above five factors taken together, and considering that "[i]nterim fees are generally allowed at less than the full amount," *Alpha Telcom*, 2006 WL 3085616, at *2–3, the Court awards fees and costs as set forth in the following table:

| Applicant | Fees Allowed | % of Fees Incurred[5] | Costs Allowed | % of Costs Requested |
|---|---|---|---|---|
| Receiver | $184,014.00 | 80 | $2,704.39 | 100 |
| Allen Matkins | $96,373.80 | 80 | $442.73 | 100 |
| Duffy Kruspodin | $135,207.00 | 100 | $15,108.77 | 100 |

## ORDER

After a review of the parties' submissions, the record in this matter, and the applicable law, and for the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. The Receiver's Fourteenth Interim Fee Application, ECF No. 1327, is **GRANTED**;
2. The Receiver's Fifteenth Interim Fee Application, ECF No. 1329, is **GRANTED**;
3. Allen Matkins' Fourteenth Interim Fee Application, ECF No. 1328, is **GRANTED**;

---

[5] The Court includes the percentage of fees *incurred* rather than a percentage of the fees requested, given that the Receiver and Allen Matkins request only a percentage of their actual fees.  In addition, Duffy Kruspodin's billing rate already incorporated a discount of 10%.  ECF No. 1331 at 2.

1    4. Allen Matkins' Fifteenth Interim Fee Application, ECF No. 1330, is **GRANTED**;

2    5. Duffy Kruspodin's Sixth Interim Fee Application, ECF No. 1331, is **GRANTED**;

6. The Receiver's Revised Fourteenth Interim Report, ECF No. 1315, is **APPROVED IN PART.** The Court **DIRECTS** the Receiver to withdraw, within seven days of this order, Receiver's Revised Fourteenth Interim Report and submit a second revised interim report reflecting that the SFAR should address the Fourteenth Application Period, October 1, 2015 to December 31, 2015. The Court also **DIRECTS** the Receiver to clearly indicate, by reference or otherwise, the source of accounting in Line 8 "Miscellaneous – Other*" of the SFAR attached to the Revised Fourteenth Interim Report within seven days of this order.

7. The Receiver's Fifteenth Interim Report, ECF No. 1319, and Sixteenth Interim Report, ECF No. 1353, are **APPROVED IN PART.** The Court **DIRECTS** the Receiver to withdraw and resubmit Receiver's Fifteenth and Sixteenth Interim Reports and submit revised SFAR reports indicating, by reference or otherwise, the source of accounting in Line 8 "Miscellaneous – Other*" of the respective SFARs attached to those reports within seven days of this order.

8. The hearing set for **September 16, 2016**, is **VACATED.**

**IT IS SO ORDERED**.

Dated: September 14, 2016

                                    Hon. Gonzalo P. Curiel
                                    United States District Judge