UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION<br><br>                          Plaintiff,<br><br>v.<br><br>LOUIS V. SCHOOLER and FIRST FINANCIAL PLANNING CORPORATION, dba Western Financial Planning Corporation,<br><br>                         Defendants. | Case No.: 3:12-cv-2164-GPC-JMA<br><br>**ORDER:**<br><br>**1) DENYING MOTION TO STAY, MOTION TO ALTER OR AMEND**<br><br>**[Dkt. No. 1368]**<br><br>**2) DENYING MOTION TO INTERVENE**<br><br>**[Dkt. No. 1381]**<br><br>**3) DENYING MOTION TO BE RELIEVED AS COUNSEL, TO NOTICE DEATH OF DEFENDANT**<br><br>**[Dkt. No. 1384]** |

Before the Court are a variety of motions filed by the Ardizzone Investors, the Graham Investors, and by Phil Dyson, counsel to Louis Schooler, each of whom moved for separate relief.

1

1    The Ardizzone Investors' have moved to stay any further execution of: (1) Thomas Hebrank's (the "Receiver") liquidation plan (Dkt. No. 1304); (2) the sale of the Jamul Valley Property (Dkt. No. 1361); (3) and the Receiver's engagement of CBRE (Dkt. No. 1359). Dkt. No. 1368. The Ardizzone Investors' have also moved to alter or amend under Fed. R. Civ. P. ("Rule") 59(e) and Rule 60(b): (1) the Court's order denying (Dkt. No. 1359) the Ardizzone Investors' motion to intervene (Dkt. No. 1348); (2) the Court's order granting (Dkt. No. 1359) the Receiver's motion to engage CBRE as a consultant (Dkt. No. 1341); and (3) the Court's order approving (Dkt. No. 1361) the sale of the Jamul Valley property (Dkt. No. 1361). Dkt. 1368-1 at 9.[1] Both the Receiver and the Securities and Exchange Commission ("SEC") have opposed the Ardizzone Investors' motion to stay and to alter or amend. Dkt Nos. 1383, 1389. In turn, the Ardizzone Investors filed replies to the Receiver's and SEC's oppositions. Dkt. Nos. 1393, 1396.

The Graham Investors have moved to intervene, oppose, and request clarification of the Receiver's second revised 14th interim report, revised 15th interim report, and revised 16th interim report. Dkt. No. 1381-1 at 1. Both the SEC and Receiver have opposed the Graham Investors' motion to intervene. Dkt. Nos. 1394, 1395. The Graham Investors submitted a single reply to both oppositions. Dkt. No. 1402.

Finally, the last matter before the Court is Phil Dyson's ("Counsel") request that he be relieved as counsel for Defendant Louis Schooler, and request that the Court formally notice the death of Schooler. Dkt. No. 1384. The SEC filed a response on October 27, 2016, Dkt. No. 1398, and Counsel filed a reply on October 31, 2016, Dkt. No. 1401.

## I. ARDIZZONE INVESTORS

### A. Motion to Stay

The standard for assessing a request for a stay pending appeal is similar to that used to evaluate whether to grant a preliminary injunction. *Lopez v. Heckler*, 713 F.2d

---

[1] All pagination follows the internal page numbers as designated by CM/ECF.

1432, 1435 (9th Cir. 1980); *see also Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).  Four factors govern the issuance of a stay pending appeal: (1) whether the moving party has demonstrated a strong likelihood of success on the merits; (2) whether the moving party will be irreparably injured; (3) whether serious legal questions are raised and whether the balance of hardships tips in the moving party's favor; and (4) where the public interest lies.  *Lopez*, 713 F.2d at 1435.

