UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>LOUIS V. SCHOOLER and FIRST FINANCIAL PLANNING CORPORATION, dba Western Financial Planning Corporation,<br><br>　　　　　　　　　　　Defendants. | Case No.: 3:12-cv-2164-GPC-JMA<br><br>**(1) GRANTING RECEIVER'S SIXTEENTH INTERIM FEE APPLICATION;**<br><br>**[ECF No. 1385]**<br><br>**(2) GRANTING ALLEN MATKINS' SIXTEENTH INTERIM FEE APPLICATION;**<br><br>**[ECF No. 1386]**<br><br>**(3) APPROVING RECEIVER'S SECOND REVISED FOURTEENTH INTERIM REPORT;**<br><br>**[ECF No. 1376]**<br><br>**(4) APPROVING RECEIVER'S FIFTEENTH AND SIXTEENTH INTERIM REPORTS;**<br><br>**[ECF No. 1377, 1378]**<br><br>**(5) VACATING HEARING DATE** |

Before the Court are the sixteenth interim fee applications of the Court-appointed receiver Thomas C. Hebrank (the "Receiver") and counsel to receiver, Allen Matkins Leck Gamble Mallory & Natsis LLP ("Allen Matkins"):

1. Sixteenth Interim Application for Approval and Payment of Fees and Costs to Thomas C. Hebrank, as Receiver ("Receiver's Sixteenth Interim Fee Application"), ECF No. 1385;

2. Sixteenth Interim Fee Application of Allen Matkins Leck Gamble Mallory & Natsis LLP, Counsel to Receiver ("Allen Matkins' Sixteenth Interim Fee Application"), ECF No. 1386.

Receiver has also submitted for Court approval, a Second Revised Fourteenth Interim Report (ECF No. 1376), as required by the Court's September 14, 2016 Order (ECF No. 1369), a Revised Fifteenth Interim Report (ECF No. 1377), and a Revised Sixteenth Interim Report (ECF No. 1378). Neither the Plaintiff Securities and Exchange Commission (the "SEC") nor Defendants have filed any response to the fee applications or the status reports with the Court.

# BACKGROUND

**A. Receiver**

In the Sixteenth Interim Fee Application, Thomas C. Hebrank, the Receiver, asserts that he incurred $154,674.00 in fees and $1,693.44 in costs for the application period covering April 1, 2016 through June 30, 2016 ("Sixteenth Application Period"). ECF No. 1385 at 2.[1] The breakdown of the fees amassed is as follows:

////
////
////
////

---

[1] Page numbers for CM/ECF documents follow the pagination generated by CM/ECF.

| Category | Total |
|---|---|
| General Receivership | $11,119.50 |
| Asset Investigation & Recovery | $0.00 |
| Reporting | $24,095.25 |
| Operations & Asset Sales | $107,883.00 |
| Claims & Distributions | $0.00 |
| Legal Matters & Pending Litigation | $11,576.25 |
| **Total** | **$154,674.00** |

*Id.* at 3–5.  Receiver now seeks payment of 80% of the fees he incurred, amounting to $123,739.20, and 100% of the costs, which account for postage, website maintenance, and copies.  *Id.* at 2 & Exhibit C.

**B. Allen Matkins**

In the Sixteenth Interim Fee Application, Allen Matkins, counsel for receiver, asserts that it incurred $169,132.95 in fees and $672.86 in costs for the application period covering April 1, 2016 through June 30, 2016, same as the Sixteenth Application Period identified previously.  ECF No. 1386 at 2.  The breakdown of the fees amassed is as follows:

/ / / /
/ / / /
/ / / /
/ / / /
/ / / /
/ / / /
/ / / /

| Category | Total |
|---|---|
| General Receivership | $42,675.75 |
| Reporting | $24,834.60 |
| Operations & Asset Sales | $45,477.90 |
| Claims & Distributions | $54,297.90 |
| Third Party Recoveries | $97.20 |
| Employment/Fees | $1,749.60 |
| **Total** | **$169,132.95** |

*Id.* Allen Matkins now seeks payment of 80% of the fees incurred, amounting to $135,306.36, and 100% of the costs, accounting for document searches, recordation fees, filing fees, service of process, and court messenger fees. *Id.* at 2 & Exhibit A at 24.

