UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                                      Plaintiff,<br>v.<br>LOUIS V. SCHOOLER and FIRST FINANCIAL PLANNING CORPORATION, dba Western Financial Planning Corporation,<br><br>                                      Defendants. | **Case No.:  3:12-cv-2164-GPC-JMA**<br><br>**(1) GRANTING RECEIVER'S SEVENTEENTH INTERIM FEE APPLICATION;**<br><br>**[ECF No. 1433]**<br><br>**(2) DENYING ALLEN MATKINS' SEVENTEENTH INTERIM FEE APPLICATION;**<br><br>**[ECF No. 1434]**<br><br>**(3) APPROVING RECEIVER'S SEVENTEENTH STATUS REPORT;**<br><br>**[ECF No. 1422]**<br><br>**(5) VACATING HEARING DATE** |

Before the Court are the seventeenth interim fee applications of the Court-appointed receiver Thomas C. Hebrank (the "Receiver") and Counsel to Receiver, Allen Matkins Leck Gamble Mallory & Natsis LLP ("Allen Matkins"):

1. Seventeenth Interim Application for Approval and Payment of Fees and Costs to Thomas C. Hebrank, as Receiver ("Receiver's Seventeenth Interim Fee Application"), ECF No. 1433;

1

2. Seventeenth Interim Fee Application of Allen Matkins Leck Gamble Mallory & Natsis LLP, Counsel to Receiver ("Allen Matkins' Seventeenth Interim Fee Application"), ECF No. 1434.

Receiver has also submitted for Court approval, a Seventeenth Interim Report. ECF No. 1422. Neither the Plaintiff, the Securities and Exchange Commission (the "SEC"), nor Defendants have filed any response to the fee applications or the status report.

# BACKGROUND

## A. Receiver

In the Seventeenth Interim Fee Application, Thomas C. Hebrank, the Receiver, asserts that he incurred $107,113.50 in fees and $1,713.69 in costs for the application period covering July 1, 2016 through September 30, 2016 ("Seventeenth Application Period"). ECF No. 1433 at 2.[1] The breakdown of the fees amassed is as follows:

| Category | Total |
| --- | --- |
| General Receivership | $6,831.00 |
| Asset Investigation & Recovery | $0.00 |
| Reporting | $5,928.75 |
| Operations & Asset Sales | $86,600.25 |
| Claims & Distributions | $846.00 |
| Legal Matters & Pending Litigation | $6,907.50 |
| **Total** | **$107,113.50** |

---

[1] Page numbers for CM/ECF documents follow the pagination generated by CM/ECF.

*Id.* at 3–6.  Receiver now seeks payment of 80% of the fees he incurred, amounting to $85,690.80, and 100% of the costs, which account for postage, mailings, website maintenance, and copies.  *Id.* at 2 & Exhibit C.

### B. Allen Matkins

In the Seventeenth Interim Fee Application, Allen Matkins ("Counsel to Receiver"), asserts that it incurred $99,325.35 in fees and $503.96 in costs for the application period covering July 1, 2016 through September 30, 2016, same as the Seventeenth Application Period identified previously.  ECF No. 1434 at 2.  The breakdown of the fees amassed is as follows:

| Category | Total |
| --- | --- |
| General Receivership | $51,444.00 |
| Reporting | $4,450.50 |
| Operations & Asset Sales | $38,459.25 |
| Claims & Distributions | $2,177.10 |
| Third Party Recoveries | $362.25 |
| Employment/Fees | $2,432.25 |
| **Total** | **$99,325.35** |

*Id.*  Allen Matkins now seeks payment of 80% of the fees incurred, amounting to $79,460.28, and 100% of the costs, accounting for document searches, recordation fees, filing fees, service of process, and court messenger fees.  *Id.* at 2 & Exhibit A at 26-27.

### LEGAL STANDARD

"[I]f a receiver reasonably and diligently discharges his duties, he is entitled to fair compensation for his efforts."  *Sec. & Exch. Comm'n v. Elliott*, 953 F.2d 1560, 1577 (11th Cir. 1992).  "The court appointing [a] receiver has full power to fix the

compensation of such receiver and the compensation of the receiver's attorney or attorneys." *Drilling & Exploration Corp. v. Webster*, 69 F.2d 416, 418 (9th Cir. 1934). A receiver's fees must be reasonable. *See In re San Vicente Med. Partners Ltd.*, 962 F.2d 1402, 1409 (9th Cir. 1992).

