UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>LOUIS V. SCHOOLER and FIRST FINANCIAL PLANNING CORPORATION d/b/a WESTERN FINANCIAL PLANNING CORPORATION,<br><br>　　　　　　　　　　　　　Defendants. | Case No.: 3:12-CV-02164-GPC-JMA<br><br>**ORDER APPROVING:**<br><br>**SALE OF RENO PARTNERS' PROPERTY**<br><br>**[ECF No. 1443]** |

Before the Court is the Receiver's Motion for Approval of Sale of Reno Partners' Property ("Motion"). ECF No. 1443-1. No opposition was filed. Based upon a review of the moving papers and the applicable law, the Court **GRANTS** the Receiver's motion.

*////*
*////*
*////*

1

# BACKGROUND

## A. The SEC Enforcement Action

On January 21, 2016, the Court granted the SEC's motion for final judgment against Defendant Louis V. Schooler. ECF No. 1170. The SEC had initiated this civil action against Defendant Schooler and Western Financial Planning Corporation ("Western") four years earlier, on account of their practice of defrauding investors into purchasing unregistered securities. *Id.* (citing Second Summary Judgment Order, ECF No. 1081). To carry out the scheme, Defendant Western bought undeveloped real estate, with cash or through financing, and simultaneously formed one or more General Partnerships ("GPs") to own the land. First Summary Judgment Order, ECF No. 1074 at 10. Western then sold General Partnership units to investors and sold the undeveloped real estate to the General Partnerships. *Id.* at 10. In total, Western raised approximately $153 million from almost 3,400 investors through implementing this scheme. *Id.*

## B. The Decline of the General Partnership Assets

In 2013, the Court-appointed Receiver, Thomas Hebrank, engaged licensed appraisers to value the 23 properties owned by the General Partnerships. ECF No. 203 at 2. Those professionals determined that the land was worth $16,328,000 and that the net appraised value (appraised value less outstanding balances on all mortgages) of the properties was $12,860,661. *Id.* The net appraised value represented just 8.41% of the total funds that the general partners had invested in the land. *Id.* The Receiver further estimated that, based on the then-current appraised values of the land, the average GP investor would suffer an 88.40% loss if the GP properties were sold in 2013. *Id.*

Three years later, soon after final judgment was entered, the Receiver moved for authority to conduct an Orderly Sale of the General Partnership Properties ("Orderly Sale"). Motion for Orderly Sale, ECF No. 1181-1. In the Motion, the Receiver indicated that the aggregate value in the GP accounts had been steadily decreasing while litigation was ongoing. *See id.* In September 2012, the Receivership had assets of $6.6 million. *Id.* at 1. By the end of 2015, the assets had dropped to $3.5 million, and the Receiver had

reason to believe that the value of the Receivership would continue to drastically decrease through the end of 2016.[1] This decline, he noted, was due to three main factors: (1) 14 of the 23 properties were not appreciating in value[2]; (2) the properties were not worth enough to cover the costs of the GPs carrying the properties; and (3) low levels of investor contributions to pay GP administrator fees, tax preparation fees, property taxes, property insurance premiums, and notes owed to Western. *See id.* at 1-2. In other words, the Receiver concluded, because the money being spent to hold the GP properties was disproportionately high in relation to the value of the GP's real estate assets, the Receivership was in a steady decline. *Id.*

In order to prevent the value of the Receivership from falling into further decline, the Receiver proposed that the GP properties be sold in accordance with Court-approved orderly sale procedures. *Id.* The Receiver's proposal explained that the best way to maximize the value of all of the GP assets for the benefit of all investors, irrespective of any given investors' direct property interest, was to initiate an orderly sale of the GP properties. *Id.* The Receiver estimated that the Receivership, after conducting sales of the GP properties, Western's properties and asset recovery, would be worth $21,804,826. *Id.* at 16.

