# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>    Plaintiff,<br><br>    v.<br><br>LOUIS V. SCHOOLER and FIRST FINANCIAL PLANNING CORPORATION d/b/a WESTERN FINANCIAL PLANNING CORPORATION,<br><br>    Defendants. | Case No. 3:12-cv-02164-GPC-JMA<br><br>**ORDER DENYING GLEN OAKS ESCROW TO RELEASE DEPOSIT FROM CANCELLED SALE OF FREETRADE PROPERTY TO RECEIVER**<br><br>[ECF No. 1457-1] |

Before the Court is the Receiver's Motion for Order Directing Glen Oaks Escrow to Release Deposit From Cancelled Sale of Freetrade Property to Receiver. ECF No. 1457-1. Upon review of the moving papers and the applicable law, and for the following reasons, the Court **DENIES** the motion.

## BACKGROUND

**A. The SEC Enforcement Action**

On January 21, 2016, the Court granted the SEC's motion for final judgment against Defendant Louis V. Schooler. ECF No. 1170. The SEC had initiated this civil action against Defendant Schooler and Western Financial Planning Corporation

("Western") four years earlier, on account of their practice of defrauding investors into purchasing unregistered securities. *Id.* (citing Second Summary Judgment Order, ECF No. 1081). To carry out the scheme, Defendant Western bought undeveloped real estate, with cash or through financing, and simultaneously formed one or more General Partnerships ("GPs") to own the land. First Summary Judgment Order, ECF No. 1074 at 10. Western then sold General Partnership units to investors and sold the undeveloped real estate to the General Partnerships. *Id.* at 10. In total, Western raised approximately $153 million from almost 3,400 investors through implementing this scheme. *Id.*

**B. The Decline of the General Partnership Assets**

In 2013, the Court-appointed Receiver, Thomas Hebrank, engaged licensed appraisers to value the 23 properties owned by the General Partnerships. ECF No. 203 at 2. Those professionals determined that the land was worth $16,328,000 and that the net appraised value (appraised value less outstanding balances on all mortgages) of the properties was $12,860,661. *Id.* The net appraised value represented just 8.41% of the total funds that the general partners had invested in the land. *Id.* The Receiver further estimated that, based on the then-current appraised values of the land, the average GP investor would suffer an 88.40% loss if the GP properties were sold in 2013. *Id.*

Three years later, soon after final judgment was entered, the Receiver moved for authority to conduct an Orderly Sale of the General Partnership Properties ("Orderly Sale"). Motion for Orderly Sale, ECF No. 1181-1. In the Motion, the Receiver indicated that the aggregate value in the GP accounts had been steadily decreasing while litigation was ongoing. *See id.* In September 2012, the Receivership had assets of $6.6 million. *Id.* at 1. By the end of 2015, the assets had dropped to $3.5 million, and the Receiver had reason to believe that the value of the

Receivership would continue to drastically decrease through the end of 2016.[1] This decline, he noted, was due to three main factors: (1) 14 of the 23 properties were not appreciating in value[2]; (2) the properties were not worth enough to cover the costs of the GPs carrying the properties; and (3) low levels of investor contributions to pay GP administrator fees, tax preparation fees, property taxes, property insurance premiums, and notes owed to Western. *See id.* at 1-2. In other words, the Receiver concluded, because the money being spent to hold the GP properties was disproportionately high in relation to the value of the GP's real estate assets, the Receivership was in a steady decline. *Id.*

In order to prevent the value of the Receivership from falling into further decline, the Receiver proposed that the GP properties be sold in accordance with Court-approved orderly sale procedures. *Id.* The Receiver's proposal explained that the best way to maximize the value of all of the GP assets for the benefit of all investors, irrespective of any given investors' direct property interest, was to initiate an orderly sale of the GP properties. *Id.* The Receiver estimated that the Receivership, after conducting sales of the GP properties, Western's properties and asset recovery, would be worth $21,804,826. *Id.* at 16.

**C. The Receiver's Motion for Orderly Sale**

On May 20, 2016, the Court held a hearing on the Receiver's Motion for Orderly Sale, at which time the Court heard from the SEC, Defendant, the Receiver, and the investor-interveners — that is, those investors who were granted permission under Rule 23 to intervene to oppose the Receiver's Motion. *See* ECF No. 1298. A

---

[1] The Receiver provided the Court with projections that the Receivership would further decline to $1.8 million by the end of 2016. Indeed, the Receiver's projection has since proved to be accurate. The Eighteenth Interim Status Report submitted by the Receiver indicates that the Receivership's current cash balance is $1,546,447. ECF No. 1441 at 20.

