UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>LOUIS V. SCHOOLER and FIRST FINANCIAL PLANNING CORPORATION d/b/a WESTERN FINANCIAL PLANNING CORPORATION,<br><br>Defendants. | Case No.: 3:12-CV-02164-GPC-JMA<br><br>**ORDER APPROVING:**<br><br>**SALE OF BRATTON VIEW PROPERTY AND AUTHORITY TO PAY BROKER'S COMMISSION**<br><br>**[ECF No. 1480]** |

Before the Court is the Receiver's Motion for Approval of Sale of Bratton View Property ("Motion"). ECF No. 1480. No opposition was filed. Based upon a review of the moving papers and the applicable law, the Court **GRANTS** the Receiver's motion.

## **BACKGROUND**

### A. The SEC Enforcement Action

On January 21, 2016, the Court granted the SEC's motion for final judgment against Defendant Louis V. Schooler. ECF No. 1170. The SEC had initiated this civil action against Defendant Schooler and Western Financial Planning Corporation ("Western") four years earlier, on account of their practice of defrauding investors into

1

purchasing unregistered securities. *Id.* (citing Second Summary Judgment Order, ECF No. 1081). To carry out the scheme, Defendant Western bought undeveloped real estate, with cash or through financing, and simultaneously formed one or more General Partnerships ("GPs") to own the land. First Summary Judgment Order, ECF No. 1074 at 10. Western then sold General Partnership units to investors and sold the undeveloped real estate to the General Partnerships. *Id.* at 10. In total, Western raised approximately $153 million from almost 3,400 investors through implementing this scheme. *Id.*

### B. The Decline of the General Partnership Assets

In 2013, the Court-appointed Receiver, Thomas Hebrank, engaged licensed appraisers to value the 23 properties owned by the General Partnerships. ECF No. 203 at 2. Those professionals determined that the land was worth $16,328,000 and that the net appraised value (appraised value less outstanding balances on all mortgages) of the properties was $12,860,661. *Id.* The net appraised value represented just 8.41% of the total funds that the general partners had invested in the land. *Id.* The Receiver further estimated that, based on the then-current appraised values of the land, the average GP investor would suffer an 88.40% loss if the GP properties were sold in 2013. *Id.*

Three years later, soon after final judgment was entered, the Receiver moved for authority to conduct an Orderly Sale of the General Partnership Properties ("Orderly Sale"). Motion for Orderly Sale, ECF No. 1181-1. In the Motion, the Receiver indicated that the aggregate value in the GP accounts had been steadily decreasing while litigation was ongoing. *See id.* In September 2012, the Receivership had assets of $6.6 million. *Id.* at 1. By the end of 2015, the assets had dropped to $3.5 million, and the Receiver had reason to believe that the value of the Receivership would continue to drastically decrease through the end of 2016.[1] This decline, he noted, was due to three main factors:

---

[1] The Receiver provided the Court with projections that the Receivership would further decline to $1.8 million by the end of 2016. Indeed, the Receiver's projection has since proved to be accurate. The Eighteenth Interim Status Report submitted by the Receiver indicates that the Receivership's current cash balance is $1,546,447. ECF No. 1441 at 20.

(1) 14 of the 23 properties were not appreciating in value[2]; (2) the properties were not worth enough to cover the costs of the GPs carrying the properties; and (3) low levels of investor contributions to pay GP administrator fees, tax preparation fees, property taxes, property insurance premiums, and notes owed to Western. *See id.* at 1-2. In other words, the Receiver concluded, because the money being spent to hold the GP properties was disproportionately high in relation to the value of the GP's real estate assets, the Receivership was in a steady decline. *Id.*

In order to prevent the value of the Receivership from falling into further decline, the Receiver proposed that the GP properties be sold in accordance with Court-approved orderly sale procedures. *Id.* The Receiver's proposal explained that the best way to maximize the value of all of the GP assets for the benefit of all investors, irrespective of any given investors' direct property interest, was to initiate an orderly sale of the GP properties. *Id.* The Receiver estimated that the Receivership, after conducting sales of the GP properties, Western's properties and asset recovery, would be worth $21,804,826. *Id.* at 16.

