UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>LOUIS V. SCHOOLER and FIRST FINANCIAL PLANNING CORPORATION, dba Western Financial Planning Corporation,<br><br>Defendants. | **Case No.: 3:12-cv-2164-GPC-JMA**<br><br>**(1) GRANTING RECEIVER'S EIGHTEENTH INTERIM FEE APPLICATION;**<br><br>**[ECF No. 1464]**<br><br>**(2) GRANTING ALLEN MATKINS' EIGHTEENTH INTERIM FEE APPLICATION;**<br><br>**[ECF No. 1465]**<br><br>**(3) GRANTING RECEIVER'S NINETEENTH INTERIM FEE APPLICATION;**<br><br>**[ECF No. 1489]**<br><br>**(4) GRANTING ALLEN MATKINS' NINETEENTH INTERIM FEE APPLICATION;**<br><br>**[ECF No. 1490]**<br><br>**(6) APPROVING RECEIVER'S EIGHTEENTH AND NINETEENTH INTERIM REPORTS**<br><br>**[ECF Nos. 1441, 1478]** |

Before the Court are fee applications submitted by the court-appointed receiver Thomas C. Hebrank (the "Receiver") and counsel to receiver Allen Matkins Leck Gamble Mallory & Natsis LLP ("Allen Matkins"):

1. Eighteenth Interim Application for Approval and Payment of Fees and Costs to Thomas C. Hebrank, as Receiver ("Receiver's Eighteenth Interim Fee Application"), ECF No. 1464;

2. Eighteenth Interim Fee Application of Allen Matkins Leck Gamble Mallory & Natsis LLP, Counsel to Receiver ("Allen Matkins' Eighteenth Interim Fee Application"), ECF No. 1465;

3. Nineteenth Interim Application for Approval and Payment of Fees and Costs to Thomas C. Hebrank, as Receiver ("Receiver's Nineteenth Interim Fee Application"), ECF No. 1489; and

4. Nineteenth Interim Fee Application of Allen Matkins Leck Gamble Mallory & Natsis LLP, Counsel to Receiver, ("Allen Matkins' Nineteenth Interim Fee Application"), ECF No. 1490.

Receiver also submitted to the Court an Eighteenth Interim Report, ECF No. 1441, on February 17, 2017 and a Nineteenth Interim Report, ECF No. 1478, on May 19, 2017. Neither the Plaintiff, the Securities and Exchange Commission (the "SEC"), nor Defendants have filed any response to the fee applications or the status reports.

## **BACKGROUND**

**A. Receiver**

In the Eighteenth Interim Fee Application, Thomas C. Hebrank, the Receiver, asserts that he incurred $89,320.50 in fees and $1,150.59 in costs for the application period covering October 1, 2016 through December 31, 2016 ("Eighteenth Application Period"). ECF No. 1464 at 2.[1] The breakdown of the fees amassed is as follows:

---

[1] Page numbers for CM/ECF documents follow the pagination generated by CM/ECF.

| Category | Total |
|---|---|
| General Receivership | $3,861.00 |
| Asset Investigation & Recovery | None |
| Reporting | $12,339.00 |
| Operations & Asset Sales | $64,734.75 |
| Claims & Distributions | $468.00 |
| Legal Matters & Pending Litigation | $7,917.75 |
| **Total** | $89,320.50 |

*Id.* at 3–5. Receiver now seeks payment of 80% of the fees incurred, amounting to $71,456.40, and 100% of the costs, which account for postage, website maintenance, and copies. *Id.* at 2 & Exhibit C.

In the Nineteenth Interim Fee Application, the Receiver asserts that he incurred $92,067.75 in fees and $3,467.38 in costs for the application period covering January 1, 2017 through March 31, 2017 ("Nineteenth Application Period"). ECF No. 1489 at 2. The breakdown of the fees amassed is as follows:

| Category | Total |
|---|---|
| General Receivership | $5,841.00 |
| Asset Investigation & Recovery | None |
| Reporting | $1869.75 |
| Operations & Asset Sales | $82,572.75 |
| Claims & Distributions | None |
| Legal Matters & Pending Litigation | $1,784.25 |
| **Total** | $92,067.75 |

3

*Id.* at 3–5. Receiver now seeks payment of 80% of fees incurred, amounting to $73,654.20, and 100% of the costs, which account for travel, postage, website maintenance, and copies. *Id.* at 2 & Exhibit C.

