# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>LOUIS V. SCHOOLER and FIRST FINANCIAL PLANNING CORPORATION d/b/a WESTERN FINANCIAL PLANNING CORPORATION,<br><br>　　　　　　　　　　　Defendants. | Case No.: 3:12-CV-02164-GPC-JMA<br><br>**ORDER APPROVING:**<br><br>**SALE OF WASHOE V PROPERTY**<br><br>**[ECF No. 1515]** |

Before the Court is the Receiver's Motion for Approval of Sale of Washoe V Property. ECF No. 1515. No opposition was filed. Based upon a review of the moving papers and the applicable law, the Court **GRANTS** the Receiver's motion.

## **BACKGROUND**

**A. The SEC Enforcement Action**

On January 21, 2016, the Court granted the SEC's motion for final judgment against Defendant Louis V. Schooler. ECF No. 1170. The SEC had initiated this civil action against Defendant Schooler and Western Financial Planning Corporation ("Western") four years earlier, on account of their practice of defrauding investors into

1

purchasing unregistered securities. *Id.* (citing Second Summary Judgment Order, ECF No. 1081). To carry out the scheme, Defendant Western bought undeveloped real estate, with cash or through financing, and simultaneously formed one or more General Partnerships ("GPs") to own the land. First Summary Judgment Order, ECF No. 1074 at 10. Western then sold General Partnership units to investors and sold the undeveloped real estate to the General Partnerships. *Id.* at 10. In total, Western raised approximately $153 million from almost 3,400 investors through implementing this scheme. *Id.*

**B. The Decline of the General Partnership Assets**

In 2013, the Court-appointed Receiver, Thomas Hebrank, engaged licensed appraisers to value the 23 properties owned by the General Partnerships. ECF No. 203 at 2. Those professionals determined that the land was worth $16,328,000 and that the net appraised value (appraised value less outstanding balances on all mortgages) of the properties was $12,860,661. *Id.* The net appraised value represented just 8.41% of the total funds that the general partners had invested in the land. *Id.* The Receiver further estimated that, based on the then-current appraised values of the land, the average GP investor would suffer an 88.40% loss if the GP properties were sold in 2013. *Id.*

Three years later, soon after final judgment was entered, the Receiver moved for authority to conduct an Orderly Sale of the General Partnership Properties ("Orderly Sale"). Motion for Orderly Sale, ECF No. 1181-1. In the Motion, the Receiver indicated that the aggregate value in the GP accounts had been steadily decreasing while litigation was ongoing. *See id.* In September 2012, the Receivership had assets of $6.6 million. *Id.* at 1. By the end of 2015, the assets had dropped to $3.5 million, and the Receiver had reason to believe that the value of the Receivership would continue to drastically decrease through the end of 2016. This decline, he noted, was due to three main factors: (1) 14 of the 23 properties were not appreciating in value[1]; (2) the properties were not

---

[1] By way of example, the Receiver notes that the value of these 14 properties in 2016, $3,732,815, was about $400,000 less than their value in 2013, $4,137,000. *Id.* at 2.

worth enough to cover the costs of the GPs carrying the properties; and (3) low levels of investor contributions to pay GP administrator fees, tax preparation fees, property taxes, property insurance premiums, and notes owed to Western. *See id.* at 1-2. In other words, the Receiver concluded, because the money being spent to hold the GP properties was disproportionately high in relation to the value of the GP's real estate assets, the Receivership was in a steady decline. *Id.*

In order to prevent the value of the Receivership from falling into further decline, the Receiver proposed that the GP properties be sold in accordance with Court-approved orderly sale procedures. *Id.* The Receiver's proposal explained that the best way to maximize the value of all of the GP assets for the benefit of all investors, irrespective of any given investors' direct property interest, was to initiate an orderly sale of the GP properties. *Id.* The Receiver estimated that the Receivership, after conducting sales of the GP properties, Western's properties and asset recovery, would be worth $21,804,826. *Id.* at 16.

**C. The Receiver's Motion for Orderly Sale**

On May 20, 2016, the Court held a hearing on the Receiver's Motion for Orderly Sale, at which time the Court heard from the SEC, Defendant, the Receiver, and the investor-interveners — that is, those investors who were granted permission under Rule 23 to intervene to oppose the Receiver's Motion. *See* ECF No. 1298. A short time thereafter, on May 25, 2016, the Court approved, in part, the Receiver's Orderly Sale process.[2] ECF No. 1304.

In approving the Orderly Sale, the Court addressed and evaluated the concerns expressed by the Receiver, the SEC, and myriad investors, all of whom held differing positions on whether the Orderly Sale would benefit the Receivership estate. *See*

---

[2] The Court directed the Receiver to file a Modified Orderly Sale Process that incorporated the public sale process consistent with the requirement of 28 U.S.C. § 2001. ECF No. 1304. The Receiver filed a modified proposal on June 8, 2016 (ECF No. 1309) and the Court approved the modified proposal on August 30, 2016 (ECF No. 1359).

