UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>LOUIS V. SCHOOLER and FIRST FINANCIAL PLANNING CORPORATION d/b/a WESTERN FINANCIAL PLANNING CORPORATION,<br><br>　　　　　　　　　　　　Defendant. | Case No.: 3:12-cv-02164-GPC-JMA<br><br>**ORDER GRANTING REMAINING PORTION OF RECEIVER'S MOTION TO RESOLVE DISPUTED CLAIMS**<br><br>**[ECF No. 1545]** |

Before the Court is a portion of the Receiver's motion that this Court reserved for additional proceedings. (ECF No. 1545.) For the reasons explained below, the portion of that motion that remains pending is now GRANTED.

**I.　Background**

As indicated in the order issued on May 25, 2016, the Court has approved the Receiver's "one pot approach" and distribution plan, which determined investor claims "by the total payment made by each investor to the Receivership Entities, less all payments received by each investor from the Receivership Entities." (ECF No. 1304 at

31 (approving plan as discussed at Ex. E of ECF No. 1181-1).) As that proposed plan stated, "[a]fter all Administrative Claims have been paid in full, all Claimants shall receive Cash in an amount equal to such Claimant's Pro Rata Share of total Cash to be distributed to all Allowed Claims." (ECF No. 1181-1, Ex. E at 3.) Pursuant to that plan, the Receiver has conducted a forensic accounting of the funds raised by the Receivership Entities and how they were used. (ECF No. 1545-1 at 3.) After the Receiver computed each of the approximately 3,400 investors' claims and submitted to each investor a proposed claim amount, 21 investors submitted disputes. (*Id.* at 4.) The Receiver contacted each of those investors individually, and at the time of the instant motion, only six investors continued to dispute their claim amounts. (*Id.*)

On November 2, 2017, the Receiver filed this motion seeking three forms of relief: (1) resolution of the six disputed investor claim amounts; (2) approval of the proposed allowed claim amounts; and (3) authorization to dissolve the General Partnerships and related entities. (ECF No. 1545.) On December 1, 2017, the Securities and Exchange Commission (the "SEC") filed a statement indicating that it did not oppose any portion of the Receiver's motion. (ECF No. 1546.) Before the Court issued a ruling on the motion, investors Mary and John Jenkins filed a letter to the Court explaining why they were disputing the claim amount determined by the Receiver. (ECF No. 1556.) The Receiver filed a memorandum in response to the Jenkinses's letter on December 8, 2017. (ECF No. 1557.)

On December 11, 2017, the Court issued a ruling granting in part the pending motion. (ECF No. 1565.) In that ruling, the Court found good cause to grant the Receiver's request to dissolve and close the General Partnerships and related entities. (*Id.* at 3.) As for the request for approval of the disputed claim amounts, the Court explained that it wanted to offer the six investors who were disputing their claim amounts a clear opportunity to present their position that the Receiver had miscalculated the amount of their claims against the Receivership. (ECF No. 1569.) The Court scheduled a hearing for February 9, 2018, at which investors were invited to appear (in person, or

telephonically) and present such arguments. (*Id.* at 2.) The Court also set a briefing schedule in which it instructed the six investors disputing their claim amounts to "submit a letter explaining why he or she (or they) believe that the Receiver's proposed claim amount is incorrect," which "must be accompanied by evidence supporting the investor's argument." (*Id.*) The Court noted that it had received the previously submitted letter from the Jenkinses, but also indicated that "[i]f they wish to submit any other information, they may do so by the deadline" set forth in that order. (*Id.*) On December 18, 2017, the Receiver filed with the Court a proof of service indicating that he had served all six investors disputing their claim amounts with a copy of the Court's order setting the briefing schedule and scheduling the hearing. (ECF No. 1570.)

In response to its order setting this briefing schedule, the Court received letters from two investors: Sheri Gracelyn (ECF Nos. 1579, 1587) and Joseph F. and Carmen M. De Assis (ECF No. 1580). On February 2, 2018, the Receiver submitted a written response to these letters. (ECF No. 1588.) On February 9, 2018, the Court held the hearing, at which the De Assises appeared in person and investor Jeffrey Compangano appeared telephonically. (ECF No. 1590.) Based on the written and oral arguments and evidence presented to the Court, and for the reasons explained below, the Court is persuaded that claim amounts proposed by the Receiver are correctly calculated, with one exception as to investor Jean Dunham.

## II.   Discussion

As to each investor who has disputed the Receiver's proposed claim amount, the Court below discusses the information provided by the Receiver and any argument or evidence offered in response by that investor.

