1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>LOUIS V. SCHOOLER and FIRST FINANCIAL PLANNING CORPORATION, d/b/a WESTERN FINANCIAL PLANNING CORPORATION,<br><br>Defendants. | Case No.: 3:12-cv-02164-GPC-JMA<br><br>**ORDER GRANTING MOTION FOR AUTHORITY TO MAKE INTERIM DISTRIBUTIONS TO HOLDERS OF ALLOWED CLAIMS**<br><br>**[ECF No. 1594]** |

Before the Court is the Receiver's motion for authority to make interim distributions to holders of allowed claims. (ECF No. 1594.) The motion has not been opposed. On April 5, 2018, the SEC filed a non-opposition to the motion, stating, because the "Court has previously approved a distribution plan and approved the allowed amounts of investor claims," "[i]nvestors have been waiting over five years for some recovery on their losses, and the Receiver has cash on hand from property sales available to make distributions," the SEC "supports the Receiver's motion for authority to make an interim distribution and believes it is in the best interest of the investors." (ECF No.

1604.)  For the reasons set forth below, the Court GRANTS the motion for authority to make interim distributions to holders of allowed claims.

This Court entered final judgment against Defendant Louis Schooler on February 23, 2016.  (ECF No. 1190.)  Three months later, the Court approved the Distribution Plan proposed by the Receiver.  (ECF No. 1304.)  That plan involves a "one-pot approach," which includes determining investor claims "by the total payment made by each investor to the Receivership Entities, less all payments received by each investor from the Receivership Entities."  (*Id.* at 31 (approving plan as discussed at Ex. E of ECF No. 1181-1).)  As that proposed plan stated, "[a]fter all Administrative Claims have been paid in full, all Claimants shall receive Cash in an amount equal to such Claimant's Pro Rata Share of total Cash to be distributed to all Allowed Claims."  (ECF No. 1181-1, Ex. E at 3.)  Three months after that, the Court approved the Modified Orderly Sale Process by which the Receiver would sell properties owned by the receivership estate.  (ECF No. 1359.)  Since then, the Receiver has calculated the claim amounts of each investor, and has sold several properties.  The Receiver has been able to sell 13 properties so far, raising $17,492,013 in net sale proceeds.  (ECF No. 1594-1 at 3.)  As of March 7, 2018, the Receiver held $16,408,357 in cash receivership accounts.  (*Id.*)  Meanwhile, on February 20, 2018, after adjudicating the remaining disputed claim amounts, the Court approved the Receiver's proposed claim amounts with a single exception noted in that order.  (*See* ECF No. 1591.)

Having obtained significant cash amounts as a result of the property sales, the Receiver now proposes to distribute a total of $13 million, "which is the vast majority of cash in the receivership estate."  (ECF No. 1594-1 at 3.)  The remaining amount, according to the Receiver, will be held in reserve to cover operating expenses, administrative expenses, and "a reasonable contingency reserve."  (*Id.*)  Moreover, the Receiver is continuing to generate sale proceeds from property sales and "is hopeful that the full reserve amount will not be necessary to cover" expenses, in which case a subsequent distribution would be made.  (*Id.* at 4.)  Nonetheless, the Receiver believes

that maintaining a reasonable contingency reserve at this time is prudent in order to respond to "unanticipated expenses." (*Id.*) According to the Receiver, it will use an outside vendor to print and mail the distribution checks, which will done 45 days after the entry of this order. (*Id.*) As discussed in the distribution plan, the Receiver will conduct a reasonable investigation into checks that have not been cashed 90 days after they were issued; if contact cannot be made with the claimant after further inquiry, that claimant's amount will be "automatically and permanently extinguished and the uncashed distribution amount will go back into the reserve for future distribution." (*Id.*) As a result of this procedure, the Receiver states that he has "reminded investors throughout the case of the importance of informing the Receiver of any change to their contact information." (*Id.*) The Receiver argues that the other investors should not have to bear the expense of an extensive search to find a non-responsive investor claimant. (*Id.*)

  The "primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the district court for the benefit of creditors." *Secs. & Exch. Comm'n v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986). The Court possesses broad "power to supervise an equity receivership and to determine the appropriate action to be taken in the administration of the receivership." *Secs. & Exch. Comm'n v. Capital Consultants, LLC*, 397 F.3d 733, 750 (9th Cir. 2005). In light of these broad powers, and pursuant to the procedures approved by the Court in the previous orders mentioned above, it appears that the Receiver's request for authority to make an interim distribution to the investors is appropriate. In light of the fact that sufficient cash is now available, and that the investors in this case have waited over five years for some recovery on their losses related to this case, the Court approves of the Receiver's request for such authority. As a result, the Court **AUTHORIZES** the Receiver to distribute a total of $13 million to investors with allowed claims on a *pro rata* basis pursuant to the Distribution Plan approved by the Court, with the remaining cash in the Receivership to be held in reserve pending further orders of this Court.

//

3

3:12-cv-02164-GPC-JMA

**IT IS SO ORDERED.**

Dated: April 30, 2018

Hon. Gonzalo P. Curiel
United States District Judge