UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>LOUIS V. SCHOOLER and FIRST FINANCIAL PLANNING CORPORATION d/b/a WESTERN FINANCIAL PLANNING CORPORATION,<br><br>　　　　　　　　　　　　　Defendants. | Case No.: 3:12-CV-02164-GPC-JMA<br><br>**ORDER APPROVING SALE OF STEAD I PROPERTY AND AUTHORITY**<br><br>**[ECF No. 1643]** |

Before the Court is the Receiver's Motion for Approval of Sale of 42-Acre Portion of Stead I Property. ECF No. 1643. Plaintiff SEC filed a Statement of Non-Opposition to the Motion. ECF No. 1662. Based upon a review of the moving papers and the applicable law, the Court **GRANTS** the Receiver's motion.

## BACKGROUND

**A. The SEC Enforcement Action**

On January 21, 2016, the Court granted the SEC's motion for final judgment against Defendant Louis V. Schooler. ECF No. 1170. The SEC had initiated this civil action against Defendant Schooler and Western Financial Planning Corporation ("Western") four years earlier, on account of their practice of defrauding investors into

1

purchasing unregistered securities. *Id.* (citing Second Summary Judgment Order, ECF No. 1081). To carry out the scheme, Defendant Western bought undeveloped real estate, with cash or through financing, and simultaneously formed one or more General Partnerships ("GPs") to own the land. First Summary Judgment Order, ECF No. 1074 at 10. Western then sold General Partnership units to investors and sold the undeveloped real estate to the General Partnerships. *Id.* at 10. In total, Western raised approximately $153 million from almost 3,400 investors through implementing this scheme. *Id.*

**B. The Decline of the General Partnership Assets**

In 2013, the Court-appointed Receiver, Thomas Hebrank, engaged licensed appraisers to value the 23 properties owned by the General Partnerships. ECF No. 203 at 2. Those professionals determined that the land was worth $16,328,000 and that the net appraised value (appraised value less outstanding balances on all mortgages) of the properties was $12,860,661. *Id.* The net appraised value represented just 8.41% of the total funds that the general partners had invested in the land. *Id.* The Receiver further estimated that, based on the then-current appraised values of the land, the average GP investor would suffer an 88.40% loss if the GP properties were sold in 2013. *Id.*

Three years later, soon after final judgment was entered, the Receiver moved for authority to conduct an Orderly Sale of the General Partnership Properties ("Orderly Sale"). Motion for Orderly Sale, ECF No. 1181-1. In the Motion, the Receiver indicated that the aggregate value in the GP accounts had been steadily decreasing while litigation was ongoing. *See id.* In September 2012, the Receivership had assets of $6.6 million. *Id.* at 1. By the end of 2015, the assets had dropped to $3.5 million, and the Receiver had reason to believe that the value of the Receivership would continue to drastically decrease through the end of 2016.[1] This decline, he noted, was due to three main factors:

---

[1] The Receiver provided the Court with projections that the Receivership would further decline to $1.8 million by the end of 2016. Indeed, the Receiver's projection has since proved to be accurate. The Twentieth Interim Status Report submitted by the Receiver indicates that the Receivership's current cash and cash equivalent balance was $666,113. ECF No. 1505 at 17.

2

(1) 14 of the 23 properties were not appreciating in value[2]; (2) the properties were not worth enough to cover the costs of the GPs carrying the properties; and (3) low levels of investor contributions to pay GP administrator fees, tax preparation fees, property taxes, property insurance premiums, and notes owed to Western. *See id.* at 1-2. In other words, the Receiver concluded, because the money being spent to hold the GP properties was disproportionately high in relation to the value of the GP's real estate assets, the Receivership was in a steady decline. *Id.*

In order to prevent the value of the Receivership from falling into further decline, the Receiver proposed that the GP properties be sold in accordance with Court-approved orderly sale procedures. *Id.* The Receiver's proposal explained that the best way to maximize the value of all of the GP assets for the benefit of all investors, irrespective of any given investors' direct property interest, was to initiate an orderly sale of the GP properties. *Id.* The Receiver estimated that the Receivership, after conducting sales of the GP properties, Western's properties and asset recovery, would be worth $21,804,826. *Id.* at 16.

