UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>LOUIS V. SCHOOLER and FIRST FINANCIAL PLANNING CORPORATION d/b/a WESTERN FINANCIAL PLANNING CORPORATION,<br><br>Defendants. | Case No.: 3:12-cv-2164-GPC-JMA<br><br>**ORDER GRANTING:**<br><br>**(1) RECEIVER'S TWENTY-SIXTH INTERIM FEE APPLICATION; AND**<br><br>**[ECF No. 1709]**<br><br>**(2) ALLEN MATKINS' TWENTY-SIXTH INTERIM FEE APLICATION**<br><br>**[ECF No. 1710]** |

Before the Court are fee applications filed by the court-appointed receiver Thomas C. Hebrank (the "Receiver") and counsel to the Receiver, Allen Matkins Leck Gamble Mallory & Natsis LLP. ECF Nos. 1709, 1710. No oppositions have been filed. The Court finds these motions suitable for disposition without oral argument pursuant to Civil Local Rule 7.1(d)(1).

**I. BACKGROUND**

    **A.**    **Receiver**

1

In the Twenty-Sixth Interim Fee Application, the Receiver asserts that he incurred $49,131.00 in fees and $681.41 in costs for the application period covering October 1, 2018 through December 31, 2018 ("Twenty-Sixth Application Period"). ECF No. 1709 at 1. The breakdown of the fees amassed is as follows:

| Category | Total |
| --- | --- |
| General Receivership | $247.50 |
| Asset Investigation & Recovery | $0.00 |
| Reporting | $1,084.50 |
| Operations & Asset Sales | $24,291.00 |
| Claims & Distributions | $23.508.00 |
| Legal Matters & Pending Litigation | $0.00 |
| **Total** | $49,131.00 |

*Id.* at 2–4. Receiver now seeks payment of 80% of fees incurred, amounting to $39,304.80, and 100% of the costs, which account for postage and copies. ECF No. 1709, Ex. C.

### B. Allen Matkins

In the Twenty-Sixth Interim Fee Application, Allen Matkins asserts that it incurred $23,123.05 in fees and $234.63 in costs during the Twenty-Sixth Application Period. ECF No. 1710 at 2. The breakdown of the fees amassed is as follows:

| Category | Total |
| --- | --- |
| General Receivership | $1,293.75 |
| Reporting | $1,656.00 |
| Operations & Asset Sales | $13,490.05 |
| Claims & Distributions | $1,138.50 |
| Third Party Recoveries | $4,095.75 |
| Employment/Fees | $1,449.00 |

| Total | 23,123.05 |
|---|---|

*Id.* Receiver now seeks payment of 80% of fees incurred, amounting to $18,498.44, and 100% of the costs, which were incurred for shipping, messenger service fees, and document searches. ECF No. 1710, Ex. A at 14–15.

## II. LEGAL STANDARD

"[I]f a receiver reasonably and diligently discharges his duties, he is entitled to fair compensation for his efforts." *Sec. & Exch. Comm'n v. Elliott*, 953 F.2d 1560, 1577 (11th Cir. 1992). "The court appointing [a] receiver has full power to fix the compensation of such receiver and the compensation of the receiver's attorney or attorneys." *Drilling & Exploration Corp. v. Webster*, 69 F.2d 416, 418 (9th Cir. 1934). A receiver's fees must be reasonable. *See In re San Vicente Med. Partners Ltd.*, 962 F.2d 1402, 1409 (9th Cir. 1992).

As set forth in the Court's prior fee orders, *see, e.g.*, ECF No. 1167, the Court will assess the reasonableness of the requested fees using the factors enumerated in *Sec. & Exch. Comm'n v. Fifth Avenue Coach Lines*, 364 F. Supp. 1220, 1222 (S.D.N.Y. 1973) and *In re Alpha Telcom, Inc.*, 2006 WL 3085616, at *2–3 (D. Or. Oct. 27, 2006). Those factors include: (1) the complexity of the receiver's tasks; (2) the fair value of the receiver's time, labor, and skill measured by conservative business standards; (3) the quality of the work performed, including the results obtained and the benefit to the receivership estate; (4) the burden the receivership estate may safely be able to bear; and (5) the Commission's opposition or acquiescence. *See Fifth Avenue Coach Lines*, 364 F. Supp. at 1222; *Alpha Telecom*, 2006 WL 3085616, at *2–3.

