1
2
3
4
5
6
7

8          UNITED STATES DISTRICT COURT

9          SOUTHERN DISTRICT OF CALIFORNIA

10

11  SECURITIES AND EXCHANGE              Case No.:  3:12-cv-2164-GPC-JMA
    COMMISSION,
12
                                         **ORDER GRANTING MOTION FOR**
                        Plaintiff,       **AUTHORITY TO MAKE SECOND**
13                                       **INTERIM DISTRIBUTION TO**
    v.                                   **HOLDERS OF ALLOWED CLAIMS**
14
    LOUIS V. SCHOOLER and FIRST
15  FINANCIAL PLANNING                   **[ECF No. 1714]**
    CORPORATION d/b/a WESTERN
16  FINANCIAL PLANNING
    CORPORATION,
17
18                      Defendants.

19

20

21

22      In March 2018, the Receiver previously sought and was granted authority to

23  distribute a total of $13 million to the holders of allowed claims.  ECF Nos. 1594, 1610.

24  Since then, the Receiver has been able to sell further properties pursuant to the Modified

25  Orderly Sale Process and has accumulated approximately $8.1 million in cash in the

26  receivership estate.

27      The Receiver now seeks authority to make a second interim distribution totaling $6

28  million to holders of allowed claims.  ECF No. 1714.  The motion has not been opposed.

On April 22, 2019, the SEC filed a non-opposition to the motion, stating it supported the Receiver's motion because the "payment of an interim distribution to injured investors of $6 million with a holdback of $2.1 million to cover operating expenses, administrative expenses, and a reasonable contingency reserve appears to be both reasonable in light of the current posture of this matter and in the best interest of investors." ECF No. 1716. For the reasons set forth below, the Court **GRANTS** the motion for authority to make a second interim distribution to holders of allowed claims.

This Court entered an initial final judgment against Defendant Louis Schooler on February 23, 2016 and a revised final judgment against Defendant Louis Schooler on June 4, 2019. ECF Nos. 1190 and 1724. Three months after the initial final judgment, the Court approved the Distribution Plan proposed by the Receiver. ECF No. 1304. That plan involves a "one-pot approach," which includes determining investor claims "by the total payment made by each investor to the Receivership Entities, less all payments received by each investor from the Receivership Entities." *Id.* at 31 (approving plan as discussed at Ex. E of ECF No. 1181-1). As that proposed plan stated, "[a]fter all Administrative Claims have been paid in full, all Claimants shall receive Cash in an amount equal to such Claimant's Pro Rata Share of total Cash to be distributed to all Allowed Claims." ECF No. 1181-1, Ex. E at 3. Three months after that, the Court approved the Modified Orderly Sale Process by which the Receiver would sell properties owned by the receivership estate. ECF No. 1359. Since then, the Receiver has calculated the claim amounts of each investor and has sold several properties. The Receiver has been able to sell 24 properties so far, raising $22,418,073 in net sale proceeds. ECF 1714-1 at 3. In June 2018, pursuant to authorization from the Court, the Receiver issued distribution checks totaling $13 million to the holders of allowed claims. *Id.* The vast majority of those distribution checks (a total of $12,692,351) have been cashed by investors. ECF 1714-2 at 2.

Now, the Receiver proposes to distribute a total of $6 million at this time, "which is the vast majority of cash in the receivership estate." ECF No. 1714-1 at 3. According

3:12-cv-2164-GPC-JMA

to the Receiver, the remaining approximately $2.1 million will be held in reserve to cover operating expenses, administrative expenses, and "a reasonable contingency reserve." *Id.* Moreover, the Receiver is continuing to generate sale proceeds from property sales and "is hopeful that the full reserve amount will not be necessary to cover" expenses. *Id.* at 4. Nonetheless, the Receiver believes that maintaining a reasonable contingency reserve at this time is prudent in order to respond to "unanticipated expenses." *Id.* According to the Receiver, it will use an outside vendor to print and mail the approximately 3,307 checks to investors with allowed claims, which will be done 45 days after the entry of this order. *Id.* As discussed in the Distribution Plan, ECF No. 1181-1, Ex. E, the Receiver will conduct a reasonable investigation into checks that have not been cashed 90 days after they were issued; if contact cannot be made with the claimant after further inquiry, the claimant's amount will be "automatically and permanently extinguished and the uncashed distribution amount will go back into the reserve for future distribution." *Id.* As a result of this procedure, the Receiver states that he has "reminded investors throughout the case of the importance of informing the Receiver of any change to their contact information." *Id.* The Receiver argues that the other investors should not have to bear the expense of an extensive search to find a non-responsive investor claimant. *Id.*

The "primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the district court for the benefit of creditors." *Secs. & Exch. Comm'n v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986). The Court possesses broad "power to supervise an equity receivership and to determine the appropriate action to be taken in the administration of the receivership." *Secs. & Exch. Comm'n v. Capital Consultants*, LLC, 397 F.3d 733, 750 (9th Cir. 2005). In light of these broad powers, and pursuant to the procedures approved by the Court in the previous orders mentioned above, it appears that the Receiver's request for authority to make a second interim distribution to the investors is appropriate. As a result, the Court **AUTHORIZES** the Receiver to distribute a total of $6 million to investors with allowed claims on a *pro rata*

basis pursuant to the Distribution Plan approved by the Court, with the remaining cash in the Receivership to be held in reserve pending further orders of this Court.

**IT IS SO ORDERED.**

Dated:  June 14, 2019

Hon. Gonzalo P. Curiel
United States District Judge