UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                              Plaintiff,<br><br>v.<br><br>LOUIS V. SCHOOLER and FIRST FINANCIAL PLANNING CORPORATION d/b/a WESTERN FINANCIAL PLANNING CORPORATION,<br><br>                              Defendants. | Case No.: 3:12-cv-2164-GPC-JMA<br><br>**ORDER APPROVING SALE OF SANTA FE PROPERTIES AND AUTHORITY TO PAY BROKER'S COMMISSION AND VACATING HEARING**<br><br>**[ECF No. 1763, 1769]** |

    Before the Court is the Receiver's Motion for (A) Approval of Sale of Santa Fe Property, and (B) Authority to Pay Broker's Commission ("Motion") (ECF No. 1763) and the Receiver's Notice of Winning Bid for Santa Fe Property and Submission of Amended Proposed Order Approving Winning Bid and Back-Up Bid.  ECF No. 1769.  No opposition was filed.  Based upon a review of the moving papers and the applicable

law, the Court **GRANTS** the Receiver's Motion and approves the Amended Proposed Order Approving Winning Bid. The hearing on this matter set for July 17, 2020 is hereby **VACATED**.

# BACKGROUND

## A. The SEC Enforcement Action

On January 21, 2016, the Court granted the SEC's motion for final judgment against Defendant Louis V. Schooler. ECF No. 1170. The Court granted the SEC's motion for revised final judgment on June 4, 2019. ECF No. 1724. The SEC had initiated this civil action against Defendant Schooler and Western Financial Planning Corporation ("Western") four years earlier, on account of their practice of defrauding investors into purchasing unregistered securities. *Id.* (citing Second Summary Judgment Order, ECF No. 1081). To carry out the scheme, Defendant Western bought undeveloped real estate, with cash or through financing, and simultaneously formed one or more General Partnerships ("GPs") to own the land. First Summary Judgment Order, ECF No. 1074 at 10. Western then sold General Partnership units to investors and sold the undeveloped real estate to the General Partnerships. *Id.* at 10. In total, Western raised approximately $153 million from almost 3,400 investors through implementing this scheme. *Id.*

## B. The Decline of the General Partnership Assets

In 2013, the Court-appointed Receiver, Thomas Hebrank, engaged licensed appraisers to value the 23 properties owned by the General Partnerships. ECF No. 203 at 2. Those professionals determined that the land was worth $16,328,000 and that the net appraised value (appraised value less outstanding balances on all mortgages) of the properties was $12,860,661. *Id.* The net appraised value represented just 8.41% of the total funds that the general partners had invested in the land. *Id.* The Receiver further estimated that, based on the then-current appraised values of the land, the average GP investor would suffer an 88.40% loss if the GP properties were sold in 2013. *Id.*

Three years later, soon after final judgment was entered, the Receiver moved for authority to conduct an Orderly Sale of the General Partnership Properties ("Orderly Sale"). Motion for Orderly Sale, ECF No. 1181-1. In the Motion, the Receiver indicated that the aggregate value in the GP accounts had been steadily decreasing while litigation was ongoing. *See id.* In September 2012, the Receivership had assets of $6.6 million. *Id.* at 1. By the end of 2015, the assets had dropped to $3.5 million, and the Receiver had reason to believe that the value of the Receivership would continue to drastically decrease through the end of 2016.[1] This decline, he noted, was due to three main factors: (1) 14 of the 23 properties were not appreciating in value[2]; (2) the properties were not worth enough to cover the costs of the GPs carrying the properties; and (3) low levels of investor contributions to pay GP administrator fees, tax preparation fees, property taxes, property insurance premiums, and notes owed to Western. *See id.* at 1-2. In other words, the Receiver concluded, because the money being spent to hold the GP properties was disproportionately high in relation to the value of the GP's real estate assets, the Receivership was in a steady decline. *Id.*

In order to prevent the value of the Receivership from falling into further decline, the Receiver proposed that the GP properties be sold in accordance with Court-approved orderly sale procedures. *Id.* The Receiver's proposal explained that the best way to maximize the value of all of the GP assets for the benefit of all investors, irrespective of any given investors' direct property interest, was to initiate an orderly sale of the GP properties. *Id.* The Receiver estimated that the Receivership, after conducting sales of the GP properties, Western's properties and asset recovery, would be worth $21,804,826. *Id.* at 16.

---

[1] The Receiver provided the Court with projections that the Receivership would further decline to $1.8 million by the end of 2016. Indeed, the Receiver's projection has since proved to be accurate. The Twentieth Interim Status Report submitted by the Receiver indicates that the Receivership's current cash and cash equivalent balance is $666,113. ECF No. 1505 at 17.

[2] By way of example, the Receiver notes that the value of these 14 properties in 2016, $3,732,815, was about $400,000 less than their value in 2013, $4,137,000. *Id.* at 2.

