UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>LOUIS V. SCHOOLER and FIRST FINANCIAL PLANNING CORPORATION d/b/a WESTERN FINANCIAL PLANNING CORPORATION,<br><br>　　　　　　　　　　　Defendants. | Case No.: 3:12-cv-2164-GPC-JMA<br><br>**ORDER APPROVING SALE OF SILVER SPRINGS SOUTH PROPERTY AND AUTHORITY TO PAY BROKER'S COMMISSION AND VACATING HEARING**<br><br>**[ECF No. 1781]** |

　　　Before the Court is the Receiver's Motion for (A) Approval of Sale of Silver Springs South Property ("Property"), and (B) Authority to Pay Broker's Commission ("Motion") (ECF No. 1781). No opposition was filed.  On August 25, 2020, Receiver filed a Notice of Non-Receipt of Qualified Overbids.  ECF No. 1783.  Based upon a

review of the moving papers and the applicable law, the Court **GRANTS** the Receiver's Motion. The hearing on this matter set for September 11, 2020 is hereby **VACATED**.

## BACKGROUND

### A. The SEC Enforcement Action

On January 21, 2016, the Court granted the SEC's motion for final judgment against Defendant Louis V. Schooler. ECF No. 1170. The Court granted the SEC's motion for revised final judgment on June 4, 2019. ECF No. 1724. The SEC had initiated this civil action against Defendant Schooler and Western Financial Planning Corporation ("Western") four years earlier, on account of their practice of defrauding investors into purchasing unregistered securities. *Id.* (citing Second Summary Judgment Order, ECF No. 1081). To carry out the scheme, Defendant Western bought undeveloped real estate, with cash or through financing, and simultaneously formed one or more General Partnerships ("GPs") to own the land. First Summary Judgment Order, ECF No. 1074 at 10. Western then sold General Partnership units to investors and sold the undeveloped real estate to the General Partnerships. *Id.* at 10. In total, Western raised approximately $153 million from almost 3,400 investors through implementing this scheme. *Id.*

### B. The Decline of the General Partnership Assets

In 2013, the Court-appointed Receiver, Thomas Hebrank, engaged licensed appraisers to value the 23 properties owned by the General Partnerships. ECF No. 203 at 2. Those professionals determined that the land was worth $16,328,000 and that the net appraised value (appraised value less outstanding balances on all mortgages) of the properties was $12,860,661. *Id.* The net appraised value represented just 8.41% of the total funds that the general partners had invested in the land. *Id.* The Receiver further estimated that, based on the then-current appraised values of the land, the average GP investor would suffer an 88.40% loss if the GP properties were sold in 2013. *Id.*

Three years later, soon after final judgment was entered, the Receiver moved for authority to conduct an Orderly Sale of the General Partnership Properties ("Orderly

Sale"). Motion for Orderly Sale, ECF No. 1181-1. In the Motion, the Receiver indicated that the aggregate value in the GP accounts had been steadily decreasing while litigation was ongoing. *See id.* In September 2012, the Receivership had assets of $6.6 million. *Id.* at 1. By the end of 2015, the assets had dropped to $3.5 million, and the Receiver had reason to believe that the value of the Receivership would continue to drastically decrease through the end of 2016.[1] This decline, he noted, was due to three main factors: (1) 14 of the 23 properties were not appreciating in value[2]; (2) the properties were not worth enough to cover the costs of the GPs carrying the properties; and (3) low levels of investor contributions to pay GP administrator fees, tax preparation fees, property taxes, property insurance premiums, and notes owed to Western. *See id.* at 1-2. In other words, the Receiver concluded, because the money being spent to hold the GP properties was disproportionately high in relation to the value of the GP's real estate assets, the Receivership was in a steady decline. *Id.*

In order to prevent the value of the Receivership from falling into further decline, the Receiver proposed that the GP properties be sold in accordance with Court-approved orderly sale procedures. *Id.* The Receiver's proposal explained that the best way to maximize the value of all of the GP assets for the benefit of all investors, irrespective of any given investors' direct property interest, was to initiate an orderly sale of the GP properties. *Id.* The Receiver estimated that the Receivership, after conducting sales of the GP properties, Western's properties and asset recovery, would be worth $21,804,826. *Id.* at 16.

