1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                          Plaintiff,<br><br>v.<br><br>LOUIS V. SCHOOLER and FIRST FINANCIAL PLANNING CORPORATION d/b/a WESTERN FINANCIAL PLANNING CORPORATION,<br><br>                        Defendants. | Case No.: 3:12-cv-2164-GPC-JMA<br><br>**ORDER APPROVING SALE OF WASHOE III PROPERTY AND AUTHORITY TO PAY BROKER'S COMMISSION AND VACATING HEARING**<br><br>**[ECF No. 1797]** |

1

Before the Court is the Receiver's Motion for (A) Approval of Sale of Washoe III Property, and (B) Authority to Pay Broker's Commission ("Motion").  ECF No. 1797. On March 4, 2021, Receiver filed a Notice of Results from Auction for Washoe III Property and Submission of Amended Proposed Order Approving Winning Bid.  ECF No. 1802.  No opposition was filed.  Based upon a review of the moving papers and the applicable law, the Court **GRANTS** the Receiver's Motion and approves the Amended Proposed Order Approving Winning Bid.

The hearing on this matter set for March 12, 2021 is hereby **VACATED**.

## BACKGROUND

### A. The SEC Enforcement Action

On January 21, 2016, the Court granted the SEC's motion for final judgment against Defendant Louis V. Schooler.  ECF No. 1170.  The Court granted the SEC's motion for revised final judgment on June 4, 2019.  ECF No. 1724.  The SEC had initiated this civil action against Defendant Schooler and Western Financial Planning Corporation ("Western") four years earlier, on account of their practice of defrauding investors into purchasing unregistered securities.  *Id.* (citing Second Summary Judgment Order, ECF No. 1081).  To carry out the scheme, Defendant Western bought undeveloped real estate, with cash or through financing, and simultaneously formed one or more General Partnerships ("GPs") to own the land.  First Summary Judgment Order, ECF No. 1074 at 10.  Western then sold General Partnership units to investors and sold the undeveloped real estate to the General Partnerships.  *Id.* at 10.  In total, Western raised approximately $153 million from almost 3,400 investors through implementing this scheme.  *Id.*

### B. The Decline of the General Partnership Assets

In 2013, the Court-appointed Receiver, Thomas Hebrank, engaged licensed appraisers to value the 23 properties owned by the General Partnerships.  ECF No. 203 at 2.  Those professionals determined that the land was worth $16,328,000 and that the net appraised value (appraised value less outstanding balances on all mortgages) of the

properties was $12,860,661.  *Id.*  The net appraised value represented just 8.41% of the total funds that the general partners had invested in the land.  *Id.*  The Receiver further estimated that, based on the then-current appraised values of the land, the average GP investor would suffer an 88.40% loss if the GP properties were sold in 2013.  *Id.*

Three years later, soon after final judgment was entered, the Receiver moved for authority to conduct an Orderly Sale of the General Partnership Properties ("Orderly Sale").  Motion for Orderly Sale, ECF No. 1181-1.  In the Motion, the Receiver indicated that the aggregate value in the GP accounts had been steadily decreasing while litigation was ongoing.  *See id.*  In September 2012, the Receivership had assets of $6.6 million. *Id.* at 1.  By the end of 2015, the assets had dropped to $3.5 million, and the Receiver had reason to believe that the value of the Receivership would continue to drastically decrease through the end of 2016.[1]  This decline, he noted, was due to three main factors: (1) 14 of the 23 properties were not appreciating in value[2]; (2) the properties were not worth enough to cover the costs of the GPs carrying the properties; and (3) low levels of investor contributions to pay GP administrator fees, tax preparation fees, property taxes, property insurance premiums, and notes owed to Western.  *See id.* at 1-2.  In other words, the Receiver concluded, because the money being spent to hold the GP properties was disproportionately high in relation to the value of the GP's real estate assets, the Receivership was in a steady decline.  *Id.*

In order to prevent the value of the Receivership from falling into further decline, the Receiver proposed that the GP properties be sold in accordance with Court-approved orderly sale procedures.  *Id.*  The Receiver's proposal explained that the best way to maximize the value of all of the GP assets for the benefit of all investors, irrespective of

---

[1] The Receiver provided the Court with projections that the Receivership would further decline to $1.8 million by the end of 2016.  Indeed, the Receiver's projection has since proved to be accurate.  The Twentieth Interim Status Report submitted by the Receiver indicates that the Receivership's current cash and cash equivalent balance is $666,113.  ECF No. 1505 at 17.

