**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SECURITES AND EXCHANGE COMMISSION,<br><br>　　　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>LOUIS V. SCHOOLER AND FIRST FINANCIAL PLANNING CORPORATION dba Western Financial Planning Corporation,<br><br>　　　　　　　　　　　　　Defendant. | Case No.:  12-CV-2164-GPC-JMA<br><br>**ORDER:**<br><br>**(1) GRANTING RECEIVER'S MOTION TO CONCLUDE RECEIVERSHIP;**<br><br>**(2) AUTHORIZING RECEIVER TO MAKE FINAL DISTRIBUTIONS TO APPROVED CLAIMANTS AND TO ESTABLISH RESERVE;**<br><br>**(3) APPROVING FINAL ACCOUNTING AND REPORT;**<br><br>**(4) APPROVING DISPOSITION OF BOOKS AND RECORDS; AND**<br><br>**(5) CONDITIONALLY DISCHARGING RECEIVER**<br><br>[ECF No.  1815] |

Before the Court is a motion to conclude the Receivership, filed by the court-appointed Receiver Thomas C. Hebrank (the "Receiver").  ECF No. 1815.  Any opposition to Receiver's motion was due on September 24, 2021.  Civil Local Rule 7.1(f)(3).  No party filed an opposition to Receiver's motion by the deadline.  For the reasons stated below, the Court GRANTS Receiver's motion to conclude the Receivership.  The Court finds this motion suitable for disposition without oral argument pursuant to Civil Local Rule 7.1 (d)(1) and VACATES the hearing on this matter.

**Factual Background**

Timeline of Events

On September 24, 2012, the Securities and Exchange Commission ("SEC") filed its Complaint and sought immediate entry of a Temporary Restraining Order against First Financial Planning Corporation, dba Western Financial Planning Corporation ("Western").  ECF Nos. 1 and 3.  The Court appointed Thomas C. Hebrank as temporary receiver for Defendants, and charged him with (1) assuming control over the Receivership Entities and their assets, (2) performing an accounting of the assets and financial condition of the Receivership entities, (3) investigating, locating and recovering Receivership assets, and (4) preparing reports for the Court.  ECF No. 10.  Receiver thereafter took possession of Receivership Entities, and secured their assets, including bank accounts, real and personal property, books, records, computers and electronic device, and email accounts.  ECF No. 1815-1 at 5.

On March 13, 2013, as part of the Court's Preliminary Injunction Order, the Court appointed Receiver on a permanent basis.  ECF No. 174.  Between 2012 and 2015, the Court rejected challenges to the SEC's claims and opposition to the Receiver himself.

On May 19, 2015, the Court granted partial summary judgment to the SEC, ECF No. 1074,  and on January 21, 2016, the Court issued a Final Judgment in favor of the SEC, ECF No. 1170.

The Receiver then proposed a process for selling and distributing the proceeds from the Receivership estate, which the Court approved over the opposition of investors. ECF No. 1181. Receiver diligently pursued the Court-approved plan to sell the thirty-six Receivership properties over the next few years. Receiver orchestrated the sale of the final property on April 8, 2021. The total net proceeds obtained by Receiver from the sale of the properties (excluding payment of commissions and costs of sale) were $26.3 million.

The Receiver recovered additional funds by selling office furniture and equipment, personal property including gold coins, enforcement of judgments against the LinMar entities, and interest earned on cash balances.

Receiver Activities

Pursuant to this Court's Order, Receiver took account for the assets and financial condition of all Receivership Entities, and filed Parts 1 and 2 of his Forensic Accounting Report in 2012. ECF Nos. 182 and 504. From this undertaking, Receiver discovered the sum of money raised from investors, and Western's use of those funds. *See* ECF No. 1815-1 at 7. Receiver used the forensic accounting data to validate claims and implement the distribution plan. *Id.*

Receiver filed detailed quarterly fee applications and accounting reports to inform the Court and interested parties about the money Receiver recovered, the status of ongoing sales of Receivership properties, the financial position of the Receivership estate, and all general efforts to recover funds for the benefit of investors. *Id.* at 7-8.