### 1. Likelihood of success on the merits

In their motion to stay, the Ardizzone Investors address only one of the four Lopez factors: that is, the likelihood that their appeal will succeed on the merits.[2]  Dkt. No. 1368-1 at 8.  The Ardizzone Investors argue that the SEC's and Receiver's "lack of adequate notice to investors at each step in the receivership proceedings" provide grounds for the stay.  Dkt. No. 1368-1 at 6.  Their primary contentions are (1) that the Receiver's website and "occasional emails" were not adequate notice; (2) that the Receiver's communications with the Ardizzone and Schwarz Investors demonstrate his failure to use alternative notices; (3) that the Receiver's claim that he neglected to send notice to save money is self-serving; (4) that the Receiver failed to comply with Local Rule 66.1 and the due process clause in providing notice; and (5) that the Receiver failed to give notice of his "liquidation plan"[3] of receivership assets.  *See generally id.*

---

[2] This failure, on its own, is grounds to deny the investors' motion to stay.  The Ardizzone Investors give the following reason for only considering one of the relevant factors: "The Court previously considered all four issues when it addressed the Graham Investors' motion for a stay, but denied that motion on a single ground, i.e., the Graham Investors failed to demonstrate the likelihood their appeal would succeed on the merits.  Accordingly, the Ardizzone Investors will focus below on the likelihood of success on the merits." *Id.* (citing to the Court's May 25, 2016 Order, Dkt. No. 1359).  This position is problematic for two reasons.  For one, the Graham Investors' motion is not before the Court and, thus, their arguments are not properly considered, here, when a different group of investors has sought a stay.  But more importantly, just because the Court denied the Graham Investors' motion to stay because of the failure to show a likelihood of success on the merits does not mean that the Court found that the other factors weighed in the Graham Investors' favor.

[3] The Ardizzone Investors frequently refer to the Receiver's motion for authority to conduct orderly sale of the general partnership properties (Dkt. No. 1181) as the Receiver's "liquidation plan."  This memo will refer to the Receiver's plan as the orderly sale plan or process.

These arguments, as the SEC notes in its opposition, are mostly recapitulations of ones already made to and rejected by the Court. *See* Dkt. No. 1389 at 1-2; *see also* Dkt. Nos. 1003, 1004, 1224, 1296, 1303, 1359. The Ardizzone Investors do not contest this point. *See* Dkt. No. 1396 at 2. "While the Ardizzone Investors have incorporated in their motion to intervene every contention raised by the Graham Investors, they also contend that they and all other investors were deprived of due process of law in one additional way the Graham Investors did not." *Id.* Insofar as the Ardizzone Investors have presented arguments already considered and rejected by the Court, the Court finds those arguments similarly unpersuasive here.

The new argument presented by the Ardizzone Investors is that the Receiver gave "inadequate or no notice" of his "liquidation plan" to 3,000 investors including the Ardizzone Investors. *Id.* The Ardizzone Investors argue that the Receiver's notice was inadequate because the link that Hebrank posted on his website did not inform the reader that "his plan would forfeit investors' property rights." Dkt. No. 1368-1 at 14 ("after February 4, 2013, [an investor] would have found this innocuous link: "Mtn for Authority to Conduct Sale of GP Props" . . . Since Hebrank had previously given multiple notice proposing to sell GP realty, the fact he was doing so again gave no notice that his plan would forfeit investors' property rights.").

The Ardizzone Investors, however, do not persuasively explain why this new allegation of inadequate notice makes it more likely that they will succeed in challenging the Court's orders authorizing the Receiver to conduct an orderly sale, approving the sale of the Jamul Valley Property, and permitting the Receiver to engage CBRE as a consultant. For one, the Ardizzone Investors do not dispute that the Receiver provided them with written notice, in October 2012, directing them to his website for further updates regarding the receivership. Dkt. No. 1368-1 at 8. And more importantly, the Ardizzone Investors do not argue that they did not receive "actual notice" of the Receiver's plan to conduct an orderly sale or an "opportunity for hearing." *See SEC v. Am. Principals Holding, Inc. (In re San Vicente Med. Partners Ltd.)*, 962 F.2d 1402,

4

3:12-cv-2164-GPC-JMA

1406-08 (9th Cir. 1992) ("In sum, a district court has the power to include the property of a non-party limited partnership in an SEC receivership order as long as the non-party . . . receives *actual notice* and an opportunity for hearing.") (emphasis added).  Accordingly, the Ardizzone Investors have failed to demonstrate that they are likely to succeed on the merits on appeal.