## LEGAL STANDARD

"[I]f a receiver reasonably and diligently discharges his duties, he is entitled to fair compensation for his efforts." *Sec. & Exch. Comm'n v. Elliott*, 953 F.2d 1560, 1577 (11th Cir. 1992). "The court appointing [a] receiver has full power to fix the compensation of such receiver and the compensation of the receiver's attorney or attorneys." *Drilling & Exploration Corp. v. Webster*, 69 F.2d 416, 418 (9th Cir. 1934). A receiver's fees must be reasonable. *See In re San Vicente Med. Partners Ltd.*, 962 F.2d 1402, 1409 (9th Cir. 1992).

As set forth in the Court's prior fee orders, *see, e.g.*, ECF No. 1167, the Court will assess the reasonableness of the requested fees using the factors enumerated in *Sec. & Exch. Comm'n v. Fifth Avenue Coach Lines*, 364 F. Supp. 1220, 1222 (S.D.N.Y. 1973) and *In re Alpha Telcom, Inc.*, 2006 WL 3085616, at *2–3 (D. Or. Oct. 27, 2006). Those factors include: (1) the complexity of the receiver's tasks; (2) the fair value of the

receiver's time, labor, and skill measured by conservative business standards; (3) the quality of the work performed, including the results obtained and the benefit to the receivership estate; (4) the burden the receivership estate may safely be able to bear; and (5) the Commission's opposition or acquiescence. *See* 364 F. Supp. at 1222; 2006 WL 3085616 at *2–3.

# DISCUSSION

## I. Interim Fee Applications

### A. Complexity of Tasks

#### 1. Receiver

The Court finds that the tasks performed by the Receiver during the Sixteenth Application Period were significantly complex. The Receiver undertook the following tasks during the period:

- handling general administrative matters, including reviewing correspondence directed at the receivership entities;
- administering the bank accounts of the receivership entities;
- reviewing and approving expenditures;
- maintaining and updating the Receiver's website;
- responding to investor inquiries, including tax issues, Form K-1s, Court orders, and misinformation disseminated by investors;
- appearing at Court hearings and preparing reports for the Court: including, interim reports, an opposition to an investors' motion for accounting, the Receiver's proposal for the modified orderly sale process, and proposed sale filings;
- managing and overseeing the operations of Western and the operations and real properties of the General Partnerships' ("GPs");
- performing accounting functions for the receivership entities, including paying expenses and clearing checks;
- managing and overseeing tax reporting for the receivership entities;

1  - marketing the receivership properties for sale, obtaining listing agreements,
2    analyzing purchase offers received, negotiating, and completing closings;
3  - implementing the Court's Order: authorizing the Receiver to conduct an orderly
4    sale of the GP properties, approving the plan for distributing receivership assets,
5    and approving procedure for the administration of investor claims;
6  - responding to requests for documents, information, and filings by investors'
7    counsel; and
8  - responding to filings regarding the GP orderly sale process, investor oppositions,
9    and Xpera report.
10 ECF No. 1385 at 3–5.

### 2. Allen Matkins

The Court finds that the tasks performed by Allen Matkins, counsel for Receiver, during the Sixteenth Application Period were significantly complex. Counsel undertook the following tasks during this period:

- addressing the motions to intervene filed by GP investors, including conducting legal and factual research and preparing the Receiver's opposition briefs;
- assisting the Receiver in addressing the investors' appeal and motion for stay pending appeal, culminating in the filing of a motion to dismiss an appeal with the Ninth Circuit Court of Appeals; contacting counsel for the SEC regarding investors' stay pending appeal;
- preparing the Receiver's opposition to the investors' motion for stay pending appeal, directed at the district court, filed June 21, 2016;
- communicating with county and taxing authorities regarding the GP properties;
- addressing inquiries directed at property in Washoe County, Nevada, owned by Defendant;
- working to prepare the Receiver's proposal, exhibits, and supplemental proposal for modified orderly sale of the receivership estate;