As set forth in the Court's prior fee orders, *see, e.g.*, ECF No. 1167, the Court will assess the reasonableness of the requested fees using the factors enumerated in *Sec. & Exch. Comm'n v. Fifth Avenue Coach Lines*, 364 F. Supp. 1220, 1222 (S.D.N.Y. 1973) and *In re Alpha Telcom, Inc.*, 2006 WL 3085616, at *2–3 (D. Or. Oct. 27, 2006). Those factors include: (1) the complexity of the receiver's tasks; (2) the fair value of the receiver's time, labor, and skill measured by conservative business standards; (3) the quality of the work performed, including the results obtained and the benefit to the receivership estate; (4) the burden the receivership estate may safely be able to bear; and (5) the Commission's opposition or acquiescence. *See* 364 F. Supp. at 1222; 2006 WL 3085616 at *2–3.

## DISCUSSION

### I. Interim Fee Applications

#### A. Complexity of Tasks

##### 1. Receiver

The Court finds that the tasks performed by the Receiver during the Seventeenth Application Period were moderately complex. The Receiver undertook the following tasks during the period:

- handling general administrative matters, including reviewing correspondence directed at the Receivership entities;
- administering the bank accounts of the Receivership entities;
- reviewing and approving expenditures;
- maintaining and updating the Receiver's website;
- responding to investor inquiries;

- appearing at Court hearings and preparing reports for the Court: including, (1) Receiver's Sixteenth Interim Report, filed on August 16, 2016; (2) revised versions of Receiver's Fourteenth, Fifteenth, and Sixteenth Interim Reports; (3) Motion for Authority to Engage CBRE as Consultants filed July 22, 2016; (4) filings regarding sale of properties; and (5) responses to investor-intervener filings;
- managing and overseeing the General Partnerships' (GP) operations and real properties;
- managing the oversight of Western's operations;
- performing accounting functions for the Receivership entities;
- managing and overseeing tax reporting for the Receivership entities;
- obtaining listing agreements, marketing the Receivership properties for sale, analyzing purchase offers received, negotiating, and completing closings;
- updating monthly financial and bank account activities for the GPs;
- selecting and working with CBRE to evaluate the recommendations laid out in the Xpera Report;
- refunding operating expense billings to investors, renegotiating loans, contesting tax and other delinquencies;
- managing property listings and responding to sales activity on the various Receivership properties, including Jamul Valley, Silver Springs, Reno Vista-Reno View, Yuma II, Tecate, LV Kade, and Washoe 3;
- preparing for eventual investor distributions relating to Court's May 25, 2016 Order for Orderly Sale of GP properties;
- responding to request for documents, information, and filings by investor-interveners;
- implementing the Court's May 25, 2016 Order authorizing the Receiver to conduct an orderly sale of the GP properties, approving the plan for distributing

Receivership assets, and approving procedure for the administration of investor claims;
- responding to requests for documents, information, and filings by investors' counsel; and
- responding to filings regarding the GP orderly sale process, investor oppositions, and Xpera report.

ECF No. 1433 at 3–6.

### 2. Allen Matkins

The Court finds that the tasks performed by Allen Matkins during the Seventeenth Application Period were moderately complex. Counsel to Receiver undertook the following tasks during this period:

- Assisting the Receiver in preparing a[n] (1) motion to dismiss, and reply brief, to the Graham Investors' appeal of the Court's May 25, 2016 order approving orderly sale of the GP properties; (2) opposition and declaration responding to the Ardizzone Investors' motion to intervene; (3) motion to dismiss additional appeals filed by the Graham Investors; and (4) opposition to the Ardizzone Investors' motion for stay pending appeal;
- Providing support to Receiver in responding to investor inquiries, analyzing legal strategies for responding to Graham Investors' appeal of the Order approving sale of the Jamul Valley property (which has prevented the tentative buyer from obtaining a title insurance policy and the sale from closing), and filing a motion to expedite the sale order of the Jamul Valley property;
- Addressing tax issues raised by the Final Judgment issued in January 2016 and May 2016, including, whether the Receivership should file tax returns as a Qualified Settlement Fund;
- Responding to the lawsuit filed against Western by Winget Spadafora & Schwartzberg;

- Communicating with Defense counsel concerning circumstances of Defendant Schooler's death and pending appeal;
- Preparing Receiver's Sixteenth Interim Status Report and assisting Receiver in filing revised status reports as requested by the Court;
- Providing legal support to Receiver's ongoing operations of Western and the GPs on issues relating to the orderly sale process, the proposed sale of the Receivership properties, easement and condemnation, property taxes and assessments;
- Advising Receiver on investor claims and procedures for the administration of investor claims;
- Responding to investor inquiries and making updates to the Receivership website; and
- Enforcing collection of outstanding judgment against LinMar III.