**C. The Receiver's Motion for Orderly Sale**

On May 20, 2016, the Court held a hearing on the Receiver's Motion for Orderly Sale, at which time the Court heard from the SEC, Defendant, the Receiver, and the investor-interveners — that is, those investors who were granted permission under Rule 23 to intervene to oppose the Receiver's Motion. *See* ECF No. 1298. A short time

---

[1] The Receiver provided the Court with projections that the Receivership would further decline to $1.8 million by the end of 2016. Indeed, the Receiver's projection has since proved to be accurate. The Eighteenth Interim Status Report submitted by the Receiver indicates that the Receivership's current cash balance is $1,546,447. ECF No. 1441 at 20.

[2] By way of example, the Receiver notes that the value of these 14 properties in 2016, $3,732,815, was about $400,000 less than their value in 2013, $4,137,000. *Id.* at 2.

3

thereafter, on May 25, 2016, the Court approved, in part, the Receiver's Orderly Sale process.[3] ECF No. 1304.

In approving the Orderly Sale, the Court addressed and evaluated the concerns expressed by the Receiver, the SEC, and myriad investors, all of whom held differing positions on whether the Orderly Sale would benefit the Receivership estate. *See generally* ECF Nos. 1181 (Motion for Orderly Sale), 1232 (SEC Response), 1234 (Dillon Investors' Response), 1235 (Graham Investors' Response); *see also, e.g.*, ECF Nos. 1240, 1242, 1244, 1249-1257 (Letters from Investors). The Court also took into consideration the recommendations of the investors' experts, as set forth in the Xpera Report. *See* ECF No. 1304 at 16. The Xpera Report, the Court noted, substantially agreed with the Receiver on how to maximize the value of the Receivership estate and, for the most part, agreed on the appraised value of the various GP properties. *Id.* As such, the Court directed the Receiver, where feasible, to incorporate the recommendations of the Xpera Report into his ultimate Orderly Sale proposal. *Id.* at 19.

On July 22, 2016, the Receiver moved for permission to engage CBRE, a real estate brokerage firm, as a consultant in order to weigh the pros and the cons of the Xpera Report. ECF No. 1341-1. The Court granted the Receiver's motion on August 30, 2016. ECF No. 1359. CBRE presented its findings on the GP properties on October 24, 2016. ECF No. 1419 (filed under seal). On November 22, 2016, the Receiver submitted a report evaluating the Xpera Report recommendations. ECF No. 1405. The Court reviewed the Receiver's report and adopted the recommendations contained therein on December 12, 2016. ECF No. 1423.

/ / / /

/ / / /

---

[3] The Court directed the Receiver to file a Modified Orderly Sale Process that incorporated the public sale process consistent with the requirement of 28 U.S.C. § 2001. ECF No. 1304. The Receiver filed a modified proposal on June 8, 2016 (ECF No. 1309) and the Court approved the modified proposal on August 30, 2016 (ECF No. 1359).

### D. Reno Partners' Property

Throughout this litigation, the Reno Partners' property has been referenced as one of the three Washoe I Properties, along with the Reno View and Reno Vista properties. ECF No. 1443-1 at 2. According to the Receiver, the three properties are made up of seven parcels located on a two-lane mountain road in Washoe County, Nevada. *Id.* at 3.

On January 14, 2016, the Court approved the Receiver to engage a broker to list the three Washoe properties for sale at $88,200. *Id.*; *see also* ECF No. 1168. About eight months later, on August 30, 2016, the Receiver received approval to sell the Reno View and Reno Vista properties for a total purchase price of $75,640. This left the Reno Partners' property as the only remaining property of Washoe I in the Receivership.