[2] By way of example, the Receiver notes that the value of these 14 properties in 2016, $3,732,815, was about $400,000 less than their value in 2013, $4,137,000. *Id.* at 2.

short time thereafter, on May 25, 2016, the Court approved, in part, the Receiver's Orderly Sale process.³ ECF No. 1304.

### D. Freetrade Property & Cancelled Sale

On March 10, 2017, the Receiver filed a Motion for Approval of Sale of Freetrade/Suntec/Via 188 Property and Authority to Pay Broker's Commission. ECF No. 1446-1. In it, the Receiver indicated that he had received an offer to purchase the Freetrade Property for $250,000 from Gerardo Aceves ("Buyer"). *Id.* at 3. While the property's list price was $260,000, the Receiver ultimately accepted the offer after Buyer made it clear that $250,000 was his "best and final offer." *Id.*

Thereafter, the Receiver and Buyer entered into a Vacant Land Purchase Agreement and Joint Escrow Instructions and an Addendum to Land Purchase Agreement ("Purchase Agreement"). ECF No. 1457-1 at 2. Per the Purchase Agreement, the Buyer deposited $5,000 into escrow. *Id.*

On March 3, 2017, Buyer removed all contingencies. According to Receiver, once the Buyer did so, he surrendered his right to recover his deposit unless the Court did not approve the sale. *Id.*

On March 17, 2017, Buyer cancelled the sale before the Court could review or approve the sale. *Id.* The Motion for Approval of Sale of Freetrade/Suntec/Via 188 Property was subsequently withdrawn from the docket. *See* ECF No. 1446.

Since the cancellation of the sale, the Receiver has requested that the escrow company, Glen Oaks Escrow ("Glen Oaks"), release the Buyer's $5,000 deposit to Receiver. ECF No. 1457-1 at 3. Glen Oaks has communicated to Receiver that it will not release the deposit unless the buyer consents or the Court issues an order

---

³ The Court directed the Receiver to file a Modified Orderly Sale Process that incorporated the public sale process consistent with the requirement of 28 U.S.C. § 2001. ECF No. 1304. The Receiver filed a modified proposal on June 8, 2016 (ECF No. 1309) and the Court approved the modified proposal on August 30, 2016 (ECF No. 1359).

directing it to do so. *Id.* According to Receiver, Buyer has not consented to the release and is no longer responding to Receiver. *Id.*

**DISCUSSION**

The Receiver seeks an Order from the Court directing Glen Oaks to release the Buyer's deposit from the cancelled Freetrade sale to the Receiver. The Receiver states that the Receivership incurred expenses (1) preparing the motion for the approval of the Freetrade sale and (2) publishing the sale in the San Diego Union Tribune per the requirements of 28 U.S.C. § 2001 and the Modified Orderly Sale Process. *Id.* at 2. As such, and because the Buyer forfeited his right to his deposit unless the Court cancelled the sale, the Receiver requests an order directing the release of the deposit.

The Receiver has not cited any authority that would permit it to take the requested action against Glen Oaks and the Buyer. While Receiver is correct to point out that the Court has "broad equitable powers" to administer the Receivership and fashion appropriate relief, *see generally SEC v. Capital Consultants, LLC*, 397 F.3d 733, 738 (9th Cir. 2005), Receiver has asked the Court to issue an order that takes action against an individual who is not part of the Receivership and who is not otherwise subject to the Court's jurisdiction. A similar problem is raised by the Court ordering an entity, also not part of the Receivership, to take an adverse action against the Buyer.

Section 754 of 28 U.S.C. gives this Court territorial jurisdiction over the Freetrade property, pursuant to the Court's jurisdiction over the GPs, but the Receiver has pointed to no statute or law that empowers the Court to issue an order binding individuals and entities who merely do business with a federally-operated receivership.

Absent such an authority and in light of the fact that the Court, at this juncture, sees no basis for exercising personal jurisdiction over Glen Oaks or Buyer,

the Court **DENIES** Receiver's Motion.  The Court authorizes Receiver to take all reasonable steps to recover the $5,000 deposit.

**IT IS SO ORDERED.**

Dated:  June 14, 2017

Hon. Gonzalo P. Curiel
United States District Judge