### C. The Receiver's Motion for Orderly Sale

On May 20, 2016, the Court held a hearing on the Receiver's Motion for Orderly Sale, at which time the Court heard from the SEC, Defendant, the Receiver, and the investor-interveners — that is, those investors who were granted permission under Rule 23 to intervene to oppose the Receiver's Motion. *See* ECF No. 1298. A short time thereafter, on May 25, 2016, the Court approved, in part, the Receiver's Orderly Sale process.[3] ECF No. 1304.

---

[2] By way of example, the Receiver notes that the value of these 14 properties in 2016, $3,732,815, was about $400,000 less than their value in 2013, $4,137,000. *Id.* at 2.

[3] The Court directed the Receiver to file a Modified Orderly Sale Process that incorporated the public sale process consistent with the requirement of 28 U.S.C. § 2001. ECF No. 1304. The Receiver filed a modified proposal on June 8, 2016 (ECF No. 1309) and the Court approved the modified proposal on August 30, 2016 (ECF No. 1359).

In approving the Orderly Sale, the Court addressed and evaluated the concerns expressed by the Receiver, the SEC, and myriad investors, all of whom held differing positions on whether the Orderly Sale would benefit the Receivership estate. *See generally* ECF Nos. 1181 (Motion for Orderly Sale), 1232 (SEC Response), 1234 (Dillon Investors' Response), 1235 (Graham Investors' Response); *see also, e.g.*, ECF Nos. 1240, 1242, 1244, 1249-1257 (Letters from Investors). The Court also took into consideration the recommendations of the investors' experts, as set forth in the Xpera Report. *See* ECF No. 1304 at 16. The Xpera Report, the Court noted, substantially agreed with the Receiver on how to maximize the value of the Receivership estate and, for the most part, agreed on the appraised value of the various GP properties. *Id.* As such, the Court directed the Receiver, where feasible, to incorporate the recommendations of the Xpera Report into his ultimate Orderly Sale proposal. *Id.* at 19.

On July 22, 2016, the Receiver moved for permission to engage CBRE, a real estate brokerage firm, as a consultant in order to weigh the pros and the cons of the Xpera Report. ECF No. 1341-1. The Court granted the Receiver's motion on August 30, 2016. ECF No. 1359. CBRE presented its findings on the GP properties on October 24, 2016. ECF No. 1419 (filed under seal). On November 22, 2016, the Receiver submitted a report evaluating the Xpera Report recommendations. ECF No. 1405. The Court reviewed the Receiver's report and adopted the recommendations contained therein on December 12, 2016. ECF No. 1423.

**D. Bratton View Property**

Bratton View is one of the three parcels in the Bratton Valley property, along with Honey Springs and Valley Vista. ECF No. 1480 at 2. The Bratton Valley properties are located in the City of Jamul in San Diego County. *Id.* at 3.

On January 14, 2016, the Court approved the Receiver to engage a broker to list the three Bratton Valley properties for sale. *Id.* at 2; *see also* ECF No. 1168. The Court approved the sale of one of the Bratton parcels, the Honey Springs property, for $240,000 on March 20, 2017, and the sale closed in April 2017. *Id.* The Court has also recently

approved the sale of the Valley Vista property for $240.000. *See id.* The Bratton View property is the last of the Bratton Valley properties to be sold.

In 2013, the Receiver valued the Bratton View property at $68,667 and all three Bratton Valley properties at a combined total of $206,000. ECF No. 1405, Ex. A at 11. Two years later, in 2015, the Broker Opinion Value (BOV) of the Bratton View property was $270,236 and the BOV of the combined Bratton properties was $756,548. *Id.* Although the Xpera Report did not value the Bratton View property standing alone, it did value the property as one of the three Bratton Valley properties, and the value that Xpera ascribed to all three properties corresponded to the BOV value of the properties.[4] *Id.* The Xpera report, moreover, concurred in the Receiver's recommendation that the Bratton Valley properties be sold now. *See id.*

In April 2016, the Receiver received an offer from Felipi and Ofelia Aguilar[5] to buy the Bratton View property for $239,000, its full listing price. ECF No. 1480-1 at 2. A second buyer concurrently submitted an offer for the same, full list price. *Id.* The Receiver made a counter-offer to both prospective purchasers requesting their best and final offer. *Id.* Felipi and Ofelia Aguilar responded with an offer of $256,500, which exceeded the second buyer's offer by $1,500. *Id.* at 3. The Receiver and Aguilars thereafter executed a Vacant Land Purchase Agreement and the Aguilars completed due diligence and contingency removal on May 17, 2017. *Id.*