**B. Allen Matkins**

In the Eighteenth Interim Fee Application, Allen Matkins, counsel for receiver, asserts that it incurred $85,655.70 in fees for the application period covering October 1, 2016 through December 31, 2016, same as the Eighteenth Application Period identified previously. ECF No. 1465 at 2. The breakdown of the fees amassed is as follows:

| **Category** | **Total** |
| --- | --- |
| General Receivership | $39,259.80 |
| Reporting | $12,308.85 |
| Operations & Asset Sales | $30,926.70 |
| Claims & Distributions | $2,125.35 |
| Third Party Recoveries | $155.25 |
| Employment/Fees | $8,779.75 |
| **Total** | $85,655.70 |

*Id.* Allen Matkins now seeks payment of 80% of the fees incurred, amounting to $68,524.56, and 100% of the costs amounting to $129.71. *Id.* at 2, 8.

In the Nineteenth Interim Fee Application, Allen Matkins, counsel for receiver, asserts that it incurred $81,124.20 in fees for the application period covering January 1, 2017 through March 31, 2017, same as the Nineteenth Application Period identified previously. ECF No. 1490 at 2. The breakdown of the fees amassed is as follows:

/ / / /

/ / / /

/ / / /

4

| Category | Total |
|---|---|
| General Receivership | $23,626.80 |
| Reporting | $1,863.00 |
| Operations & Asset Sales | $51,088.05 |
| Claims & Distributions | $3,511.35 |
| Third Party Recoveries | $207 |
| Employment/Fees | $828.00 |
| **Total** | $81,124.20 |

*Id.* Allen Matkins now seeks payment of 80% of the fees incurred, amounting to $64,899.36, and 100% of the costs incurred, amounting to $304.81. *Id.* at 2, 8.

## **LEGAL STANDARD**

"[I]f a receiver reasonably and diligently discharges his duties, he is entitled to fair compensation for his efforts." *SEC v. Elliott*, 953 F.2d 1560, 1577 (11th Cir. 1992). "The court appointing [a] receiver has full power to fix the compensation of such receiver and the compensation of the receiver's attorney or attorneys." *Drilling & Exploration Corp. v. Webster*, 69 F.2d 416, 418 (9th Cir. 1934). A receiver's fees must be reasonable. *See In re San Vicente Med. Partners Ltd.*, 962 F.2d 1402, 1409 (9th Cir. 1992).

As set forth in the Court's prior fee orders, *see, e.g.*, ECF No. 1167, the Court will assess the reasonableness of the requested fees using the factors enumerated in *SEC v. Fifth Avenue Coach Lines*, 364 F. Supp. 1220, 1222 (S.D.N.Y. 1973) and *In re Alpha Telcom, Inc.*, 2006 WL 3085616, at *2–3 (D. Or. Oct. 27, 2006). Those factors include: (1) the complexity of the receiver's tasks; (2) the fair value of the receiver's time, labor, and skill measured by conservative business standards; (3) the quality of the work performed, including the results obtained and the benefit to the receivership estate; (4) the

burden the receivership estate may safely be able to bear; and (5) the Commission's opposition or acquiescence. *See* 364 F. Supp. at 1222; 2006 WL 3085616, at *2–3.

## **DISCUSSION**

### **I.  Interim Fee Applications**

### **A. Complexity of Tasks**

#### **1. Receiver**

The Court finds that the tasks performed by the Receiver during the Eighteenth and Nineteenth Application Periods were moderately complex. The Receiver undertook the following tasks during the two periods:

- handling general administrative issues, including reviewing mail, email, and other correspondence directed at the Receivership entities;
- administering the bank accounts of the Receivership entities;
- reviewing and approving expenditures;
- maintaining and updating the Receiver's website with case information and documents;
- responding to investor inquiries and misinformation put out by certain investors;
- preparing Receiver's fee interim reports;
- preparing the Report and Recommendation Regarding Xpera Report Recommendations, filed November 22, 2016;
- managing and overseeing the GPs' operations and real property;
- managing and overseeing Western's operations;
- performing accounting functions of the Receivership entities, including paying expenses, clearing checks, and ACH entries;
- managing and overseeing tax reporting for Receivership entities;
- managing and overseeing GP operational bills, loan payments, and cash management;

- listing and responding to sales activity on the various Receivership properties;
- conducting analysis relating to purchase offers received;
- closing property sales;
- refunding capital call payments due to the failure of the capital calls to raise the required amounts;
- renegotiating loans and contesting tax and other delinquencies;
- preparing for investor distributions;
- working on and responding to investor-driven litigation, appeals, and requests for stays pending appeal;
- implementing monthly case update reports for investors;
- preparing tax returns and investor K-1 forms in anticipation of changing IRS reporting requirements; and
- investigating the tax treatment and ramifications to investors of the Court's approval of the pooling of the Receivership assets.

ECF No. 1464 at 3-5; ECF No. 1489 at 3-7.