*generally* ECF Nos. 1181 (Motion for Orderly Sale), 1232 (SEC Response), 1234 (Dillon Investors' Response), 1235 (Graham Investors' Response); *see also, e.g.*, ECF Nos. 1240, 1242, 1244, 1249-1257 (Letters from Investors). The Court also took into consideration the recommendations of the investors' experts, as set forth in the Xpera Report. *See* ECF No. 1304 at 16. The Xpera Report, the Court noted, substantially agreed with the Receiver on how to maximize the value of the Receivership estate and, for the most part, agreed on the appraised value of the various GP properties. *Id.* As such, the Court directed the Receiver, where feasible, to incorporate the recommendations of the Xpera Report into his ultimate Orderly Sale proposal. *Id.* at 19.

On July 22, 2016, the Receiver moved for permission to engage CBRE, a real estate brokerage firm, as a consultant in order to weigh the pros and the cons of the Xpera Report. ECF No. 1341-1. The Court granted the Receiver's motion on August 30, 2016. ECF No. 1359. CBRE presented its findings on the GP properties on October 24, 2016. ECF No. 1419 (filed under seal). On November 22, 2016, the Receiver submitted a report evaluating the Xpera Report recommendations. ECF No. 1405. The Court reviewed the Receiver's report and adopted the recommendations contained therein on December 12, 2016. ECF No. 1423.

**D. Washoe V Property**

The Washoe V Property (the "Property")—approximately 177.45 acres of undeveloped land in Washoe County, Nevada—is held by two general partners included in the receivership: Pyramid Highway 177 Partners and Frontage 177 Partners. ECF No. 1515-1 at 2. The Property is owned outright by the Park Vegas Partners. *Id.* The Property is approximately 8.04 acres of undeveloped land. *Id.*

In 2013, after receiving authorization from the Court, Receiver obtained an appraisal of the Property at $180,000. ECF No. 1405, Ex. A at 13. Again with the Court's approval, the Receiver obtained another appraisal in 2015 that estimated the value at $240,000. *Id.* The Xpera Group valued the property in early 2016 to be between $594,000 and $630,000, and recommended that the Property be "sold now 'as is.'" *Id.*

In January and August 2015, the Lansing Companies ("Lansing") sent letters of intent to purchase the Property. ECF No. 1515-1 at 2. The Receiver declined those offers. *Id.* Lansing contacted the Receiver in 2016 and proposed to enter into a joint venture to develop the property, and with authorization from the Court, the Receiver had CBRE analyze the proposal. *Id.* at 3. CBRE recommended that the proposal be declined, and the Receiver agreed; the Court accepted that recommendation. *Id.*

In December 2016, Lansing sent the Receiver an unsolicited letter of intent to purchase the property for $600,000. *Id.* In accordance with the Court-approved modified Orderly Sale procedures, *see generally* ECF No. 1309, 1359, the Receiver sent notice of the offer to investors, and no substantive responses were received. *Id.* at 3. The Receiver countered Lansing's offer at $640,000, and Lansing accepted, subject to any overbids and this Court's approval. *Id.* Receiver and Lansing executed a Purchase and Sale Agreement, and on September 6, 2017, Lansing removed all contingencies other than this Court's approval. *Id.*

On October 12, 2017, the Receiver notified the Court that no qualified overbids had been received for the Property. ECF No. 1532.

**E**. **Conclusion**

The Court finds that the purchase price of $640,000 is reasonable in light of the fact that this price exceeds Xpera's valuation estimate range. Further counseling in favor of the reasonableness of this amount is the fact that no broker commission is due.

The Court is also satisfied that the Receiver has complied with the modified Orderly Sale procedures. The Receiver's notice of the sale adhered to the modified Orderly Sale procedures—which require that notice of the sale be published "in the county, state, or judicial district of the United States *wherein the realty is situated*," 28 U.S.C. § 2002 (emphasis added)—by publishing notice in the Reno Journal-Gazette, and by providing notice to the investors. Accordingly, and given that no opposition to the present Motion has been filed, or raised, and that no qualified overbid was received, the Court **GRANTS** Receiver's motion for approval of sale (ECF No. 1515).

**ORDER**

The Motion for Approval of Sale of Washoe V Property filed by Thomas C. Hebrank—the Court-appointed receiver for First Financial Planning Corporation d/b/a Western Financial Planning Corporation ("Western"), its subsidiaries and the General Partnerships listed in Schedule 1 to the Preliminary Injunction Order entered on March 13, 2013 (collectively, "Receivership Entities")—having been reviewed and considered by this Court, the Receiver having notified the Court that no qualified overbids have been received, and for good cause appearing therefore, the Court finds as follows:

1. The Motion is granted;
2. The sale of the Property known as the Washoe V Property, as described on Exhibit A to the Declaration of Thomas C. Hebrank in support of the Motion by Thomas C. Hebrank, as receiver for Pyramid Highway 177 Partners and Frontage 177 Partners, to the Lansing Companies is confirmed and approved;
3. The purchase price of $640,000 for the Washoe V Property is confirmed and approved; and
4. The Receiver is immediately authorized to complete the sale transaction, including executing any and all documents as may be necessary and appropriate to do so.

**IT IS SO ORDERED.**

Dated: October 19, 2017

Hon. Gonzalo P. Curiel
United States District Judge