### a. Jean Dunham

Jean Dunham invested a total of $52,923 in Park Vegas Partners and Reno Partners. (ECF No. 1545-2 at 3.) Park Vegas Partners owns one of the three properties known as Las Vegas 1, which were sold in 2005 with seller financing provided to buyer, after which the Park Vegas investors received distributions from the sale proceeds. (*Id.*)

The buyer of the property later defaulted on the loan, and the Park Vegas Partners subsequently retook the property via foreclosure. (*Id.*) As a part of the sale, Mr. Dunham received $40,935 in distributions. (*Id.*) The Receiver calculated Mr. Dunham's claim amount at $11,988, which represented his $52,923 investment minus $40,935 received in distributions. (*Id.*)

According to the Receiver, Mr. Dunham disputes that he received $40,935 in distributions from the Las Vegas 1 sale, "but has provided no documentation indicating he received a different amount." (*Id.*) Though the Court requested that he submit a letter explaining his position with supporting evidence, Mr. Dunham did not submit anything to the Court, and he did not appear at the hearing.

In a signed and sworn declaration, the Receiver states that Western's accounting system—called OPADs—indicates a total distribution to Mr. Dunham in the amount of $40,935, which was paid in five separate checks. (*Id.*) The total of the five checks, however, is $40,934. (*See id.*) Because the Receiver has not indicated there is any reason to believe that Mr. Dunham received an additional dollar outside of the five referenced checks, the Court concludes that Mr. Dunham received $40,934 in distributions, not $40,935. Deducting that amount from Mr. Dunham's total investment, the Court concludes that Mr. Dunham's correct claim amount is **$11,989**.

### b. Mark and Gwen Wolf-Iwanowski

The Wolf-Iwanowskis made four investments in Lyons Valley Partners and Silver State Partners totaling $68,850, which represented $52,991 in initial investments and $15,859 in subsequent capital contributions. (*Id.* at 3–4.) Silver State Partners owns one of the Las Vegas 1 properties, and thus received distributions when those properties were sold. (*Id.* at 4.) The Wolf-Iwanowskis received $23,768 in distributions as a result. (*Id.*) The Receiver calculated the Wold-Iwanowskis's claim amount at $45,082, representing their $68,850 total investment less $23,768 in distributions.

The Wolf-Iwanowskis argue that they invested $87,541 in capital contributions rather than the $15,859 suggested by the Receiver. (*Id.*) They did not send any evidence

supporting their argument to the Receiver, and neither submitted evidence to this Court nor appeared at the hearing. (*Id.*) They contend, however, that their personal tax forms support their position that they made $87,541 in capital contributions. (*Id.*)

As the Receiver argues in his motion, self-prepared personal tax forms are not proper evidence of what amount an investor paid into a partnership. (*See id.*) Moreover, the Receiver has offered copies of the Lyons Valley Partners and Silver State Partners account histories showing a total of $15,859 in capital contributions received from the Wolf-Iwanowskis. (ECF No. 1545-2, Ex. B.)

Because the Wolf-Iwanowskis did not submit a letter to the Court and did not appear at the hearing, the only evidence available to the Court indicates that the Wolf-Iwanowskis made a total of no more than $15,859 in capital contributions. That amount, plus the $52,991 the Wolf-Iwanowskis made in initial investments, is $68,850, which represents the "total payment made" by the Wolf-Iwanowskis into the Receivership. Subtracting from that total the Wolf-Iwanowskis's distribution amount of $23,768, the correct claim amount is, as the Receiver suggests, **$45,082**.

### c. Sheri Gracelyn

The Receiver proposed to Sheri Gracelyn that her claim amount should be $45,000. (ECF No. 1545-1 at 7.) Ms. Gracelyn responded that she "disputes the Receiver's authority to sell GP properties." (*Id.*) In response to the Court's briefing schedule, Ms. Gracelyn submitted two letters. The first, dated January 9, 2018, states that she has been receiving letters about "selling some investment that I had," but she still did not "know what property we are talking about, or what [she is] expected to do." (ECF No. 1579.) In the second letter, dated January 24, 2018, Ms. Gracelyn wrote that she "now understand[s] which property is being liquidated and why, and [she is] in agreement to withdraw[ her] protest." (ECF No. 1587.) In light of Ms. Gracelyn's correspondence, the Court concludes that the Receiver's proposed amount of **$45,000** is the correct amount of Ms. Gracelyn's claim against the Receivership.

### d. John and Mary Jenkins

John and Mary Jenkins invested a total of $213,102, representing $187,950 in initial investments and $25,152 in subsequent capital contributions. (ECF No. 1545-2 at 5.) One of their investments was $30,000 in exchange for 30,000 units of Park Vegas Partners. After the Park Vegas property was sold in 2005 (and later retaken by the Park Vegas Partners via foreclosure), the Jenkinses received $60,652 in distributions. (*Id.*) In August and November of 2006, the Jenkinses sold some of their Park Vegas units back to Western for $73,095.