**C. The Receiver's Motion for Orderly Sale**

On May 20, 2016, the Court held a hearing on the Receiver's Motion for Orderly Sale, at which time the Court heard from the SEC, Defendant, the Receiver, and the investor-interveners — that is, those investors who were granted permission under Rule 23 to intervene to oppose the Receiver's Motion. *See* ECF No. 1298. A short time thereafter, on May 25, 2016, the Court approved, in part, the Receiver's Orderly Sale process.[3] ECF No. 1304.

---

[2] By way of example, the Receiver notes that the value of these 14 properties in 2016, $3,732,815, was about $400,000 less than their value in 2013, $4,137,000. *Id.* at 2.

[3] The Court directed the Receiver to file a Modified Orderly Sale Process that incorporated the public sale process consistent with the requirement of 28 U.S.C. § 2001. ECF No. 1304. The Receiver filed a modified proposal on June 8, 2016 (ECF No. 1309) and the Court approved the modified proposal on August 30, 2016 (ECF No. 1359).

In approving the Orderly Sale, the Court addressed and evaluated the concerns expressed by the Receiver, the SEC, and myriad investors, all of whom held differing positions on whether the Orderly Sale would benefit the Receivership estate. *See generally* ECF Nos. 1181 (Motion for Orderly Sale), 1232 (SEC Response), 1234 (Dillon Investors' Response), 1235 (Graham Investors' Response); *see also, e.g.*, ECF Nos. 1240, 1242, 1244, 1249-1257 (Letters from Investors). The Court also took into consideration the recommendations of the investors' experts, as set forth in the Xpera Report. *See* ECF No. 1304 at 16. The Xpera Report, the Court noted, substantially agreed with the Receiver on how to maximize the value of the Receivership estate and, for the most part, agreed on the appraised value of the various GP properties. *Id.* As such, the Court directed the Receiver, where feasible, to incorporate the recommendations of the Xpera Report into his ultimate Orderly Sale proposal. *Id.* at 19.

On July 22, 2016, the Receiver moved for permission to engage CBRE, a real estate brokerage firm, as a consultant in order to weigh the pros and the cons of the Xpera Report. ECF No. 1341-1. The Court granted the Receiver's motion on August 30, 2016. ECF No. 1359. CBRE presented its findings on the GP properties on October 24, 2016. ECF No. 1419 (filed under seal). On November 22, 2016, the Receiver submitted a report evaluating the Xpera Report recommendations. ECF No. 1405. The Court reviewed the Receiver's report and adopted the recommendations contained therein on December 12, 2016. ECF No. 1423.

**D. Stead I Property**

The Stead I property is approximately 106 acres of undeveloped land in Washoe County, Nevada. ECF No. 1643-1 at 1. The Stead I Property consists of 12 parcels that are divided by two streets and a rail line. *Id.* Prior to being transferred to the Qualified Settlement Fund Trust, 50% of the Stead I Property was held by two General Partnerships, P-39 Partners and P-40 Partners. *Id.* The remaining 50% was held by P51, LLC, a holding accompany wholly owned by Western Financial Planning Corporation. *Id.*

Since the Receiver was appointed, the Stead I Property has been appraised several times. In 2013, the Receiver obtained an appraisal of $395,000.00. ECF No. 1405, Ex. A. In 2015, the Stead I Property's value was estimated to be $420,000.00. *Id.* In 2016, Xpera Group valued the Stead I Property between $1,584,000.00 and $3,168,000. ECF No. 1245-1 at 63-64. This valuation was based on dividing the property into small parcels that would be sold individually over several years. *Id.* On the other hand, CBRE recommended that the Stead I Property be sold "as is" with an estimated value of $860,600.00, rather than incurring the expense of dividing the property into smaller parcels. ECF No. 1405, Ex. A.