## III. DISCUSSION

### A. Complexity of Tasks

#### 1. Receiver

The Court finds that the tasks performed by the Receiver during the Twenty-Sixth Application Period were moderately complex. The Receiver undertook the following tasks during the relevant period:

- handling general administrative matters, including reviewing mail, email, and other correspondence directed to the Receivership Entities;
- administering the bank accounts of the Receivership Entities;
- reviewing and approving expenditures;
- maintaining and updating the Receiver's website with case information, documents, and filing inquiries;
- preparing Receiver's Twenty-Fifth interim report;
- managing and overseeing the GPs' operations and real properties;
- managing and overseeing Western's operations;
- performing accounting functions of the Receivership Entities;
- managing and overseeing tax reporting for Receivership Entities;
- managing and overseeing loan payments and overall cash management;
- obtaining listing agreements and marketing properties for sale with brokers;
- analyzing, negotiating, and accepting purchase offers;
- closing property sales
- sending monthly case update reports to investors listing major legal filings, property sales activity, court rulings, tax, and other information;
- listing and responding to sales activity on the various properties; and
- filing motions to sell properties.

ECF No. 1709 at 2–3.

**2. Allen Matkins**

The Court finds that the tasks performed by Allen Matkins during the Twenty-Fourth Application Period were somewhat complex. Counsel undertook the following tasks during this period:

- assisting the Receiver to communicate with the SEC regarding issues related to the pending appeal of the final judgment against Louis Schooler;
- assisting in discussions with the SEC regarding the Receiver's accounting and the revised calculation of the proposed disgorgement amount under the Final Judgment;
- preparing the Receiver's Twenty-Fifth Interim Report;
- assisting the Receiver with legal issues relating to the ongoing operations of Western and the GPs, including sales of receivership properties, easement and condemnation issues, and issues relating to property taxes and assessments;

- advising the Receiver regarding legal issues pertaining to GP properties, including assisting with addressing and removing liens, working on letters of intent and purchase and sale agreements, and preparing notices to investors regarding offers received for properties;
- assisting in addressing issues with investor distributions;
- assisting in preparing monthly case updates to investors and responding to direct inquiries from investors;
- communicating with the post-judgment receiver and the broker for the LinMar III property regarding efforts to finalize an office lease, build out the leased space, and sell the property;
- communicating with SEC regarding the release of its lien on the property; and
- assisting the Receiver in preparing his Twenty-Fifth Interim Fee Application.

ECF No. 1710 at 3–6.

### B. Fair Value of Time, Labor, and Skill

The Receiver billed his time at $247.50 per hour and the time of those working for him at $180.00 per hour during the Twenty Fourth Application Period. ECF No. 1709 at 2–4. Allen Matkins billed its time at $325.00 to $525.00 per hour, with the majority of work being billed at $517.50 per hour. ECF No. 1710, Ex. A.

The Court continues to find, as it has in previous fee orders, that the rates charged by the Receiver and Allen Matkins are comparable to rates charged in this geographic area and therefore represent a fair value of the time, labor, and skill provided.

### C. Quality of Work Performed

The Court finds that the quality of work performed by the Receiver and Allen Matkins to be above average. The Receiver has, and continues to, competently operate the Receivership as evidenced by Receiver's Twenty-Sixth Status report, ECF No. 1700, while at the same time marshalling assets to support its continued financial integrity. These actions benefit all investors. The Receiver and his counsel have complied with the Court's orders and have made every effort to protect investors' interests in the GP properties during the pendency of this litigation.

### D. Receivership Estate's Ability to Bear Burden of Fees

On August 30, 2016, the Court approved the Receiver's Modified Orderly Sale Process, ECF No. 1359, and the use of the One Pot approach to distribute receivership assets, ECF No. 1304 at 31. These actions were taken for the dual purpose of increasing the value of the receivership estate by selling GP properties and lowering administrative costs. *Id.* at 30.

Allen Matkins indicates that the receivership currently holds approximately $7.5 million in cash. ECF No. 1710 at 9. The Court finds that the Receivership estate has sufficient ability to bear the instant fee requests.

### E. Commission's Opposition or Acquiescence

While the Commission does not expressly approve of the fee applications as reasonable, the Receiver represents that the Commission has expressed its non-opposition to the fee application. ECF No. 1709 at 6. The Court will accept this representation.

## IV. CONCLUSION

Considering the above five factors together, and considering that "[i]nterim fees are generally allowed at less than the full amount," *Alpha Telcom*, 2006 WL 3085616, at *2–3, the Court awards fees and costs as set forth in the following table:

| Applicant | Fees Allowed | % of Fees Incurred[1] | Costs Allowed | % of Costs Requested |
|---|---|---|---|---|
| Receiver | $39,304.80 | 80 | $681.41 | 100 |
| Allen Matkins | $18,498.44 | 80 | $234.63 | 100 |

### ORDER

After a review of the parties' submissions, the record in this matter, and the applicable law, and for the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. The Receiver's Twenty-Sixth Interim Fee Application, ECF No. 1709, is **GRANTED**; and

---

[1] The Court includes the percentage of fees *incurred* rather than a percentage of the fees requested, given that the Receiver and Allen Matkins request only a percentage of their actual fees.

6

2. Allen Matkins' Twenty-Sixth Interim Fee Application, ECF No. 1710, is **GRANTED**.

**IT IS SO ORDERED**.

Dated: June 14, 2019

Hon. Gonzalo P. Curiel
United States District Judge