### C. The Receiver's Motion for Orderly Sale

On May 20, 2016, the Court held a hearing on the Receiver's Motion for Orderly Sale, at which time the Court heard from the SEC, Defendant, the Receiver, and the investor-interveners—that is, those investors who were granted permission under Rule 23 to intervene to oppose the Receiver's Motion. *See* ECF No. 1298. A short time thereafter, on May 25, 2016, the Court approved, in part, the Receiver's Orderly Sale process.[3] ECF No. 1304.

In approving the Orderly Sale, the Court addressed and evaluated the concerns expressed by the Receiver, the SEC, and myriad investors, all of whom held differing positions on whether the Orderly Sale would benefit the Receivership estate. *See generally* ECF Nos. 1181 (Motion for Orderly Sale), 1232 (SEC Response), 1234 (Dillon Investors' Response), 1235 (Graham Investors' Response); *see also, e.g.*, ECF Nos. 1240, 1242, 1244, 1249-1257 (Letters from Investors). The Court also took into consideration the recommendations of the investors' experts, as set forth in the Xpera Report. *See* ECF No. 1304 at 16. The Xpera Report, the Court noted, substantially agreed with the Receiver on how to maximize the value of the Receivership estate and, for the most part, agreed on the appraised value of the various GP properties. *Id.* As such, the Court directed the Receiver, where feasible, to incorporate the recommendations of the Xpera Report into his ultimate Orderly Sale proposal. *Id.* at 19.

On July 22, 2016, the Receiver moved for permission to engage CBRE, a real estate brokerage firm, as a consultant in order to weigh the pros and the cons of the Xpera Report. ECF No. 1341-1. The Court granted the Receiver's motion on August 30, 2016. ECF No. 1359. CBRE presented its findings on the GP properties on October 24, 2016. ECF No. 1419 (filed under seal). On November 22, 2016, the Receiver submitted a

---

[3] The Court directed the Receiver to file a Modified Orderly Sale Process that incorporated the public sale process consistent with the requirement of 28 U.S.C. § 2001. ECF No. 1304. The Receiver filed a modified proposal on June 8, 2016 (ECF No. 1309) and the Court approved the modified proposal on August 30, 2016 (ECF No. 1359).

report evaluating the Xpera Report recommendations. ECF No. 1405. The Court reviewed the Receiver's report and adopted the recommendations contained therein on December 12, 2016. ECF No. 1423.

**D. Santa Fe Property**

The Santa Fe Property is comprised of 629 acres located in Santa Fe County, New Mexico, referred to as Assessor Parcel Nos. 11 ("APN") 980000642, 980000645 and 980000646. ECF No. 1763-2, Declaration of Thomas C. Hebrank ("Hebrank Decl.") ¶ 2. Several valuations of the Santa Fe Property have been done since the appointment of the Receiver. In 2013, with the Court's authorization, the Receiver obtained an appraisal of the Santa Fe Property estimating the value to be $630,000. ECF No. 1405, Ex. A at 13. In 2015, the Receiver obtained a second appraisal estimating the value to be $820,000. *Id.* In early 2016, Xpera Group valued the Santa Fe Property between $942,000 and $1,130,400, and expected that it would take two to three years to find an appropriate buyer for the property. ECF No. 1234-2 at 144-45.

The Santa Fe Property has been listed with licensed broker Tai Bixby ("Broker") since February 2016, but the Broker received no offers for many months after the Santa Fe Property was listed. The Receiver, in consultation with Broker, determined that gradually reducing the list price was the best course of action to generate more interest in the Property. Accordingly, the combined list price was gradually reduced until it reached $295,000, at which point an offer for $200,000 was received from Peter Smith and Francoise Smith ("Back-Up Bidder"). The Broker recommended acceptance of the offer at that time. Hebrank Decl. ¶ 3.

The Receiver states that the lack of interest in the Santa Fe Property when it was listed at a higher price is not immediately clear. Hebrank Decl. ¶ 4. However, the Receiver notes that the presence of gypsum soil deposits in the area surrounding the property, which apparently was not considered by the appraisers or Xpera Group, may have limited interest in the area. *Id.* Several prospective purchasers mentioned concerns

about this since concentrations of gypsum in soil can make development of a property difficult and can increase project risks and costs. *Id.*

The Receiver thereafter gave notice of the Buyer's offer to the investors and entered negotiations with Buyer. Hebrank Decl. ¶ 5. The Receiver and Buyer then executed a Purchase and Sale Agreement and Joint Escrow Instructions attached as Exhibit A to the Declaration of Thomas Hebrank in support of the Motion ("Back-Up Bidder PSA") subject to overbid and Court approval. ECF No. 1763-3. Buyer conducted its due diligence and removed all contingencies other than Court approval on May 14, 2020. Hebrank Decl. ¶ 5.

On May 20, 2020, the Receiver filed his Motion for (A) Approval of Sale of Santa Fe Property and (B) Authority to Pay Broker's Commission ("Motion") (ECF No. 1763), which seeks approval of the sale of the Santa Fe Property to the Back-Up Bidder for $200,000 pursuant to the Back-Up Bidder PSA. ECF No. 1763-3. In the Motion, the Receiver proposed a deadline for submission of qualified overbids by no later than June 22, 2020 ("Overbid Deadline").