/ / /

/ / /

---

[1] The Receiver provided the Court with projections that the Receivership would further decline to $1.8 million by the end of 2016. Indeed, the Receiver's projection has since proved to be accurate. The Twentieth Interim Status Report submitted by the Receiver indicates that the Receivership's current cash and cash equivalent balance is $666,113. ECF No. 1505 at 17.

[2] By way of example, the Receiver notes that the value of these 14 properties in 2016, $3,732,815, was about $400,000 less than their value in 2013, $4,137,000. *Id.* at 2.

**C. The Receiver's Motion for Orderly Sale**

On May 20, 2016, the Court held a hearing on the Receiver's Motion for Orderly Sale, at which time the Court heard from the SEC, Defendant, the Receiver, and the investor-interveners—that is, those investors who were granted permission under Rule 23 to intervene to oppose the Receiver's Motion. *See* ECF No. 1298. A short time thereafter, on May 25, 2016, the Court approved, in part, the Receiver's Orderly Sale process.[3] ECF No. 1304.

In approving the Orderly Sale, the Court addressed and evaluated the concerns expressed by the Receiver, the SEC, and myriad investors, all of whom held differing positions on whether the Orderly Sale would benefit the Receivership estate. *See generally* ECF Nos. 1181 (Motion for Orderly Sale), 1232 (SEC Response), 1234 (Dillon Investors' Response), 1235 (Graham Investors' Response); *see also, e.g.*, ECF Nos. 1240, 1242, 1244, 1249-1257 (Letters from Investors). The Court also took into consideration the recommendations of the investors' experts, as set forth in the Xpera Report. *See* ECF No. 1304 at 16. The Xpera Report, the Court noted, substantially agreed with the Receiver on how to maximize the value of the Receivership estate and, for the most part, agreed on the appraised value of the various GP properties. *Id.* As such, the Court directed the Receiver, where feasible, to incorporate the recommendations of the Xpera Report into his ultimate Orderly Sale proposal. *Id.* at 19.

On July 22, 2016, the Receiver moved for permission to engage CBRE, a real estate brokerage firm, as a consultant in order to weigh the pros and the cons of the Xpera Report. ECF No. 1341-1. The Court granted the Receiver's motion on August 30, 2016. ECF No. 1359. CBRE presented its findings on the GP properties on October 24, 2016. ECF No. 1419 (filed under seal). On November 22, 2016, the Receiver submitted a

---

[3] The Court directed the Receiver to file a Modified Orderly Sale Process that incorporated the public sale process consistent with the requirement of 28 U.S.C. § 2001. ECF No. 1304. The Receiver filed a modified proposal on June 8, 2016 (ECF No. 1309) and the Court approved the modified proposal on August 30, 2016 (ECF No. 1359).

report evaluating the Xpera Report recommendations. ECF No. 1405. The Court reviewed the Receiver's report and adopted the recommendations contained therein on December 12, 2016. ECF No. 1423.

### D. Silver Springs South Property

The Silver Springs South Property is comprised of 137.72 acres of undeveloped land, located in Lyon County, Nevada, and referred to as Assessor Parcel Nos. 018-421-04 through 018-421-06, 018-423-01 through 018-423-03, 018-431-01 through 018-431-15, 018-436-02, 018-436-03, 018-438-01, and 018-439-01 through 018-439-06. ECF. No. 1781-2, Declaration of Thomas C. Hebrank ("Hebrank Decl.") ¶ 2. Prior to being transferred to the Qualified Settlement Fund Trust (or QSF Trust), set up to hold title to the properties, the property was held by four General Partnerships: Lahontan Partners, Railroad Partners, Spruce Heights Partners, and Vista Del Sur Partners. *Id.*

Since the appointment of the Receiver, several valuations of the Property have been conducted. ECF No. 1781-1 at 2. In 2013, with the Court's authorization, the Receiver obtained an appraisal estimating the value of the Property to be $300,000. ECF No. 1405, Ex. A at 12. In 2015, the Receiver obtained a second appraisal estimating the value to be $440,000. *Id.* In early 2016, Xpera Group valued the property between $1,032,000 and $1,377,000. *Id.*