[2] By way of example, the Receiver notes that the value of these 14 properties in 2016, $3,732,815, was about $400,000 less than their value in 2013, $4,137,000.  *Id.* at 2.

any given investors' direct property interest, was to initiate an orderly sale of the GP properties. *Id.* The Receiver estimated that the Receivership, after conducting sales of the GP properties, Western's properties and asset recovery, would be worth $21,804,826. *Id.* at 16.

### C. The Receiver's Motion for Orderly Sale

On May 20, 2016, the Court held a hearing on the Receiver's Motion for Orderly Sale, at which time the Court heard from the SEC, Defendant, the Receiver, and the investor-interveners—that is, those investors who were granted permission under Rule 23 to intervene to oppose the Receiver's Motion. *See* ECF No. 1298. A short time thereafter, on May 25, 2016, the Court approved, in part, the Receiver's Orderly Sale process.[3] ECF No. 1304.

In approving the Orderly Sale, the Court addressed and evaluated the concerns expressed by the Receiver, the SEC, and myriad investors, all of whom held differing positions on whether the Orderly Sale would benefit the Receivership estate. *See generally* ECF Nos. 1181 (Motion for Orderly Sale), 1232 (SEC Response), 1234 (Dillon Investors' Response), 1235 (Graham Investors' Response); *see also, e.g.*, ECF Nos. 1240, 1242, 1244, 1249-1257 (Letters from Investors). The Court also took into consideration the recommendations of the investors' experts, as set forth in the Xpera Report. *See* ECF No. 1304 at 16. The Xpera Report, the Court noted, substantially agreed with the Receiver on how to maximize the value of the Receivership estate and, for the most part, agreed on the appraised value of the various GP properties. *Id.* As such, the Court directed the Receiver, where feasible, to incorporate the recommendations of the Xpera Report into his ultimate Orderly Sale proposal. *Id.* at 19.

---

[3] The Court directed the Receiver to file a Modified Orderly Sale Process that incorporated the public sale process consistent with the requirement of 28 U.S.C. § 2001. ECF No. 1304. The Receiver filed a modified proposal on June 8, 2016 (ECF No. 1309) and the Court approved the modified proposal on August 30, 2016 (ECF No. 1359).

On July 22, 2016, the Receiver moved for permission to engage CBRE, a real estate brokerage firm, as a consultant in order to weigh the pros and the cons of the Xpera Report.  ECF No. 1341-1.  The Court granted the Receiver's motion on August 30, 2016. ECF No. 1359.  CBRE presented its findings on the GP properties on October 24, 2016. ECF No. 1419 (filed under seal).  On November 22, 2016, the Receiver submitted a report evaluating the Xpera Report recommendations.  ECF No. 1405.  The Court reviewed the Receiver's report and adopted the recommendations contained therein on December 12, 2016.  ECF No. 1423.

### D. Washoe III Property

The Washoe III Property includes approximately 1,670 acres of undeveloped land located in Washoe County, Nevada. ECF. No. 1797-2, Declaration of Thomas C. Hebrank ("Hebrank Decl.") ¶ 2. Prior to being transferred to the Qualified Settlement Fund Trust (or QSF Trust), set up to hold title to the properties, the property was held by Four General Partnerships: Antelope Springs, Spanish Springs View, Big Ranch, and Wild Horse.