After the Court approved Receiver's plan to administer claims against the Receivership estate, Receiver mailed notices to investors, including a statement of their proposed allowed claim amount, which investors were able to dispute. Lauren Martin*Id.* at 8. Upon the Court's approval of Receiver's distributions of funds, ECF Nos. 1610, 1727, Receiver mailed checks which were carefully tracked and reissued to ensure as

many investors received their portion of the distribution as practicable. ECF No. 1815-1 at 9.  At the time of the instant motion, Receiver had distributed $18.7 million.  *Id.*

As of May 31, 2021, Receivership Entities' total cash on hand was $5,460,284.  *Id.* at 10.

## Discussion

Receiver now moves the Court to conclude the Receivership, and to bring this lengthy matter to a close.  ECF No. 1815-1.  The "primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the district court and for the benefit of the creditors."  *SEC v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986).  Generally, "a district court's power to supervise an equity receivership and to determine the appropriate action to be taken in the administration of the receivership is extremely broad."  *SEC v. Capital Consultants, LLC*, 397 F.3d 733, 738 (9th Cir. 2005). The court's power is "broad," and there is "wide discretion" when it comes to the administration of this vehicle for equitable relief.  *Id*; *see Commodities Futures Trading Comm'n. v. Topworth Int'l, Ltd.*, 205 F.3d 1107, 1115 (9th Cir. 1999) ("[t]his court affords 'broad deference' to the [district] court's supervisory role, and 'we generally uphold reasonable procedures . . . that serve the purpose of orderly and efficient administration of the receivership for the benefit of the creditors.").  At bottom, the court is charged with supervising the appointed receiver, who must act to maximize the interests of the creditors to whom the receivership entities owe money.

At the outset of this litigation, this Court, acting under "the inherent power of a court of equity to fashion effective relief," *SEC v. Wencke*, 622 F.2d 1363, 1369 (9th Cir. 1980), called upon Receiver to administer the affairs of the Receivership Entities.  For eight years, Receiver has done so fairly and equitably, fulfilling this Court's mandate.  The Court agrees with Receiver that "Receiver has diligently carried out his Court-ordered duties, including assuming control of enterprises, marshalling and selling assets,

4

12-CV-2164-GPC-JMA

performing forensic accounting, pursuing claims, providing detailed reports to the Court, conducting a claims process," and distributing the receivership entities' funds.  ECF No. 1815-1 at 14.  The Receiver acts under this Court's authority with the primary purpose of finding ways to provide equitable relief to Western's investors who were harmed by Defendants' actions.  Because Receiver sold the final Receivership property in April 2021, there is "no more benefit to be gained from maintaining this receivership," *id.* Accordingly, equity requires the Court to GRANT Receiver's motion to conclude the Receivership, in order to maximize the benefit of the Receivership Entities that will be passed on to the claimants.

## Conclusion

In order to conclude the Receivership, Receiver has asked this Court to grant his motion, and to also order other necessary housekeeping items, such as establishing a reserve for the payment of final expenses incurred during the closing of the Receivership.[1]  ECF No. 1815-1 at 10-13.  For the reasons stated above, the Court GRANTS Receiver's motion to conclude the Receivership. To implement this process,

1. The Receiver's final accounting and report is approved.

2. The Receiver is authorized to establish a reserve in the total amount of $1,172,749 in the manner discussed in Receiver's Motion.

3. The Receiver is authorized to make final disbursements and distributions to the Receiver, professionals and claimants in the manner described in the Motion.

---

[1] The expected expenses and fees are described more fully in the concurrently-filed final fee applications submitted by Receiver, Counsel for Receiver, and Tax Accountants to Receiver at ECF Nos. 1811, 1812, and 1813.

    4.    Upon making the final disbursements and distributions, the Receiver is authorized to destroy the books and records of the receivership entities in his possession or control.

    5.    In accordance with the approved Distribution Plan, following 120 days after the final distribution to approved claimants and payments to the Receiver and professionals as approved by this Court, the Receiver shall turn over to the United States Treasury any balance of funds.

    6.    Following 120 days after the final distribution to approved claimants has been made, the Receiver shall file a declaration with this Court providing a final accounting regarding use of the reserve funds, along with an order discharging the Receiver, in the form attached to Receiver's Motion as Exhibit A (ECF No. 1815-1, Ex. A).  The Discharge Order may be entered without further notice or hearing.

**IT IS SO ORDERED.**

Dated:  September 30, 2021

Hon. Gonzalo P. Curiel
United States District Judge