### 2. Balance of Hardships and Public Interest

Yet even assuming that the Ardizzone Investors could demonstrate a likelihood of success on the merits, that fact alone is not a sufficient basis for granting a stay.  The third and fourth *Lopez* factors direct the Court to assess the equities involved in this case, and those factors strongly counsel against granting a stay of the Receiver's orderly sale of the receivership assets.

To assess the balance of hardships present in this case, the Court must weigh the Ardizzone Investors' interest in preserving the status quo against the interest, held by the thousands of other investors, in maximizing the receivership estate and receiving prompt disbursements.  *See generally* Court's May 25, 2016 Order, Dkt. No. 1304 at 9, 18.  In approving the Receiver's orderly sale plan, the Court carefully addressed and evaluated the concerns expressed by the Receiver, the SEC, and myriad investors concerning whether or not an orderly sale would benefit the receivership estate.  *See generally* Dkt. Nos. 1304, 1359.  After careful deliberation, the Court approved the Receiver's orderly sale plan because it found that sale of the receivership assets would maximize the value of the receivership estate for all of the investors who had been defrauded by Schooler.  Dkt. No. 1304 at 19, 26.

Halting the implementation of the Receiver's plan now would only jeopardize the very interests that justified the Court's approval of the orderly sale process in the first place.  This is so because granting the Ardizzone Investors' stay means putting at risk the monetary rights of the thousands of other investors who stand to gain under the Receiver's orderly sale.  Accordingly, the balance of hardships does not weigh in the Ardizzone Investors' favor.  *See U.S. v. Alisal Water Corp.*, 326 F. Supp. 2d 1032, 1040

5

3:12-cv-2164-GPC-JMA

(N.D. Cal. 2004) (denying defendant's motion to stay the sale of receivership assets, in part, because the "substantial and not inexpensive efforts of the Court, the receiver, the bidders and the public itself in carrying out the requirements of the Receivership Order would be wasted if the sales were derailed at this juncture.")

The public interest also weighs against granting the stay.  The public interest prong of the *Lopez* test is "inseparable from the issues relating to the relative hardship suffered by the litigants." *See Lopez*, 713 F.2d at 1437.  Given the fraudulent nature of Defendant Schooler's scheme, the public has an interest in ensuring that "defrauded investor creditors receive a speedy and economic resolution of the receivership action and at least recover something." *See S.E.C. v. Goldfarb*, 2013 WL 4865144, *3 (N.D. Cal. Sep. 12, 2013).  As such, the fourth factor also counsels against granting the stay because granting a stay would preserve the appellate rights of a few at the expense of the public's interest in recovering the $145 million judgment outstanding.[4]

### B. Motion to Alter or Amend under Rule 60(b)

The Ardizzone Investors move to alter or amend the Court's (1) order denying the Ardizzone Investors' motion to intervene, Dkt. No. 1359; (2) the Court's order granting the Receiver's authority to engage CBRE as a consultant, Dkt. No. 1359; and (3) the Court's order approving the sale of the Jamul Valley property, Dkt. No. 1361.  A motion for "relief from a final judgment, order or proceeding" may be filed within a "reasonable time," but usually must be filed "no more than a year after the entry of the judgment or order or the date of the proceeding."  Fed. R. Civ. P. 60(c)(1).  Reconsideration under Rule 60 may be granted in the case of: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence; (3) fraud; (4) if the judgment is void; (5) if the judgment has been satisfied; or (6) for any other reason that justifies relief.  Fed. R.