- assisting the Receiver with preparing the Fourteenth and Fifteenth Interim Reports;
- reviewing and advising the Receiver regarding objections to the modified orderly sale process and interim reports;
- providing legal guidance to the Receiver regarding the ongoing operations of Western and the GPs, including the orderly sale process, proposed sales of GP properties, easement and condemnation issues, property negotiations, and issues relating to property taxes and assessments;
- advising the Receiver regarding responding to requests and filings of investor-interveners;
- assisting the Receiver with filing an *ex parte* application for approval of the sale of the Jamul Valley property, in accordance with public sale procedures; preparing motions for approval of the sales of the Silver Springs property (Western property) and Reno Vista/Reno View properties;
- responding to letters from the United States Army Corp of Engineers (USACE) regarding sought-after easements over the Tecate properties; conducting negotiations with the USACE;
- preparing the Receiver's responses to investors' oppositions to the Receiver's Court filings and to investors' motions to unseal Receiver filings;
- advising the Receiver regarding discounted payoff of certain mortgages, preparing reconveyance documents to remove liens from GP properties, addressing special assessment district penalties;
- reviewing and analyzing the Xpera Report in order to assist Receiver in responding to investors' objections;
- attending Court hearings;
- responding to the investors' motions for accounting and audits of the receivership estates; responding to requests from investors regarding the orderly sale process;

- advising the Receiver regarding the implementation of the Court-approved modified orderly sale process;
- collecting the outstanding judgment against LinMar III, including reviewing post-judgment receiver's reports; and
- preparing the Receiver's fee applications.

ECF No. 1386 at 3–10.

### B. Fair Value of Time, Labor, and Skill

The Receiver billed his time at $247.50 per hour and the time of those working for him at $180.00 per hour. ECF No. 1385, Exhibit B at 32. Allen Matkins billed their time at $229.50 – $670.50 per hour, with the overwhelming majority of work being billed at $486.00 per hour. ECF No. 1386, Exhibit A at 26, 30, 45, 56, 59. These rates reflect a ten percent discount from the Receiver's and Allen Matkins' ordinary rates. ECF No. 1385 at 2; ECF No. 1386 at 2. The Court continues to find, as it has in previous fee orders, that the rates charged by the Receiver and Allen Matkins are comparable to rates charged in this geographic area and, therefore, represent a fair value of the time, labor, and skill provided.

Rates aside, the Court is mindful of the fact that the compensation sought by the Receiver, and Allen Matkins in particular, during this application period is on the higher end of amounts previously sought. Here, Allen Matkins states that they have incurred $169,805.81 in fees. By comparison, Allen Matkins incurred $73,707.75 in fees during the fifth application period and $100,615.05 in fees during the fifteenth application period. *See* Allen Matkins' Fifteenth Interim Fee Application, ECF No. 1330; Allen Matkins' Fifth Interim Fee Application, ECF No. 526. For his work, the Receiver states that he has incurred $154,674.00 in fees, here. By contrast, the Receiver incurred $106,015.50 in fees during the fifth application period and $153,893.25 — a comparable, but still smaller, number — during the fifteenth application period. Receiver's Fifth

Interim Fee and Cost Application, ECF No. 525; Receiver's Fifteenth Interim Fee and Cost Application, ECF No. 1329.

The Court, however, finds that this rise in fees, especially as to counsel for Receiver, is reasonable given the unusually high levels of receivership activity occurring between April 1, 2016 and June 30, 2016. During that time period, various motions filed by investor-interveners — including two motions to vacate (ECF Nos. 1121 & 1230), two motions to unseal documents (ECF No. 1222 & 1228), two motions for accounting (ECF No. 1223 & 1258), a motion to stay (ECF No. 1316) and two separate motions to intervene (ECF No. 1227 & 1229) — and by the Receiver — including the extensive responsive briefing to the Receiver's motion for authority to conduct an orderly sale, the motions for approval to sell the Reno Vista, Reno View (ECF No. 1285), Silver Springs (ECF No. 1302), and Jamul Valley (ECF No. 1310) properties, among others — produced over 100 docket entries (ECF Nos. 1221 through 1325) in just three months. By contrast, the preceding three months, produced just 54 docket entries (ECF Nos. 1166-1220), and the three months following, produced 55 (ECF Nos. 1325-1380). As such, the Court is satisfied that the increased fees for this Sixteenth Application Period are warranted by the increased levels of activity surrounding the Receivership during the relevant application period.