ECF No. 1434 at 3–9

**B. Fair Value of Time, Labor, and Skill**

The Receiver billed his time at $247.50 per hour and the time of those working for him at $180.00 per hour. ECF No. 1433, Exhibit A at 27. This rate reflects a ten percent discount from the Receiver's ordinary rates. The Court continues to find, as it has in previous fee orders, that the rates charged by the Receiver are comparable to rates charged in this geographic area and, therefore, represent a fair value of the time, labor, and skill provided.

Allen Matkins billed their time at $256.50 – $702.00 per hour, with the overwhelming majority of work being billed at $517.00 per hour. ECF No. 1434, Exhibit A. As is the case with Receiver, these rates incorporate a ten percent discount from Allen Matkins' ordinary rates. ECF No. 1434 at 2. These rates also reflect an increase in the hourly rates of the attorneys working on the Receivership. The overwhelming majority of the work from the Fourteenth and Fifteenth Application Periods was billed at an hourly rate of $486.00. *See* Dkt. No. 1328, Exhibit A; Dkt. No. 1330, Exhibit A. The difference

per hour between counsel who previously billed at $486.00, and who now bills at $517.00, is $31.50, representing a 6.5% increase. Counsel to Receiver, however, has provided no explanation for this increase in rates and failed to notify the Court of these billing changes. Without knowing the reason for the rate hike, or how this new rate compares to rates charged by similar professionals, the Court cannot conclude that the increased rates represent the fair value of the time, labor, and skill provided as measured by conservative business standards. Accordingly, the Court concludes that Counsel to Receiver has failed to demonstrate that their sought-for compensation satisfies this factor.

### C. Quality of Work Performed

The Court finds that the quality of work performed by the Receiver and Allen Matkins to be above average. The Receivership has dutifully handled a number of legal issues that emerged during the Seventeenth Application Period.

One, the Court finds that the Receiver and Allen Matkins have worked diligently to carry out the mandates of the May 25, 2016 Order[2], including the roll out of the orderly sale process of the GP properties. On July 22, 2016, the Receiver filed a motion to engage CBRE as a consultant in order to evaluate the Receivership properties as requested by the Court. ECF No. 1341. The Receiver later defended such motion against an opposition submitted by a putative intervener. ECF No. 1355. By August 30, 2016, the Receiver had teed up, for approval by the Court, the sale of the Reno Vista and the Reno View Properties along with the Jamul Valley Property. ECF No. 1361 & 1362.

Two, the Receiver, with the benefit of counsel, has promptly responded to filings initiated by investors who sought to intervene to oppose the Court-sanctioned orderly sale process. On August 9, 2016, a group of investors sought to intervene to halt the progression of the Receivership. *See* ECF No. 1348. The Receiver filed a timely reply

---

[2] On May 25, 2016, the Court approved in part the Receiver's request to (1) conduct an orderly sale of the general partnership properties, (2) distribute receivership assets, and (3) approve procedures for the administration of investor claims. ECF No. 1304.

on August 23, 2016. On September 13, 2016, another group of investors filed a motion to intervene and to stay the administration of the receivership estate pending appeal. ECF No. 1368. Work performed by the Receiver and Allen Matkins during the Seventeenth Application Period contributed to the Receiver's prompt response to that proposed intervention, filed on October 11, 2016. ECF No. 1383.

Three, the Receiver has fulfilled his duty to the Court to keep it informed of the Receivership's activities and funds. For example, on September 20, 2016, it submitted three revised interim status reports in accordance with the Court's order and in compliance with SEC regulations. *See* ECF Nos. 1376, 1377 & 1378.