The Receiver valued the Reno Partners' property at $50,000 in 2013. ECF No. 1405, Ex. A at 14. By 2015, the Broker Opinion Value (BOV) of the property was $32,250. *Id.* Although the Xpera Report did not value the Reno Partners property standing alone, it did value the property as one of the three Washoe I properties, and the value that Xpera ascribed to all three properties corresponded to the BOV value of the properties.[4]

In January 2017, the Receiver received an offer from James Alford to buy the Reno Partners property for $32,000, its full list price. ECF No. 1443-1 at 3. In accordance with the Court-approved modified Orderly Sale procedures, *see generally* ECF No. 1309, 1359, the Receiver sent notice of the offer to investors, but no response addressing the offer was received. ECF No. 1443-1 at 3. After executing a purchase agreement, the Receiver laid out a timeline for the submission of qualified overbids pursuant to the modified Orderly Sale procedures. *Id.* at 7-9. On March 28, 2017, the Receiver notified

---

[4] The Xpera Report values the Reno Partners' property, along with the Reno View and Reno Vista properties, between $75,546 (low valuation) and $99,720 (high valuation). ECF No. 1405, Ex. A at 14. The Receiver's appraisal of Reno Partners, together with Reno View and Reno Vista, totaled $88,200, placing the Receiver's appraisal within the range proposed by Xpera. *See id.*

the Court that no qualified overbids had been received for the Reno Partners' property. ECF No. 1452.

### E. Conclusion

The Court finds that the purchase price of $32,000 is reasonable in light of the Receiver's 2015 appraisal of the Reno Partners' property and the Xpera Report. With this sale, the entire Washoe I property has been sold for $107,640, which exceeds the highest 2015 Receiver valuation of $88,200 and the highest 2016 Xpera valuation of $99,720. ECF No. 1405, Ex. A at 14. This is welcome news given that the Xpera Report recommended that the Washoe I properties, including the Reno Partners property, "be sold now, as-is" because they were not expected to increase in value. ECF. No. 1234-2 at 95.

The Court is also satisfied that the Receiver has complied with the modified Orderly Sale procedures. Although the Receiver's Notice of Non-receipt of Qualified Overbids states that the Receiver published the sale of the property in the San Diego Union Tribune, ECF No. 1452, the Receiver has informed the Court that the Notice of Non-receipt was incorrect and that the Receiver had, in fact, published the sale in the Reno Gazette Journal, ECF No. 1462. In light of this correction, the Court concludes that the Receiver's notice of the sale adhered to the modified Orderly Sale procedures, which require that notice of the sale be published "in the county, state, or judicial district of the United States *wherein the realty is situated*." 28 U.S.C. § 2002 (emphasis added).

Accordingly, and given that no opposition to the present Motion has been filed and that no qualified overbid was received, the Court **GRANTS** Receiver's motion for approval of sale (ECF No. 1443) and the Receiver's Motion to supplement his sale motion (ECF No. 1462).

/ / / /
/ / / /
/ / / /
/ / / /

## ORDER

The Receiver's Motion for Approval of Sale of Reno Partners' Property and Authority to Pay Broker's Commission ("Motion") of Thomas C. Hebrank ("Receiver"), the Court-appointed receiver for First Financial Planning Corporation d/b/a Western Financial Planning Corporation ("Western"), its subsidiaries and the General Partnerships listed in Schedule 1 to the Preliminary Injunction Order entered on March 13, 2013 (collectively, "Receivership Entities"), having been reviewed and considered by this Court, the Receiver having notified the Court that no qualified overbids were received (ECF No. 1452), and for good cause appearing therefore, the Court finds as follows:

1. The Motion is granted;
2. The sale of the Property known as the Reno Partners' property, as described on Exhibit A in the Receiver's Motion ("Property"), by Thomas C. Hebrank, as receiver for Reno Partners, to James Alford is confirmed and approved;
3. The purchase price of $32,000.00 for the Property is confirmed and approved;
4. The Receiver is immediately authorized to complete the sale transaction, including executing any and all documents as may be necessary and appropriate to do so; and
5. The Receiver is authorized to immediately pay, upon closing of the sale, a commission of 10% of the final purchase price to broker Bradway Properties.

**IT IS SO ORDERED.**

Dated: April 12, 2017

Hon. Gonzalo P. Curiel
United States District Judge