In accordance with the Court-approved modified Orderly Sale procedures, *see generally* ECF No. 1309, 1359, the Receiver sent notice of the offer to investors, but no responses were received. ECF No. 1480-1 at 4. After executing the purchase agreement, the Receiver also laid out a timeline for the submission of qualified overbids pursuant to

---

[4] The Xpera Report valued the Bratton View property, along with Honey Springs and Valley Vista properties, between $629,878 (low valuation) and $944,816 (high valuation). ECF No. 1405, Ex. A at 11. The Receiver's appraisal of Bratton View, together with Honey Springs and Valley Vista, totaled $756,548, placing the Receiver's appraisal within the range proposed by Xpera. *See id.*

[5] The Aguilars were the buyers of the aforementioned Honey Springs property.

5

the modified Orderly Sale procedures. *Id.* at 7-10. The Receiver received a timely and qualified overbid for $265,000 from Jesus and Augustine Martinez. *Id.* The Aguilars' earnest money deposit, therefore, "was returned to them and escrow was opened with" the overbidder. *Id.* The Receiver and overbidder have since executed a Vacant Land Purchase Agreement for the property for the overbid price of $265,000. *Id.*

**E. Conclusion**

The Court finds that the purchase price of $265,000 is reasonable in light of the Receiver's 2015 appraisal of the Bratton View property and the Xpera Report. The BOV value obtained by the Receiver estimated that the property was worth $270,236, which places the purchase price just $5,000 shy of the 2015 estimate. Moreover and more importantly, the Court notes that with this sale, the Bratton Valley properties have been sold for $745,000, which correlates to the BOV of the properties ($756,548) and falls within the range provided by the Xpera Report ($629,878 – $944,816).

The Court is also satisfied that the Receiver has complied with the modified Orderly Sale procedures. The Receiver's notice of the sale adhered to the modified Orderly Sale procedures, which require that notice of the sale be published "in the county, state, or judicial district of the United States *wherein the realty is situated*." 28 U.S.C. § 2002 (emphasis added), by publishing notice in the San Diego Union Tribune and by providing notice to the investors. Accordingly, and given that no opposition to the present Motion has been filed, or raised, and that a qualified overbid was received, the Court **GRANTS** Receiver's motion for approval of sale (ECF No. 1480).

////

////

# ORDER

The Receiver's Motion for Approval of Sale of Bratton View Property and Authority to Pay Broker's Commission ("Motion") of Thomas C. Hebrank ("Receiver"), the Court-appointed receiver for First Financial Planning Corporation d/b/a Western Financial Planning Corporation ("Western"), its subsidiaries and the General Partnerships listed in Schedule 1 to the Preliminary Injunction Order entered on March 13, 2013 (collectively, "Receivership Entities"), having been reviewed and considered by this Court, the Receiver having notified the Court regarding the receipt of a qualified overbid and the results of the auction (Dkt. No. 1493), and for good cause appearing therefore, the Court finds as follows:

1. The Motion is granted;

2. The sale of the Property known as the Bratton View property, as described on Exhibit A to the Declaration of Thomas C. Hebrank in support of the Motion ("Property"), by Thomas C. Hebrank, as receiver for Bratton View Partners, to Augustine Martinez and Jesus Martinez is confirmed and approved;

3. The Vacant Land Purchase Agreement and Joint Escrow Instructions attached as Exhibit A to the Notice of Receipt of Qualified Overbid and Results of Auction for Sale of Bratton View Property is confirmed and approved;

4. The purchase price of $265,000 for the Property is confirmed and approved;

5. The Receiver is immediately authorized to complete the sale transaction, including executing any and all documents as may be necessary and appropriate to do so; and

6. The Receiver is authorized to immediately pay, upon closing of the sale, a commission of 6% of the final purchase price to broker Real Estate Results.

**IT IS SO ORDERED.**

Dated: August 4, 2017

Hon. Gonzalo P. Curiel
United States District Judge