**2. Allen Matkins**

The Court finds that the tasks performed by Allen Matkins during the Eighteenth and Nineteenth Application Periods were moderately complex. Allen Matkins undertook the following tasks during this period:

- responding to motions, other filings, and correspondence from investor-driven litigation, including: opposition to motion to strike a brief filed by the Receiver, opposition to motion to stay receivership pending appeal, responding to investor supplemental brief regarding stay pending appeal, response to defense counsel's motion to be relieved, opposition to investors' objection to Receivership interim reports; motion to expedite appeal of Jamul Valley sale order;
- assisting Receiver with responding to letters and investors from counsel to investors;

- addressing request from defense counsel and confirming that land to be paid to counsel from Schooler was not in Receivership;
- communicating with counsel for the SEC regarding final enforcement of judgment against Schooler;
- preparing Receiver's Seventeenth and Eighteenth Interim Reports;
- assisting Receiver with legal issues relating to the ongoing operations of Western and the GPs, including the orderly sale process, proposed sales of GP properties, easement and condemnation issues, and issues relating to property taxes and assessments;
- assisting and advising the Receiver on issues relating to investor claims and procedures for the administration of such claims;
- reviewing and responding to communications from investors, creditors, and their counsel with respect to the Receivership;
- assisting Receiver in preparing updates to the Receivership website;
- supporting Receiver with the collection and satisfaction of the LinMar IV judgment pursuant to the Court-approved settlement;
- preparing the Receiver's Report and Recommendation Regarding Xpera Report Recommendations;
- addressing letters of intent received for GP properties.

ECF No. 1465 at 3–8; ECF No. 1490 at 3–9.

**B. Fair Value of Time, Labor, and Skill**

The Receiver billed his time at $247.50 per hour and the time of those working for him at $180.00 per hour during both application periods. ECF No. 1464 at 3; ECF No. 1389 at 2–3. Allen Matkins billed its time at $256.50 – $702.00 per hour, with the overwhelming majority of work being billed at $517.50 per hour. ECF No. 1465, Exhibit A; ECF No. 1490, Exhibit A. These rates reflect a ten percent discount from the

Receiver's and Allen Matkins' ordinary rates. ECF No. 1464 at 2; ECF No. 1465 at 2; ECF No. 1489 at 2; ECF No. 1490 at 2.

The Court continues to find, as it has in previous fee orders, that the rates charged by the Receiver and Allen Matkins are fair and reasonable. *See* ECF Nos. 1448, 1460.

**C. Quality of Work Performed**

The Court finds that the quality of work performed by the Receiver and Allen Matkins to be above average. The Receivership has dutifully handled a number of administrative and legal issues that emerged during the Eighteenth and Nineteenth Application Periods.

One, the Court finds that the Receiver and Allen Matkins have worked diligently to carry out the mandates of the May 25, 2016 Order,[2] including the roll out of the orderly sale process of the GP properties. On November 22, 2016, for instance, the Receiver filed a Report and Recommendations Regarding Xpera Report Recommendations as requested by the Court. ECF No. 1405. The report, through the expertise of CBRE, a real estate brokerage and property consulting firm, evaluated the recommendations of Xpera, a consulting group hired by Schooler's investors, concerning the value of the land contained in the Receivership. ECF No. 1423. The report outlined how to maximize the assets managed by the Receivership, including when to sell the properties and on what terms. *Id.* The Court adopted the recommendation in full on December 12, 2016. *Id.*

In addition and as a result of motions filed during these application periods, the Receiver has also received approval to: (1) engage real estate brokers for the sale of the Yuma I, Yuma II, Yuma III, and Minden properties, ECF Nos. 1399, 1416; (2) sell the Honey Springs property, ECF Nos. 1430, 1449; and (3) sell the Reno Partners' property, ECF Nos. 1443, 1463.

---

[2] On May 25, 2016, the Court approved in part the Receiver's request to (1) conduct an orderly sale of the general partnership properties, (2) distribute receivership assets, and (3) approve procedures for the administration of investor claims. ECF No. 1304.

9

Two, the Receiver, with the benefit of counsel, has promptly responded to filings initiated by investors who sought to intervene to oppose the Court-sanctioned orderly sale process and the administration of the Receivership estate. On October 4, 2016, a group of investors sought to intervene to oppose the interim reports filed by the Receiver for the preceding nine months. ECF No. 1381. The Receiver filed a timely response on October 20, 2016. ECF No. 1394. The motion was ultimately denied on November 29, 2016. ECF No. 1409.

Three, the Receiver has fulfilled his duty to the Court to keep it informed of the Receivership's activities and funds. For example, on December 8, 2016, the Receiver filed his Seventeenth Interim Report, ECF No. 1422, and on February 7, 2017, he submitted his Eighteenth Interim Report, ECF No. 1441.