According to the Receiver, the OPADs system reflects that the Jenkinses currently hold 19,806.5216 units of Park Vegas. (*Id.*) That amount, however, does not reflect their 2006 sale of Park Vegas units to Western. (*Id.*) The sale is instead only "reflected in the comments section." (*Id.*) This caused the Receiver to miscalculate the Jenkinses's claim amount. The Receiver also was initially unaware of a payment of $6,425 made from Park Vegas to the Jenkinses because it was made to a new named payee, "Mary Jenkins, Trustee." (*Id.* at 5–6.) Missing this information, the Receiver initially proposed a claim amount of $140,082. (*Id.* at 6.) After discovering the additional distributions from Park Vegas, however, the Receiver revised his proposed claim amount to $79,355, representing the $213,102 in total investments, less $133,747 in total distributions.

Disputing the original proposed amount, the Jenkinses directed the Receiver to discuss the matter with their accountant. The Receiver's staff discussed the matter with the Jenkinses's accountant, and after reviewing the Receiver's information, "the Jenkins[es] have apparently abandoned their dispute regarding distributions they received from Park Vegas." (*Id.*) While the Jenkinses submitted a letter to the Court, dated November 30, 2017, they did not appear at the February 9 hearing. In their letter, the Jenkinses do not dispute that they sold the units of Park Vegas to Western; rather, they explain that they reinvested $70,000 of the distributions they received into Lahontant Partners and Cactus Ridge Partners. (ECF No. 1556.) As the Receiver explains, however, "the Jenkins have already been given credit for these [re]investments in the proposed allowed amount of their claim." (ECF No. 1557.) The $187,790 "total initial

investment" discussed above includes the $70,000 invested in Lahontan Partners and Cactus Ridge Partners. (*Id.*)

The Jenkinses have offered no evidence in response to the Receiver's argument that the reinvestment they discuss in their letter is included in their investment amount. As a result, the Court must conclude that the Receiver's proposed claim amount for the Jenkinses in the amount of **$79,355** is correct.

### e. Jeffrey Compangano

Jeffrey Compangano invested a total of $160,000, $35,000 of which was made into P-40 Warhawk Partners. (ECF No. 1545-2 at 8.) It does not appear that Mr. Compangano has received any distributions from the Receivership. The Receiver therefore proposed a claim amount of $160,000. Mr. Compangano disputes this amount by arguing that he made a $40,000 investment into P-40 Warhawk Partners rather than $35,000. (*Id.*) The Receiver's staff contacted Mr. Compangano and informed him that the "OPADs system, tax returns, and investor K-1s for P-40 Warhawk all reflect an investment of $35,000." (*Id.*) Mr. Campangano has not offered any evidence to the Receiver or the Court supporting his position. He did appear at the February 9 hearing, but did not offer any evidence in support of his position. In the absence of such evidence, the Court concludes that the Receiver's proposed claim amount of **$160,000** is correct.

### f. Joseph and Carmen De Assis

Joseph and Carmen De Assis together invested a total of $54,911, which consisted of $50,087 in initial investments and $4,824 in subsequent capital contributions. (*Id.*) One of these investments included $20,000 in Production Partners, which owns one of the Las Vegas 1 properties that was sold in 2005. (*Id.* at 8–9.) The De Assises received $17,766 in distributions as a result. (*Id.* at 9.) The Receiver proposed a claim amount of $37,145, which represented the $54,911 in total investments minus $17,766 in distributions. (*Id.*)

The De Assises disputed the Receiver's claim amount, and argued that the capital account stated on their K-1 tax statements should be the proper amount. (*Id.*) In a letter

to the Court, dated January 11, 2018, the De Assises echo this argument and offer copies of their K-1 tax forms from years 2006, 2007, 2008, 2010, 2011, 2012, 2013, and 2014. (ECF No. 1580.) The De Assises also appeared at the February 9 hearing to offer this argument. As discussed during the hearing, and argued by the Receiver, the K-1 tax forms offered by the De Assises would not show any distribution they received from the General Partnerships. (*See* ECF No. 1545-2 at 9.) In the absence of any other evidence suggesting that the De Assises did not receive such distributions, the Court concludes that the Receiver's proposed claim amount of **$37,145** is correct.

### III. Conclusion

For the reasons discussed above, the Court resolves the six disputed claims discussed in the Receiver's motion by approving the claim amounts as indicated below:

- **Jean Dunham: $11,989**
- **Mark and Gwen Wolf-Iwanowski: $45,082**
- **Sheri Gracelyn: $45,000**
- **John and Mary Jenkins: $79,355**
- **Jeffrey Compangano: $160,000**
- **Joseph and Carmen De Assis: $37,145**

Accordingly, the Court APPROVES the allowed claim amounts proposed by the Receiver in Exhibit A of his motion (ECF No. 1545-2 at Ex. A), with the exception that investor Jean Dunham's claim amount should be $11,989, not $11,988.

**IT IS SO ORDERED.**

Dated: February 20, 2018

Hon. Gonzalo P. Curiel
United States District Judge

8

3:12-cv-02164-GPC-JMA