The Receiver first received an unsolicited offer from the Lansing Companies, LLC. ECF No. 1643-1 at 2. Lansing offered to purchase 42 acres of the Stead I Property for $1,000,000.00. *Id.* The Receiver notified the investors of this offer and negotiated sale terms with Lansing. *Id.* The Receiver and Lansing agreed on a purchase price of $1,100,000.00 for the 42 acre parcel, along with $66,000.00 Lansing would pay to its broker. *Id.*

The Receiver then requested approval from the Court of the sale to Lansing. *Id.* Along with this request, the Receiver informed the Court that it would conduct a public auction consistent to the requirements of 28 U.S.C. § 2001(a). ECF No. 1643-1 at 7. The Receiver asserted that it would publish a notice of sale once a week for four weeks in the Reno Journal-Gazette and conduct a live public auction on September 6, 2018. *Id.* at 7-8. Moreover, the Receiver informed all interested persons of the opportunity to overbid at the public auction as long as they qualified themselves to bid by the bid qualification deadline of September 4, 2018. *Id.* at 8.

On September 5, 2018, the Receiver filed a Notice of Receipt of Qualified Overbid. ECF No. 1659. PEFLP, LLC, submitted a bid of $1,282,600.00 for the 42-acre portion of the Stead I Property. *Id.* The auction was rescheduled to September 11, 2018, as agreed upon by both bidders so that they could be available to attend in person. ECF No. 1660 at 1 n.1. At the auction, Lansing informed the Receiver that it would not bid

5

3:12-CV-02164-GPC-JMA

further for the 42-acre parcel, making PEFLP's bid of $1,282,600.00 the winning bid. *Id.* at 2. The Receiver now asks the Court to approve the sale of the 42-acre portion of the Stead I Property to PEFLP for $1,282,600.00.

**E**. **Conclusion**

The Court finds that the purchase price of $1,282,600.00 is reasonable. This price for 42 acres of the 106-acre property is much higher than the multiple appraisals of the entire Stead I Property that the Receiver obtained. Moreover, this purchase price is consistent with Xpera's valuation of $30,000.00 per acre based on dividing the Stead I Property into small parcels and selling them one by one.

The Court is also satisfied that the Receiver has complied with the modified Orderly Sale procedures. The Receiver's notice of the sale adhered to the modified Orderly Sale procedures—which require that notice of the sale be published "in the county, state, or judicial district of the United States *wherein the realty is situated*," 28 U.S.C. § 2002 (emphasis added)—by publishing notice in the Reno Journal-Gazette and by providing notice to the investors. Accordingly, and given that no opposition to the present Motion has been raised, the Court **GRANTS** Receiver's motion for approval of sale.

## ORDER

The Motion for Approval of Sale of 42-Acre Portion of Stead I Property filed by Thomas C. Hebrank—the Court-appointed receiver for First Financial Planning Corporation d/b/a Western Financial Planning Corporation, its subsidiaries, and the General Partnerships listed in Schedule 1 to the Preliminary Injunction Order entered on March 13, 2013—having been reviewed and considered by this Court, as well as the Receiver's Notice of Receipt of Qualified Overbid and Notice of Results of Auction, and for good cause appearing therefore, the Court finds as follows:

1. The Motion is granted;
2. The sale of the 42-acre portion of the property known as Stead I, as described in Exhibit A to the Notice of Results of Action ("Property"), by Thomas C.

1 | Hebrank, as receiver for P-39 Partners, P-40 Partners, and P51, LLC, to PEFLP, LLC is
2 | confirmed and approved.
3 |     3.    The purchase price of $1,282,600.00 for the Property is confirmed and
4 | approved;
5 |     4.    The Receiver is immediately authorized to complete the sale transaction,
6 | including executing any and all documents as may be necessary and appropriate to do so.
7 | **IT IS SO ORDERED.**
8 | Dated: September 17, 2018

_(signature)_
Hon. Gonzalo P. Curiel
United States District Judge