The Receiver then published notice of the opportunity to overbid for the property in the Santa Fe New Mexican[4] for four consecutive weeks, pursuant to 28 U.S.C. §§ 2001(a) and 2002, as provided in the Motion. ECF No. 1763-1 at 8-10. On June 23, 2020, the Receiver filed Notice of the Receipt of a Qualified Overbid, stating that one qualified overbid had been received by the Overbid Deadline. ECF No. 1766. The overbid is from Lobco Investments, LLC ("Winning Bidder"), an entity owned by one of the investors in this case, in the amount of $215,000. The Winning Bidder and Receiver executed a Purchase and Sale Agreement ("Winning Bidder PSA"). ECF No. 1769-1.

---

[4] The Receiver notes that they had previously inadvertently stated that the notice of sale would be published in the *Yuma Sun* in the motion (ECF No. 1763-1 at 8). The notice was actually published in the *Santa Fe New Mexican*, which the Receiver states is a newspaper of general circulation in the area surrounding the Santa Fe Property as required by 28 U.S.C. § 2002. ECF No. 1769 at 2.

1    The Back-Up Bidder has informed the Receiver that they would not bid further for
2 the Property but would serve as the approved back-up bidder in case Winning Bidder
3 fails to close the sale transaction. ECF No. 1769 at 2. Accordingly, the Receiver
4 requests that the Court approve the sale to Winning Bidder at the price of $215,000
5 pursuant to the Winning Bidder PSA and authorize the Receiver to take the steps
6 necessary to close the sale. In the event Winning Bidder does not close the sale for any
7 reason, the Receiver asks that the Court approve the sale to Back-Up Bidder at the price
8 of $200,000 pursuant to the Back-Up Bidder PSA and authorize the Receiver to close the
9 sale to Back-Up Bidder.

### E. Conclusion

The Court finds that the purchase price of $215,000 is reasonable in light of the fact that the Santa Fe Property has been marketed since February 2016 and $215,000 is the best offer received. Hebrank Decl. ¶ 3.

The Court is also satisfied that the Receiver's notice of the sale adhered to the modified Orderly Sale procedures—which require that notice of the sale be published "in the county, state, or judicial district of the United States *wherein the realty is situated*," 28 U.S.C. § 2002 (emphasis added)—by publishing notice in the *Yuma Sun*, a newspaper of general circulation in Yuma County, and by providing notice to the investors.

Accordingly, and given that no opposition to the present Motion has been filed or raised, and no qualified overbid was received, the Court **GRANTS** Receiver's motion for approval of sale.

///
///
///
///
///
///
///

# ORDER

The Receiver's Motion for (A) Approval of Sale of Santa Fe Property, and (B) Authority to Pay Broker's Commission ("Motion") of Thomas C. Hebrank ("Receiver"), the Court-appointed receiver for First Financial Planning Corporation d/b/a Western Financial Planning Corporation ("Western"), its subsidiaries and the General Partnerships listed in Schedule 1 to the Preliminary Injunction Order entered on March 13, 2013 (collectively, "Receivership Entities"), having been reviewed and considered by this Court, as well as the Receiver's Notice of Receipt of Qualified Overbids (ECF No. 1766) and Notice of Winning Bid for Santa Fe Property ("Notice of Winning Bid") (ECF No.1769), and for good cause appearing therefore, the Court finds as follows:

1. The Court **GRANTS** Receiver's motion;

2. The sale of the property known as the Santa Fe Property, as described in Exhibit A to the Declaration of Thomas C. Hebrank in support of the Motion ("Property"), by Thomas C. Hebrank, as Receiver, to Lobco Investments, LLC ("Winning Bidder") is confirmed and approved;

3. The purchase price of $215,000 for the Property is confirmed and approved;

4. The Receiver is authorized to pay Broker Tai Bixby a commission of 10% of the gross sales price;

5. The Receiver is immediately authorized to complete the sale transaction, including executing any and all documents as may be necessary and appropriate to do so; and

6. In the event Winning Bidder fails to close the sale transaction pursuant to the Purchase and Sale Agreement and Joint Escrow Instructions attached to the Notice of Winning Bid as Exhibit A (ECF No. 1769-1), then the sale of the Property by the Receiver to Peter Smith and Francoise Smith ("Back-Up Bidder") pursuant to the Purchase and Sale Agreement and Joint Escrow Instructions attached as Exhibit A to the Declaration of Thomas Hebrank (ECF No. 1763-3) for $200,000 is approved, and the

1  Receiver is authorized to complete the sale to Back-up Bidder, including executing any
2  and all documents as may be necessary and appropriate to do so.

**IT IS SO ORDERED.**

Dated: July 6, 2020

Hon. Gonzalo P. Curiel
United States District Judge