In October 2017, the Property was listed with licensed broker C.B. Richard Ellis ("CBRE") for $847,000. ECF No. 1781-1 at 2. Due to the lack of interest in the property, the list price was reduced until it reached $695,000. *Id.* In early February 2020, the investor that had previously purchased the Dayton IV property made an offer for the Property. *Id.* at 2-3. However, due to the COVID-19 pandemic, the investor withdrew that offer. *Id.* at 3. At the same time as that offer, Rainfield Marketing Group, Inc. ("Buyer") made a comparable offer. *Id.* The Receiver negotiated and executed a Purchase and Sale Agreement and Joint Escrow Instructions ("Agreement") with Buyer for the purchase price of $430,000. Hebrank Decl., ¶ 3. Shortly after the offer was received, the investors were provided notice via email. *Id.* ¶ 5.

On July 27, 2020, the Receiver filed his Motion, which seeks approval of the sale of the Property to Buyer for $430,000, pursuant to the Agreement. ECF No. 1781. In the Motion, the Receiver proposed a deadline for submission of qualified overbids, August 24, 2020 ("Overbid Deadline"). ECF No. 1781-1 at 8.

The Receiver then published notice of the opportunity to overbid for the property in the *Reno Journal-Gazette* for four consecutive weeks, pursuant to 28 U.S.C. §§ 2001(a) and 2002, as provided in the Motion. *Id.* at 5-8. On August 25, 2020, the Receiver filed Notice of Non-Receipt of Qualified Overbids Regarding the Motion. ECF No. 1783.

The Receiver requests that the Court approve the sale to Buyer at the price of $430,000, pursuant to the Agreement, and authorize the Receiver to take the steps necessary to close the sale.

**E. Conclusion**

The Court finds that the purchase price of $430,000 for the Silver Springs South Property is reasonable in light of the fact that the property has been marketed for 33 months and the purchase price is the best offer received. ECF No. 1768-1 at 7.

The Court is also satisfied that the Receiver's notice of the sale adhered to the modified Orderly Sale procedures—which require that notice of the sale be published "in the county, state, or judicial district of the United States *wherein the realty is situated*," 28 U.S.C. § 2002 (emphasis added)—by publishing notice in the *Reno Journal-Gazette*, a newspaper of general circulation in Lyon County, Nevada, and by providing notice to the investors.

Accordingly, and given that no opposition to the present Motion has been filed or raised, and no qualified overbid was received, the Court **GRANTS** Receiver's motion for approval of sale.

/ / /

/ / /

/ / /

# ORDER

The Receiver's Motion for (A) Approval of Sale of Silver Springs South Property, and (B) Authority to Pay Broker's Commission ("Motion") of Thomas C. Hebrank ("Receiver"), the Court-appointed receiver for First Financial Planning Corporation d/b/a Western Financial Planning Corporation ("Western"), its subsidiaries and the General Partnerships listed in Schedule 1 to the Preliminary Injunction Order entered on March 13, 2013 (collectively, "Receivership Entities"), having been reviewed and considered by this Court, the Receiver having notified the Court that no qualified overbids were received (ECF No. 1783), and for good cause appearing therefore, the Court finds as follows:

1. The Court **GRANTS** Receiver's motion;

2. The sale of the approximately 140 acres of undeveloped land known as the Silver Springs South Property, which is located in Lyon County, Nevada referred to as Assessor Parcel Nos. 018-421-04 through 018-421-06, 018-423-01 through 018-423-03, 018-431-01 through 018-431-15, 018-436-02, 018-436-03, 018-438-01, and 018-439-01 through 018-439-06, as described on Exhibit A to the Declaration of Thomas C. Hebrank in support of the Motion ("Property"), by Thomas C. Hebrank, as receiver, to Rainfield Marketing Group, Inc. is confirmed and approved;

3. The purchase price of $430,000 for the Property is confirmed and approved;

4. The Receiver is immediately authorized to complete the sale transaction, including executing any and all documents as may be necessary and appropriate to do so; and

5. The Receiver is authorized to pay broker CBRE a commission of 6% of the purchase price, or $25,800.

**IT IS SO ORDERED.**

Dated: September 1, 2020

Hon. Gonzalo P. Curiel
United States District Judge