Since the appointment of the Receiver, several valuations of the Washoe III Property have been conducted. In 2013, with the Court's authorization, the Receiver obtained an appraisal estimating the value of the property to be $600,000.  ECF No. 1405, Ex. A at 13.  In 2015, the Receiver obtained a second appraisal estimating the value to be $940,000.  *Id.*  In early 2016, Xpera Group valued the property between $1,505,889 and $5,019,630[4], depending on whether the property was sold in one transaction or divided into lots (in which case, the marketing time would be substantially increased). ECF No. 1245-1 at 61–62.

---

[4] The Receiver lists the Xpera Group valuation as ranging between "$1,000,000 - $5,000,000" in the Memorandum of Points and Authorities in Support of Receiver's Motion for (A) Approval of Sale of Washoe III Property and (B) Authority to Pay Broker's Commission. No. 1797-1 at 5.

3:12-cv-2164-GPC-JMA

1   The Washoe III Property ("Property") has been listed with licensed broker NAI

2 Alliance Carson City ("Broker") for the last four and a half years.  Hebrank Decl. ¶ 3.

3 Although the list price began at $1,670,000, due to lack of interest, the price was

4 periodically reduced until it reached $475,000.  *Id.*  At that point, two offers were

5 received.  *Id.*  The Receiver negotiated terms with both prospective buyers and signed a

6 Purchase and Sale Agreement and Joint Escrow Instructions with buyers Adam Ferran

7 and Creg Garcia.  *Id.*  Other offers received were invited to quality as overbidders.  *Id.*

8 On June 18, 2020, the Receiver filed a first Motion for (A) Approval of Sale of Washoe

9 III Property and (B) Authority to Pay Broker's Commission ("Prior Motion") (ECF No.

10 1765), which sought approval of the Property sale to Ferran and Garcia for the amount of

11 $550,00.  *Id.*; ECF No. 1765.

12   After the Prior Motion was filed, an overbid was received from ARJ Properties

13 LLC ("Buyer") and an auction was held.  Hebrank Decl. ¶ 3.  Buyer made the winning

14 bid of $710,000.  *Id.*  On July 24, 2020, the Court approved the sale to Buyer.  ECF No.

15 1780.  After the Court's order, Buyer refused to close the sale transaction, claiming that it

16 was unaware of a significant special assessment on the Property.  Hebrank Decl. ¶ 4.  The

17 Receiver maintains that the receivership was contractually entitled to the earnest money

18 deposit given that Buyer failed to close the sale transaction, but attempts to negotiate with

19 Buyer for the sale or release of the deposit from escrow to the receivership were

20 unsuccessful.  *Id.*

21   The Receiver then continued to market the property through Broker, but no offers

22 were received and the Receiver decided to reduce the price incrementally.  *Id.* ¶ 5.  In

23 November 2020, two offers were received, including one from Buyer at a significantly

24 reduced price.  *Id.*  The Receiver negotiated the terms with both prospective buyers and

25 signed a Purchase and Sale Agreement and Joint Escrow Instructions with buyer Marilyn

26 M. Chim, as trustee of the Marilyn M. Chim Living Trust, and/or assigns with a purchase

27 price of $335,000 ("Chim").  *Id.*

28

On February 5, 2021, the Receiver filed his Motion for (A) Approval of Sale of Washoe III Property and (B) Authority to Pay Broker's Commission ("Motion") (ECF No. 1797), which sought approval of the Washoe III Property sale to Chim for $350,000, pursuant to the Purchase and Sale Agreement.  ECF No. 1797-3.  In the Motion, the Receiver proposed a deadline for submission of qualified overbids, February 22, 2021 ("Overbid Deadline").