---

[4] Although the Ardizzone Investors have not presented the Court with any argument concerning the second prong of the *Lopez* test, that is, whether the investors would be irreparably injured, the Court would likely find this factor to be met.

Civ. P. 60(b). "Rule 60(b) provides for extraordinary relief and may be invoked only upon a showing of exceptional circumstances." *Engelson v. Burlington Northern R. Co.*, 972 F.2d 1038, 1044 (9th Cir. 1992) (citations omitted). The Ardizzone Investors seek reconsideration under Rule 60(b)(2) ("newly discovered evidence"), (b)(3) ("fraud, misrepresentation, or misconduct"), (b)(4) ("judgment is void"), and (b)(6) (the catch-all). Dkt. No. 1368-1 at 8-9.

### 1. Newly discovered evidence

A party moving to alter or amend a judgment pursuant to Rule 60(b)(2) must show that the evidence is (1) newly discovered; (2) that it could not have been discovered through due diligence; and (3) is of such a material and controlling nature as to probably change the outcome. *See Coastal Transfer Co. v. Toyota Motor Sales, U.S.A.*, 833 F.2d 208, 211 (9th Cir. 1987). The Ardizzone Investors fail to meet all of these criteria.

As previously addressed above, the only semblance of new evidence presented to the Court by the Ardizzone Investors' motion concerns the allegation that the Receiver "gave them [the Ardizzone Investors] inadequate or no notice of his February 4, 2016, motion for an order approving his liquidation plan." Dkt. No. 1396 at 2. However, that the Receiver allegedly failed to give the Ardizzone Investors notice of his "liquidation plan" (that is, the Receiver's orderly sale plan) is not new evidence but new legal argument. If the Receiver did, in fact, fail to give adequate or no notice to the investors of his orderly sale plan, that harm occurred in February 2016, when the plan materialized. *See* Dkt No. 1396 at 2. That the Ardizzone Investors failed to bring that alleged harm to the Court's attention until nine months after the Court approved the plan, is not "new evidence" that could not have been discovered through due diligence, but new legal grounds for relief.

Furthermore, even if the Ardizzone Investors had presented new evidence, they offer no argument explaining why that evidence is "material" and "controlling" such that its prior discovery would have changed the Court's decision. After the Receiver submitted his orderly sale plan to the Court for review, Dkt. No. 1181, the Court engaged

in an extensive review of the proposal, as stated above, and took into account the views of investors both for and against the proposal. The Ardizzone Investors offer no reason why their "new evidence" would have changed the Court's ultimate decision to approve the orderly sale procedure. As such, the Ardizzone Investors' Rule 60(b)(2) motion is **DENIED.**

### 2. Fraud, misrepresentation, or misconduct

To demonstrate that relief is warranted under Rule 60(b)(3), a moving party must establish that the order was "obtained by fraud, misrepresentation, or misconduct, and that the conduct complained of prevented the moving party from fully and fairly presenting the case." *In re M/V Peacock on Complaint of Edwards*, 809 F.2d 1403, 1404 (9th Cir. 1987). Here, the Ardizzone Investors argue that Rule 60(b)(3) relief is warranted because the SEC and Hebrank made "misleading and untrue statements of fact and law" in their oppositions, Dkt. Nos. 1355, 1358, to the Ardizzone Investors' motion to intervene. Dkt. No. 1368-1 at 7.