**C. Quality of Work Performed**

The Court finds that the quality of work performed by the Receiver and Allen Matkins to be above average. As the Court mentioned in its January 14, 2016 order granting the Thirteenth Interim Fee Application (ECF No. 1167) and its September 13, 2016 order granting the Fourteenth and Fifteenth Interim Fee Applications (ECF No. 1369), the Receiver and his counsel have kept the receivership entities afloat despite the fact that Western's main source of income — that is, selling GP interests — had ceased prior to this litigation. They have addressed Western's cash shortage, reduced Western's operating expenses, and taken appropriate action to protect the receivership assets from

9

3:12-cv-2164-GPC-JMA

third parties. The Receiver and his counsel have also been proactive in devising and implementing a plan to maximize the value of the receivership assets — that plan being the modified orderly sale process — for the benefit of all investors. The Receiver and his counsel have, moreover, complied with the Court's orders and worked diligently to timely file all other motions with the Court.

### D. Receivership Estate's Ability to Bear Burden of Fees

On August 30, 2016, the Court approved the Receiver's Modified Orderly Sale Process (ECF No. 1359) and the use of the One Pot approach to distribute receivership assets (ECF No. 1304 at 31). These actions were taken for the dual purpose of increasing the value of the receivership estate by selling GP properties and lowering administrative costs. ECF No. 1304 at 30. On August 30, 2016 the Court approved the sale of the Jamul Valley Property (ECF No. 1361 at 2), the Reno Vista and Reno View Properties (ECF No. 1360 at 2), and the property known as Silver Springs So. (ECF No. 1362 at 2). Further, pursuant to the One Pot approach, Receiver has since pooled the assets of the Receivership Entities thereby "creating a common pool of receivership estate cash from which mortgages, property taxes, and other operating expenses have been and will continue to be paid." ECF No. 1327 at 7. Given the increase in the receivership's cash balance as evidenced by the sale of the above-mentioned properties and the decrease in administrative costs as evidenced by the implementation of a common pool of receivership estate cash, the Court finds that the receivership estate has sufficient ability to bear the instant fee requests.

### E. Commission's Opposition or Acquiescence

The SEC does not oppose any of the proposed fees or costs submitted by the Receiver or Allen Matkins. ECF No. 1385 at 8; ECF No. 1386 at 13.

/ / / /

/ / / /

## II. Interim Reports

### A. Compliance with Standardized Fund Accounting Requirements (SFAR)

In the Court's September 14, 2016 Order, the Court directed the Receiver to resubmit the Revised Fourteenth Interim Status Report, the Fifteenth Interim Status Report, and the Sixteenth Interim Status Report and resubmit them with revised SFAR reports. ECF No. 1369 at 16. The Court indicated that the revised SFAR reports should include the source of accounting in Line 8 "Miscellaneous – Other*" of the respective SFARs attached to those reports. *Id.* The Second Revised Fourteenth Interim Report (ECF No. 1376), Revised Fifteenth Interim Report (ECF No. 1377), and Revised Sixteenth Interim Report (ECF No. 1378) submitted by the Receiver have complied with the Court's request, as each provides information regarding the source of income in the "miscellaneous" column. Accordingly, the Court **APPROVES** all three revised interim reports.

## CONCLUSION

Considering the above five factors taken together, and considering that "[i]nterim fees are generally allowed at less than the full amount," *Alpha Telcom*, 2006 WL 3085616, at *2–3, the Court awards fees and costs as set forth in the following table:

| Applicant | Fees Allowed | % of Fees Incurred[2] | Costs Allowed | % of Costs Requested |
|---|---|---|---|---|
| Receiver | $123,739.20 | 80 | $1,693.44 | 100 |
| Counsel | $135,306.36 | 80 | $672.86 | 100 |

/ / / /

/ / / /

/ / / /

---

[2] The Court includes the percentage of fees *incurred* rather than a percentage of the fees requested, given that the Receiver and Allen Matkins request only a percentage of their actual fees.

# ORDER

After a review of the parties' submissions, the record in this matter, and the applicable law, and for the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. The Receiver's Sixteenth Interim Fee Application, ECF No. 1385, is **GRANTED**;
2. Allen Matkins' Sixteenth Interim Fee Application, ECF No. 1386, is **GRANTED**;
3. The Receiver's Second Revised Fourteenth Interim Report, ECF No. 1376, is **APPROVED.**
4. The Receiver's Revised Fifteenth Interim Report, ECF No. 1377, and Revised Sixteenth Interim Report, ECF No. 178, are **APPROVED**.
5. The hearing set for **December 16, 2016**, is **VACATED**.

**IT IS SO ORDERED**.

Dated: December 7, 2016

Hon. Gonzalo P. Curiel
United States District Judge