In sum, as the Court has mentioned in previous orders granting the Receiver's and Counsel to Receiver's fee applications, *see, e.g.*, ECF Nos. 1167 & 1369, the Receiver and Allen Matkins have been proactive in devising and implementing a plan to maximize the value of the Receivership assets — that plan being the Modified Orderly Sale Process — for the benefit of all investors. The Receiver and Allen Matkins have, moreover, complied with the Court's orders and worked diligently to timely file all other motions with the Court. As such, the Court is satisfied with the quality of work performed by both professionals.

**D. Receivership Estate's Ability to Bear Burden of Fees**

On August 30, 2016, the Court approved the Receiver's Modified Orderly Sale Process (ECF No. 1359) and the use of the One Pot approach to distribute receivership assets (ECF No. 1304 at 31). These actions were taken for the dual purpose of increasing the value of the Receivership estate by selling GP properties and lowering administrative costs. ECF No. 1304 at 30. Since receiving approval of the Modified Orderly Sale Process, Receiver has begun the process of selling GP assets.

On August 30, 2016, the Court approved the sale of the Jamul Valley Property (ECF No. 1361 at 2), the Reno Vista and Reno View Properties (ECF No. 1360 at 2), and the property known as Silver Springs So. (ECF No. 1362 at 2).

On December 6, 2016, the Court granted Receiver authority to engage real estate brokers for the Yuma I, Yuma II, Yuma III, and Minden properties. ECF No. 1416.

On December 12, 2016 the Court approved the Receiver's Report and Recommendations regarding the Xpera Report and Recommendations, which addresses the strategy and timeline for selling the Receivership assets. ECF No. 1423.

There are also, before the Court, three pending motions for the sale of additional GP properties: (1) Motion for Approval of Sale of Honey Springs Property (ECF No. 1430); (2) Motion for Approval of Sale of Reno Partners' Property (ECF No. 1443); and (3) Motion for Approval of Freetrade/Suntec/Via 188 Properties (ECF No. 1446).

The sales and future sales of these properties have maximized, and will continue to maximize, the value of the GP properties for the benefit of all investors. Such sales will also increase the Receivership's cash balance. Accordingly, the Court finds that the Receivership estate has sufficient ability to bear the instant fee requests.

### E. Commission's Opposition or Acquiescence

The SEC does not oppose any of the proposed fees or costs submitted by the Receiver or Allen Matkins. ECF No. 1433 at 8; ECF No. 1434 at 12-13.

## II. Interim Report

On December 8, 2016, the Receiver filed the Seventeenth Interim Report. ECF No. 1422. The Report provides updates concerning: (1) the Receiver's activities; (2) Western's Assets; (3) issues concerning the GP properties; (4) pending sales of GP properties; (5) investors' appeals of Court orders; (6) engagement of CBRE; and (7) receipts and disbursements, among other issues. *Id.* at 1-11. The Court is satisfied with the level of detail contained in the Seventeenth Interim Report and with the reasonableness of the actions taken by the Receiver during the relevant time period.

/ / / /

/ / / /

/ / / /

# CONCLUSION

Considering the above five factors taken together, and considering that "[i]nterim fees are generally allowed at less than the full amount," *Alpha Telcom*, 2006 WL 3085616, at *2–3, the Court awards fees and costs as set forth in the following table:

| Applicant | Fees Allowed | % of Fees Incurred[3] | Costs Allowed | % of Costs Requested |
|---|---|---|---|---|
| Receiver | $107,113.50 | 80 | $1,713.69 | 100 |
| Counsel | ~~$99,325.35~~ $0.00 | 80 | ~~$503.96~~ $0.00 | 100 |

# ORDER

After a review of the parties' submissions, the record in this matter, and the applicable law, and for the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. The Receiver's Seventeenth Interim Fee Application, ECF No. 1433, is **GRANTED**;
2. Allen Matkins' Seventeenth Interim Fee Application, ECF No. 1434, is **DENIED**. The Court **DIRECTS** Counsel to Receiver to file supplemental briefing addressing the increase in its rates and whether such rates continue to be fair and reasonable in light of prevailing market rates and according to conservative business standards;
3. The Receiver's Seventeenth Interim Report, ECF No. 1422, is **APPROVED.**
4. The hearing set for **March 17, 2016**, is **VACATED**.

Dated: March 14, 2017

Hon. Gonzalo P. Curiel
United States District Judge

---

[3] The Court includes the percentage of fees *incurred* rather than a percentage of the fees requested, given that the Receiver and Allen Matkins request only a percentage of their actual fees.