In sum, as the Court has mentioned in previous orders granting the Receiver's and Allen Matkins' fee applications, *see, e.g.*, ECF Nos. 1448, 1460, the Receiver and Allen Matkins have been proactive in devising and implementing a plan to maximize the value of the Receivership assets — that plan being the Modified Orderly Sale Process — for the benefit of all investors. The Receiver and Allen Matkins have, moreover, complied with the Court's orders and worked diligently to timely file all other motions with the Court. As such, the Court is satisfied with the quality of work performed by both professionals.

**D. Receivership Estate's Ability to Bear Burden of Fees**

On August 30, 2016, the Court approved the Receiver's Modified Orderly Sale Process, ECF No. 1359, and the use of the One Pot approach to distribute receivership assets, ECF No. 1304 at 31. These actions were taken for the dual purpose of increasing the value of the Receivership estate by selling GP properties and lowering administrative costs. ECF No. 1304 at 30. Since receiving approval of the Modified Orderly Sale Process, Receiver has begun the process of selling GP assets.

On August 30, 2016, the Court approved the sale of the Jamul Valley Property, ECF No. 1361 at 2, the Reno Vista and Reno View Properties, ECF No. 1360 at 2, and the property known as Silver Springs So., ECF No. 1362 at 2.

On December 6, 2016, the Court granted Receiver authority to engage real estate brokers for the Yuma I, Yuma II, Yuma III, and Minden properties. ECF No. 1416.

On December 12, 2016 the Court approved the Receiver's Report and Recommendations regarding the Xpera Report and Recommendations, which addresses the strategy and timeline for selling the Receivership assets. ECF No. 1423.

On March 20, 2017, the Court approved the sale of the Honey Springs property. ECF No. 1449.

On April 12, 2017, the Court approved the sale of the Reno Partners' property. ECF No. 1468.

Finally, the Court is also prepared to approve the sale of the Bratton View property. ECF No. 1480.

The sales and future sales of these properties have maximized, and will continue to maximize, the value of the GP properties for the benefit of all investors. Such sales will also increase the Receivership's cash balance. Accordingly, the Court finds that the Receivership estate has sufficient ability to bear the instant fee requests.

### E. Commission's Opposition or Acquiescence

Receiver indicates that the SEC does not oppose any of the proposed fees or costs submitted by Receiver or Allen Matkins. ECF No. 1464 at 8; ECF No. 1465 at 11; ECF No. 1489 at 8; ECF No. 1490 at 11.

## II. Interim Reports

On February 7, 2017, the Receiver filed the Eighteenth Interim Report, ECF No. 1441, and on May 19, 2017, the Receiver filed the Nineteenth Interim Report, ECF No. 1478. The Reports provide updates concerning: (1) the Receiver's activities; (2) Western's Assets; (3) issues concerning the GP properties; (4) pending sales of GP

properties; (5) investors' appeals of Court orders; and (7) receipts and disbursements, among other issues. The Court is satisfied with the level of detail contained in the Eighteenth and Nineteenth Interim Reports and with the reasonableness of the actions taken by the Receiver during the relevant time periods.

## **CONCLUSION**

Considering the above five factors taken together, and considering that "[i]nterim fees are generally allowed at less than the full amount," *Alpha Telcom*, 2006 WL 3085616, at *2–3, the Court awards fees and costs as set forth in the following table:

| Applicant | Fees Allowed | % of Fees Incurred[3] | Costs Allowed | % of Costs Requested |
|---|---|---|---|---|
| Receiver | $145,110.60 | 80 | $4,617.97 | 100 |
| Allen Matkins | $133,423.92 | 80 | $434.52 | 100 |

## **ORDER**

After a review of the parties' submissions, the record in this matter, and the applicable law, and for the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. The Receiver's Eighteenth Interim Fee Application, ECF No. 1464, is **GRANTED**;
2. The Receiver's Nineteenth Interim Fee Application, ECF No. 1489, is **GRANTED**;
3. Allen Matkins' Eighteenth Interim Fee Application, ECF No. 1465, is **GRANTED**;
4. Allen Matkins' Nineteenth Interim Fee Application, ECF No. 1490, is **GRANTED**;

---

[3] The Court includes the percentage of fees *incurred* rather than a percentage of the fees requested, given that the Receiver and Allen Matkins request only a percentage of their actual fees.

5. The Receiver's Eighteenth Interim Report, ECF No. 1441, is **APPROVED**.

6. The Receiver's Nineteenth Interim Report, ECF No. 1478, is **APPROVED**.

**IT IS SO ORDERED**.

Dated: August 4, 2017

*[signature]*
Hon. Gonzalo P. Curiel
United States District Judge