The Receiver then published notice of the opportunity to overbid for the property in the *Reno Journal-Gazett*e for four consecutive weeks, pursuant to 28 U.S.C. §§ 2001(a) and 2002, as provided in the Motion.  ECF No. 1797-1 at 12.  On February 23, 2021, the Receiver filed Notice of the Receipt of a Qualified Overbid, stating that two qualified overbids had been received by the Overbid Deadline.  ECF No. 1800.  The original buyer and overbidders agreed the resultant auction would be conducted via Zoom call on February 26, 2021.  One of the overbidders was Buyer, with whom the Receiver had negotiated special terms relating to the overbid given the dispute concerning the prior sale.  Hebrank Decl. ¶ 6.  Buyer had the winning bid in the amount of $515,000.  ECF No. 1802 at 2.  Chim had the second-highest bid in the amount of $505,000.  *Id.* at 3.  Reflecting the result of the auction, the Receiver and Buyer signed a Purchase and Sale Agreement ("Agreement").  *Id*. at 2.  The Receiver now asks the Court to approve the sale to Buyer at the price of $515,000, pursuant to the Agreement, and give the Receiver authorization to take the necessary steps to close the sale.  *Id.*  The Receiver also asks the Court to grant authority to approve payment of Broker's commission.  ECF No. 1797-1 at 8.

### E.  Conclusion

The Court finds that the purchase price of $515,000 is reasonable in light of the fact that the Washoe III Property has been marketed for four and a half years and $515,000 is the best offer received following the dispute between Buyer and Receiver that precluded the closing of the prior sale.  Hebrank Decl. ¶ 9; ECF No. 1802.  The Court also finds the agreement reasonable because the Receiver has taken steps to

prevent further disputes that led the previous transaction with Buyer to fall through. Hebrank Decl. ¶ 6.

The Court is also satisfied that the Receiver's notice of the sale adhered to the modified Orderly Sale procedures—which require that notice of the sale be published "in the county, state, or judicial district of the United States *wherein the realty is situated*," 28 U.S.C. § 2002 (emphasis added)—by publishing notice in the *Reno Journal-Gazette*, a newspaper of general circulation in Washoe County, and by providing notice to the investors. Accordingly, and given that no opposition to the present Motion has been filed or raised, the Court **GRANTS** Receiver's motion for approval of sale and authority to pay Broker's commission.

## <u>ORDER</u>

The Receiver's Motion for (A) Approval of Sale of Washoe III Property and (B) Authority to Pay Broker's Commission ("Motion") of Thomas C. Hebrank ("Receiver"), the Court-appointed receiver for First Financial Planning Corporation d/b/a Western Financial Planning Corporation ("Western"), its subsidiaries and the General Partnerships listed in Schedule 1 to the Preliminary Injunction Order entered on March 13, 2013 (collectively, "Receivership Entities"), having been reviewed and considered by this Court, as well as the Receiver's Notice of Receipt of Qualified Overbids (Dkt. 1800) and Notice of Results of Auction (Dkt. 1802), and for good cause appearing therefore, the Court finds as follows:

1.   The Motion is granted as provided herein;

2.   The sale of the property known as the Washoe III property, as described on Exhibit A to the Declaration of Thomas C. Hebrank in support of the Motion ("Property"), by Thomas C. Hebrank, as receiver, to ARJ Properties, LLC or its designee ("Buyer") is confirmed and approved;

3.   The purchase price of $515,000 for the Property is confirmed and approved;

3:12-cv-2164-GPC-JMA

4.     The Receiver is immediately authorized to complete the sale transaction, including executing any and all documents as may be necessary and appropriate to do so; and

5.     In the event Buyer fails to close the sale transaction pursuant to the Purchase and Sale Agreement and Joint Escrow Instructions (including the Amendment thereto) attached to the Notice of Results of Auction as Exhibit A, then the sale of the Property by the Receiver to Marilyn M. Chim, as Trustee of the Marilyn M. Chim Family Trust, or its designee ("Back-Up Bidder") pursuant to the Purchase and Sale Agreement and Joint Escrow Instructions (including the Amendment thereto) attached to the Notice of Results of Auction as Exhibit B for $505,000 is approved, and the Receiver is authorized to complete the sale to Back-up Bidder (or its designee), including executing any and all documents as may be necessary and appropriate to do so.

The Court further VACATES the hearing on this matter set for March 12, 2021.

**IT IS SO ORDERED.**

Dated:  March 8, 2021

Hon. Gonzalo P. Curiel
United States District Judge

3:12-cv-2164-GPC-JMA