That the SEC and Receiver allegedly made misleading and untrue statements in opposition briefs in no way prevented the Ardizzone Investors from fully and fairly presenting their case. What is more, the Court's order denying the Ardizzone Investors' motion to intervene did not rely on the SEC's or Receiver's opposition briefs in making its ruling, but rather, on the failure of the Ardizzone Investors to demonstrate that they received defective notice of the May 25, 2016 hearing. *See* Dkt. No. 1359 at 3. Accordingly, the Ardizzone Investors request for Rule 60(b)(3) relief is **DENIED.[5]**

////

---

[5] The Ardizzone Investors have also moved to strike the allegedly untrue and misleading statements made by the SEC and the Receiver in their respective oppositions to the Ardizzone Investors' motion to intervene. *See* Dkt. No. 1368-1 at 11. The Court **DENIES** this motion as moot because the Court has already denied the Ardizzone Investors' motion to intervene and, as stated above, did not rely on the opposition briefs in reaching its decision.

### 3. Judgment as void

A final judgment is void under Rule 60(b)(4) if the presiding court "lacked jurisdiction, either as to the subject matter of the dispute or over the parties to be bound, or acted in a manner inconsistent with due process of law." *U.S. v. Berke*, 170 F.3d 882, 883 (9th Cir. 1999). The Ardizzone Investors aver that they are entitled to Rule 60(b)(4) relief because the Court did not have subject matter jurisdiction: to make Hebrank the receiver, Dkt. No. 174, to approve the Receiver's orderly sale plan, Dkt. No. 1304, or to carry out steps in accordance with the orderly sale, Dkt. Nos. 1359, 1361. *See* Dkt. No. 1368-1 at 7. The Ardizzone Investors offer two main reasons why these four orders are void: (1) because the Court lacked subject matter jurisdiction over the General Partnerships ("GPs") and (2) because the Court's orders were made in violation of the investors' due process rights. *Id.* at 9.

The Court has already carefully considered both of the arguments advanced by the Ardizzone Investors. In its May 25, 2016 Order, it evaluated, and rejected, the arguments that the Receiver did not have the authority to sell the GPs and that the investors had been denied due process of law. Dkt. No. 1304 at 13-16. Because the Ardizzone Investors Rule 60(b)(4) motion relies on arguments that have already been dismissed by the Court, the Court **DENIES** the Ardizzone Investors' motion for Rule 60(b)(4).

### 4. Catch-all

It has been observed that Rule 60(b)(6) is "used sparingly as an equitable remedy to prevent manifest injustice." *Latshaw v. Trainer Wortham & Co., Inc.*, 452 F.3d 1097, 1103 (9th Cir. 2006). A party who moves for such relief "must demonstrate both injury and circumstances beyond his control that prevented him from proceeding with . . . the action in a proper fashion." *Id.*

The Ardizzone Investors aver that they are entitled to such relief "[f]or the same reasons" offered in support of their other Rule 60(b) motions and for the following additional reasons: because the Court erred in (1) interpreting Local Rule 66.1; (2) not requiring the SEC and Hebrank to establish subject matter jurisdiction over the GPs and

carry out GP "forfeiture" in compliance with due process; (3) not requiring the Receiver to "submit concrete evidence of the name and number of investors who received his October 12, 2016" letter; (4) "[p]ermitting the SEC, Hebrank, and the defendants to stipulate to an order depriving investors of their rights to oppose the permanent appointment of a receiver"; (5) "[t]reating Hebrank's May 6, 2016, email as notice of his liquidation plan"; (6) failing to provide investors with a procedure to object to the Receiver's liquidation plan; (7) failing to recognize or apply applicable precedent; (8) failing to uphold its March 7, 2013 order; and (8) basing its factual findings on Hebrank's inadmissible statements and by denying the investors an opportunity to object. Dkt. No. 1368-1 at 9.

The Ardizzone Investors have failed to explain why correcting these alleged errors are necessary to prevent manifest injustice. They cite to no case law in support of their position. The Ardizzone Investors' brief focuses on the lack of notice provided by the Receiver, but crucially, does not explain why any of these errors are so egregious as to merit Rule 60(b)(6) relief. Accordingly, the Court **DENIES** their request for Rule 60(b) relief.

C.      **Motion to Alter or Amend under Rule 59(e)**

A Rule 59(e) motion is properly granted "if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Dixon v. Wallowa County*, 336 F.3d 1013, 1022 (9th Cir. 2003). This category of motion seeks "a substantive change of mind by the court," *Tripati v. Henman*, 845 F.2d 205, 206 n.1 (9th Cir. 1988) (quoting *Miller v. Transamerican Press, Inc.*, 709 F.2d 524, 526 (9th Cir. 1983)), and "should not be granted, absent highly unusual circumstances," *McQuillion v. Duncan*, 342 F.3d 1012, 1014 (9th Cir. 2003). "[M]otions to reconsider are not vehicles permitting the unsuccessful party to 'rehash' arguments previously presented." *United States v. Navarro*, 972 F. Supp. 1296, 1299 (E.D. Cal. 1997) (rejecting "after thoughts" and "shifting of ground" as appropriate grounds for reconsideration under Rule 59(e)).

The Court **DENIES** the Ardizzone Investors' motion for Rule 59(e) relief for the same reasons it rejects their motion for Rule 60(b) relief and because any Rule 59(e) is barred for lack of timeliness. A "motion to alter or to amend a judgment must be filed no later than 28 days after the entry of judgment." Fed. R. Civ. P. Rule 59(e). In this case, judgment was entered on February 23, 2016, Dkt. No. 1190, and the motion was filed on September 13, 2016, Dkt. No. 1368. As such, it must be **DENIED** as untimely. *See* Fed. R. Civ. P. 59(e) ("a motion to alter or amend a judgment must be filed no later than 28 days after the entry of judgment.")

### D. Ardizzone Investors' *Ex Parte* Motion

On October 27, 2016, the Ardizzone Investors filed an *ex parte* application asking the Court 1) to temporarily delete an exhibit[6] that they had offered in support of their reply brief pertaining to the motion to stay and alter or amend the judgment, and 2) to clarify whether or not the Court's May 18, 2016 order bars investors from filing exhibits concerning the sale of the receivership properties. Dkt. No. 1397 at 2. Exhibit 4 is a copy of a letter written from the Receiver to investors of the Pyramid Highway property. Dkt. No. 1396-1 at 20. The letter includes details concerning the purchase price, the appraised value of the property, the current bank account balance, and receivership operating expenses, among others matters. *Id.* Once this document was docketed, the Receiver demanded that the Ardizzone Investors remove the document from public view because the information published contravened the Court's May 18, 2016 Order. *Id.*

The Receiver and SEC both oppose the Ardizzone Investors' *ex parte* application. Dkt. Nos. 1400, 1403. For one, both parties note that the *ex parte* application is not properly before the Court because the Ardizzone Investors' did not seek permission to intervene before making the request. *See* Dkt. No. 1400 at 3; Dkt. No. 1403 at 2. The Receiver further argues that the *ex parte* application was unnecessary because the Court's

---

[6] Exhibit 4 of Counsel Gary Aguirre's Declaration.

May 18, 2016 Order unequivocally states that the Receiver's filings relating to "letters of intent, offers, and negotiations with potential purchasers" should not to be included in public filings. Dkt. No. 1296 at 2. The SEC echoes this argument and adds that the Court's May 18, 2016 order makes clear that the "unsealing of the documents [i.e., letters of intent, etc.] for public review could have a negative impact on the GPs' ability to maximize the value of the properties under receivership." Dkt. No. 1403 at 2.

To lay this frivolous dispute to rest, the Court reiterates, as it did in its May 18, 2016 Order, that *any* letters of intent, offers, negotiations, or any other document containing sensitive information about the sale of the GP properties, such as Exhibit 4, not be made publicly available or filed on the public docket. Accordingly, the Court **DIRECTS** the Ardizzone Investors to withdraw their reply brief and to resubmit it without Exhibit 4.

## II. GRAHAM INVESTORS

The Graham Investors seek to intervene under Rule 24(a)(2) for the limited purpose of filing a motion to oppose the Court's approval of the Receiver's interim reports. Dkt. No. 1381-1 at 1-2. Specifically, the Graham Investors seek to intervene to argue that the interim reports fail to comply with the SEC's SFAR requirements. *Id.* at 1.

There are four requirements for intervention as of right: (1) timeliness, (2) an interest relating to property or transaction that is the subject of the action, (3) disposition if the action may impair or impede the movant's ability to protect the interest, and (4) the movant's interest is not adequately represented by existing parties. *Northwest Forest Res. Council v. Glickman*, 82 F.3d 825, 836 (9th Cir. 1996). Failure to satisfy even one of these elements prevents the applicant from intervening as of right. *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997).

The Graham Investors argue that their motion is timely because they brought it just 14 days after the Receiver filed the three interim reports. Dkt. No. 1381-1 at 3-4. This argument, however, is overly simplistic given the tenor of the Court's previous orders denying investor motions to intervene. The Graham Investors want a Court order

directing the Receiver to clarify the identified payors and sources of income listed on Line 8 of the SFAR. *Id.* at Exhibit A. In so doing, they are essentially seeking the right to intervene in order to audit the receivership and to examine the receivership records. The Court already concluded, in its May 18, 2016 Order denying the Dillon Investors and Aguirre Investors' motions to intervene, that such attempts to audit the receivership are untimely. *See* Dkt. No. 1296 at 3. Accordingly, the Graham Investors' motion to intervene is **DENIED**.

### III.  COUNSEL FOR SCHOOLER

Dyson moves under Rule 25 to notice the death of his client, Louis Schooler. Dkt. No. 1384 at 2. The motion recounts the circumstances of Schooler's alleged death in Tahiti aboard the 42-foot boat Entertainer and includes the death certificate issued by the Tahitian authorities. *Id.* at 5-6. In light of the news of his client's death, Dyson also moves to be relieved as counsel. *Id.* at 6.

The SEC does not oppose Dyson being relieved as counsel in this matter. Dkt. No. 1398 at 2. The SEC does, however, object to the suggestion of Schooler's death because the circumstances of Schooler's death are still under investigation and because the copy of the Tahitian death certificate, in its view, appears to be provisional. *Id.* at 2. Because of this uncertainty and the fact that there is still an outstanding judgment against Schooler for $145 million, the SEC argues that it "is not prepared to concede that Mr. Schooler's death has been established."[7] *Id.*

Accordingly, given the suspicious circumstances of Schooler's death and the questionable authenticity of the Tahitian death certificate, the Court **DENIES** Dyson's

---

[7] In response to the SEC's contention that the Tahitian death certificate is provisional, Dyson states that "[i]t is not believed that this death certificate is provisional, in that Linda Schooler, Mr. Schooler's widow, testified in a SEC proceeding . . . that she has requested a life insurance payment." *Id.* at 2. This argument, however, is toothless because the fact that Schooler's wife is seeking life insurance payouts does not make it any more likely that Schooler has actually died.

Rule 25 motion to notice the death of Schooler and, because the Court finds that Schooler's death is uncertain, the Court also **DENIES** Dyson's motion to be relieved as counsel.

### CONCLUSION

The Court is concerned with the repetitive nature of the lawyering presented by the Ardizzone Investors and Graham Investors. Both groups of investors have made arguments to the Court that have already been considered and rejected in previous orders. Filings and papers that seek to relitigate matters already passed upon by the Court do not persuade the Court any more now than they did when first assessed. To the extent that the investors disagree with the Court's prior rulings, those have been appealed and will be reviewed by the Ninth Circuit. Ultimately, the repetitive and lackluster attempts to influence the Court to revisit its previous orders only serve to tax the financial integrity of the receivership estate, which must spend money to oppose and respond to such attempts.

Dated: November 29, 2016

Hon. Gonzalo P. Curiel
United States District Judge